**Appeal Case No. 8:21-CV-00336-ODW**

---

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

---

## In Re: EAGAN AVENATTI LLP

---

THE X-LAW GROUP, P.C., a professional corporation, et al.,

*Defendants-Appellants,*

v.

RICHARD A. MARSHACK, Chapter 7 Trustee for Eagan Avenatti, LLP,

*Plaintiff-Appellee.*

---

On Appeal from the United States Bankruptcy Court for the Central District of
California, Bankruptcy Case No. 8:18-BK-13560-SC and
Adversary Case No. 8:20-ap-01086-SC

---

### OPENING BRIEF OF APPELLANTS
### THE X-LAW GROUP, P.C., FILIPPO MARCHINO, ELBA HERNANDEZ,
### INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE AND
### SUCCESSOR IN INTEREST TO ANDRES RAMIREZ, DECEASED,
### YOUNG BLUE LLC, AND SANDY LE, INDIVIDUALLY AND ON
### BEHALF OF TINA NGAN LE, DECEDENT

---

Filippo Marchino, Esq. (SBN 256011)
fm@xlawx.com
Thomas E. Gray, Esq. (SBN 299898)
tg@xlaw.com
THE X-LAW GROUP, P.C.
625 Fair Oaks Ave, Suite 390
South Pasadena, CA 91030
Tel: (213) 599-3380

*Attorneys for Appellants Elba Hernandez,
individually and as personal representative
and successor in interest to Andres
Ramirez, deceased, Young Blue LLC, and
Sandy Le, individually and on behalf of
Tina Ngan Le, decedent*

David B. Golubchik (SBN 185520)
dbg@lnbyb.com
Kurt Ramlo (SBN 166856)
kr@lnbyb.com
LEVENE, NEALE, BENDER, YOO
& BRILL L.L.P.
10250 Constellation Blvd., Ste. 1700
Los Angeles, CA 90067
Tel: (310) 229-1234

*Attorneys for Appellants The X-Law
Group, P.C. and Filippo Marchino,
an individual*

i

## DISCLOSURE STATEMENT

Pursuant to Bankruptcy Rule 8012, Defendant-Appellant The X-Law Group, P.C. hereby files its corporate disclosure statement as follows. The X-Law Group, P.C. is a privately held professional corporation. It has no parent corporation and no publicly held corporation owns 10% or more of its stock.

Dated:  April 26, 2021                    LEVENE, NEALE, BENDER, YOO &
                                          BRILL L.L.P.

                                          */s/ Kurt Ramlo*
                                          _____
                                          KURT RAMLO, ESQ.,
                                          *Attorneys for Appellants The X-Law*
                                          *Group, P.C., a professional corporation*
                                          *and Filippo Marchino, an individual*

ii

# <u>TABLE OF CONTENTS</u>

**Page(s)**

I.   JURISDICTIONAL STATEMENT ................................................................1

II.   STATEMENT OF ISSUES ........................................................................2

III.   STANDARD OF REVIEW .......................................................................6

IV.   STATEMENT OF THE CASE ...................................................................6

   A. Factual Background................................................................................6

   B. Procedural History.................................................................................8

V.   SUMMARY OF ARGUMENT.................................................................11

VI.   ARGUMENT...........................................................................................14

   A. Legal Standard for an Anti-SLAPP Motion...........................................14

   B. Because the Trustee Did Not Oppose Dismissal of the Le and
      Young Blue Declaratory Relief Claims or the Two Tortious
      Interference Claims, the Court Erred in Not Granting Defendants'
      Motion as to These Claims and Awarding Attorneys' Fees. ...................15

   C. The Claims Alleged in the Amended Complaint Fall Within the
      Scope of the Anti-SLAPP Statute. .......................................................16

      1. The Anti-SLAPP Statute Has A Broad Scope. ..................................16

      2. The "Claim" For Preliminary Injunction. ...........................................18

      3. The Claims for Declaratory Relief......................................................21

      4. The Tortious Interference Claims. ......................................................23

      5. The Voidable Transfer Claim and the Ramirez Declaratory
         Judgment Claim..............................................................................24

   D. The Trustee Failed to Carry His Burden of Establishing the Claims
      Were Legally Sufficient and That He Had Sufficient Evidence to
      Prevail at Trial. ....................................................................................25

1.  The Declaratory Relief Claims Against the Clients...........................26

2.  The Claims Related to the Ramirez Litigation Have Additional
    Deficiencies. .......................................................................31

3.  The "Claim" for Preliminary Injunction. ...........................................40

4.  The Tortious Interference Claims .......................................................41

5.  The Voidable Transfer Claim.............................................................45

6.  The Trustee failed to Carry His Burden of Establishing He Had
    Sufficient Evidence to Prevail at Trial. ...............................................51

E.  Because the Trustee's Claims Should Have Been Dismissed Under
    the Anti-SLAPP Statute, Defendants Should Have Been Awarded
    Attorneys' Fees..........................................................................52

VII.  CONCLUSION..............................................................................53

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*A-Mark Coin Co. v. Gen. Mills, Inc.*,
  148 Cal. App. 3d 312, 195 Cal. Rptr. 859 (Ct. App. 1983) ................................. 42

*Association of Am. Med. Colleges v. United States*,
  217 F.3d 770 (9th Cir. 2000) ................................................................. 27

*Baral v. Schnitt*,
  1 Cal. 5th 376 (2016) ........................................................................ 14

*Baxter v. Superior Court*,
  19 Cal. 3d 461, 466, 563 P.2d 871 (1977) ................................................... 37

*Bel Air Internet, LLC v. Morales*,
  20 Cal. App. 5th 924, 230 Cal. Rptr. 3d 71 (2018) ........................................ 53

*Bergstein v. Stroock & Stroock & Lavan LLP*,
  236 Cal. App. 4th 793, 187 Cal. Rptr. 3d 36 (2015) ...................................... 17

*Bleavins v. Demarest*,
  196 Cal. App. 4th 1533, 127 Cal. Rptr. 3d 580 (2011) .................................... 16

*Budavari v. Barry*,
  176 Cal. App. 3d 849, 222 Cal. Rptr. 446 (1986) .......................................... 37

*Carroll v. Interstate Brands Corp.*,
  99 Cal. App. 4th 1168, 121 Cal. Rptr. 2d 532 (2002) ..................................... 29

*Cf. Comstock*,
  212 Cal. App. 4th at 942 ..................................................................... 18

*Chambers v. Kay*,
  29 Cal. 4th 142, 56 P.3d 645 (2002) ........................................................ 44

*Coltrain v. Shewalter*,
  66 Cal. App. 4th 94, 77 Cal. Rptr. 2d 600 (1998) ......................................... 16

*Comstock v. Aber*,
  212 Cal. App. 4th 931, 151 Cal. Rptr. 3d 589 (2012) ..................................... 17

*Country Side Villas Homeowners Assn. v. Ivie,*
　193 Cal. App. 4th 1110, 123 Cal. Rptr. 3d 251 (2011) .......................................22

*Cruz v. Superior Court,*
　121 Cal. App. 4th 646, 17 Cal. Rptr. 3d 368 (2004) .............................................38

*Cuevas-Martinez v. Sun Salt Sand, Inc.,*
　35 Cal. App. 5th 1109, 248 Cal. Rptr. 3d 200 (2019) ..........................................42

*Della Penna v. Toyota Motor Sales, U.S.A., Inc.,*
　11 Cal. 4th 376, 902 P.2d 740 (1995)...................................................................45

*Dinosaur Dev., Inc. v. White,*
　216 Cal. App. 3d 1310, 265 Cal. Rptr. 525 (Ct. App. 1989)................................39

*Dobler v. Arluk Med. Ctr. Indus. Grp., Inc.,*
　89 Cal. App. 4th 530, 107 Cal. Rptr. 2d 478 (2001) .................................... 32, 34

*Drake v. Toyota Motor Corp.,*
　No. 2:20-CV-01421-SB-PLA, 2020 WL 7040125 (C.D. Cal. Nov. 23, 2020)....39

*eCash Techs., Inc. v. Guagliardo,*
　127 F. Supp. 2d 1069 (C.D. Cal. 2000) ................................................................16

*Estate of Falco,*
　188 Cal. App. 3d at 1014 ......................................................................................50

*Fed. Deposit Ins. Corp. v. Dintino,*
　167 Cal. App. 4th 333, 84 Cal. Rptr. 3d 38 (2008) .............................................39

*Fergus v. Songer,*
　150 Cal. App. 4th 552, 59 Cal. Rptr. 3d 273 (2007) ...........................................31

*Fracasse v. Brent*,
　6 Cal. 3d 784, 792, 494 P.2d 9 (1972)...................................................... 26, 29, 48

*Gemini Aluminum Corp. v. California Custom Shapes, Inc.,*
　95 Cal. App. 4th 1249, 116 Cal. Rptr. 2d 358 (2002) .........................................45

*GeneThera, Inc. v. Troy & Gould Prof'l Corp.*,
　171 Cal. App. 4th 901, 90 Cal. Rptr. 3d 218 (2009) ............................... 14, 18, 43

*Goines v. Select Portfolio Servicing, Inc.,*
  No. 2:17-cv-00511-ODW (SKx), 2017 WL 8230221 (C.D. Cal. Apr. 21, 2017)41

*Gottlieb v. Berrent (In re Lee),*
  Adv. No. 1:20-ap-01066-MT, Case No. 1:18-bk-11869-MT
  (Bankr. C.D. Cal. Jan. 19, 2021)..........................................................................34

*Graham-Sult v. Clainos,*
  756 F.3d 724 (9th Cir. 2014) ........................................................................ 20, 44

*Crossroads Inv'rs, L.P. v. Fed. Nat'l Mortg. Assn.,*
  13 Cal. App. 5th 757, 222 Cal. Rptr. 3d 1 (2017) .................................................44

*Grant & Eisenhofer, P.A. v. Brown,*
  No. CV175968PSGPJWX, 2018 WL 3817859 (C.D. Cal. Mar. 27, 2018) .........29

*Heller Ehrman LLP v. Davis Wright Tremaine LLP,*
  4 Cal. 5th 467, 411 P.3d 548 (2018)......................................................................48

*In re Bullion Reserve of N. Am.,*
  922 F.2d 544 (9th Cir. 1991) ..................................................................................47

*In re Castillo,*
  297 F.3d 940 (9th Cir. 2002) ....................................................................................1

*In re Heller Ehrman LLP,*
  716 F. App'x 693 (9th Cir. 2018)...........................................................................49

*In re Park at Dash Point, L.P.,*
  985 F.2d 1008 (9th Cir. 1993) ..................................................................................6

*In re Phar-Mor, Inc. Sec. Litig.,*
  178 B.R. 692 (W.D. Pa. 1995).................................................................................33

*Interinsurance Exch. v. Narula,*
  33 Cal. App. 4th 1140, 39 Cal. Rptr. 2d 752 (1995) .............................................35

*J.W. v. Superior Court,*
  17 Cal. App. 4th 958, 22 Cal. Rptr. 2d 527 (1993) ...............................................36

*Jespersen v. Zubiate-Beauchamp,*
  114 Cal. App. 4th 624, 7 Cal. Rptr. 3d 715, (2003) ..............................................18

*Johnson v. Couturier,*
   572 F.3d 1067 (9th Cir. 2009) ...........................................................................21

*Jones v. Martin*,
   41 Cal. 2d 23, 256 P.2d 905 (1953) .................................................................29

*Kapila v. Belotti (In re Pearlman),*
   No. 6:07-BK-00761-KSJ, 2012 WL 2370389, 2012 Bankr.
   LEXIS 2858 (Bankr. M.D. Fla. June 18, 2012)........................................... 32, 36

*Ketchum v. Moses,*
   24 Cal. 4th 1122, 17 P.3d 735 (2001)...............................................................52

*Levy v. City of Santa Monica,*
   114 Cal. App. 4th 1252, 8 Cal. Rptr. 3d 507 (2004) ........................................22

*Mahony v. Haines,*
   66 Cal. App. 456, 226 P. 620 (Cal. Ct. App. 1924)..........................................26

*Manwin Licensing Int'l S.A.R.L. v. ICM Registry, LLC,*
   No. CV119514PSGJCGX, 2013 WL 12123772 (C.D. Cal. Feb. 26, 2013) ........25

*Mason v. Levy & Van Bourg,*
   77 Cal. App. 3d 60, 143 Cal. Rptr. 389 (Ct. App. 1978).....................................42

*Matter of Respondent H,*
   No. 89-O-11979, 1992 WL 348560 (Cal. Bar Ct. Nov. 13, 1992)......................30

*Mindys Cosms., Inc. v. Dakar,*
   611 F.3d 590 (9th Cir. 2010) ...................................................................... 6, 18

*Mireskandari v. Associated Newspapers, Ltd.,*
   665 F. App'x 570 (9th Cir. 2016)......................................................................16

*Mojtahedi v. Vargas,*
   228 Cal. App. 4th 974, 176 Cal. Rptr. 3d 3136 (2014) ................................ 27, 28

*Morrow v. Los Angeles Unified Sch. Dist.,*
   149 Cal. App. 4th 1424, 57 Cal. Rptr. 3d 885 (2007) ................................. 52, 53

*Neville v. Chudacoff,*
   160 Cal. App. 4th 1255, 73 Cal. Rptr. 3d 383 (2008) ........................................17

*O&C Creditors Grp., LLC v. Stephens & Stephens XII, LLC*,
   42 Cal. App. 5th 546 (2019) ...................................................................... 21, 22, 24

*Olsen v. Harbison*,
   191 Cal. App. 4th 325, 119 Cal. Rptr. 3d 460 (2010) .................................. 28, 44

*Parrott v. Porter*,
   No. CV1604287SJOGJSX, 2016 WL 10957851 (C.D. Cal. Nov. 16, 2016) ......41

*Peredia v. HR Mobile Servs., Inc.*,
   25 Cal. App. 5th 680, 236 Cal. Rptr. 3d 157 (2018) ...........................................39

*Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP*,
   133 Cal. App. 4th 658, 35 Cal. Rptr. 3d 31 (2005) .............................................17

*Phar-Mor.  In re EPD Inv. Co., LLC*,
   523 B.R. 680 (B.A.P. 9th Cir. 2015) ...................................................................33

*Planned Parenthood Fed'n of Am., Inc. v. Center for Med. Progress*,
   890 F.3d 828 (9th Cir. 2018) ................................................................................2

*Rus, Miliband & Smith v. Conkle & Olesten*,
   113 Cal. App. 4th 656, 6 Cal. Rptr. 3d 612 (2003) .............................................50

*S. California Gas Co. v. Flannery*,
   232 Cal. App. 4th 477, 181 Cal. Rptr. 3d 436 (2014) ........................................26

*Schick v. Lerner*,
   193 Cal. App. 3d 1321, 238 Cal. Rptr. 902 (1987) .............................................43

*Shakur v. Schriro*,
   514 F.3d 878 (9th Cir. 2008) ...............................................................................15

*Spears Carpet Mills, Inc. v. Century Nat. Bank of New Orleans*,
   85 B.R. 86 (W.D. Ark. 1988)...............................................................................36

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016).........................................................................................51

*Strawn v. Morris, Polich & Purdy, LLP*,
   30 Cal. App. 5th 1087, 242 Cal. Rptr. 3d 216 (2019) .........................................43

*Strong v. Beydoun,*
 166 Cal. App. 4th 1398, 83 Cal. Rptr. 3d 632 (2008) ..........................................40

*Summerfield v. Randolph,*
 201 Cal. App. 4th 127, 133 Cal. Rptr. 3d 487 (2011) ..........................................17

*Summers v. Earth Island Inst.,*
 555 U.S. 488 (2009)...............................................................................................41

*Sweeley v. Gordon,*
 47 Cal. App. 2d 385, 118 P.2d 16 (1941) ..............................................................43

*Sylmar Air Conditioning v. Pueblo Contracting Servs., Inc.,*
 122 Cal. App. 4th 1049, 18 Cal. Rptr. 3d 882 (2004) ..........................................16

*Texas v. United States,*
 523 U.S. 296 (1998)...............................................................................................27

*Thayer v. Kabateck Brown Kellner LLP,*
 207 Cal. App. 4th 141 Cal. Rptr. 3d 17 (2012) ....................................................24

*Thomas v. Union Carbide Agricultural Products Co.,*
 473 U.S. 568 (1985)...............................................................................................27

*Total Access Payments, Inc. v. Maximum Bus. Innovations, Inc.,*
 No. CV 10-5475-GHK (RCX), 2010 WL 11552998
 (C.D. Cal. July 29, 2010) ......................................................................................21

*Untalan v. Stanley,*
 No. 219CV07599ODWJEMX, 2020 WL 6078474 (C.D. Cal. Oct. 15, 2020)....15

*Vien-Phuong Thi Ho v. Recontrust Co.,*
 669 F. App'x 857 (9th Cir. 2016)..........................................................................15

*Westside Ctr. Assocs. v. Safeway Stores 23, Inc.,*
 42 Cal. App. 4th 507, 49 Cal. Rptr. 2d 793 (1996) ..............................................44

*Whitmore v. Arkansas,*
 495 U.S. 149 (1990)...............................................................................................27

## **Statutes**

11 U.S.C. § 108(a) ...............................................................................36

11 U.S.C. § 1334 ...................................................................................1

11 U.S.C. § 157 .....................................................................................1

11 U.S.C. § 550(a)(1) ..........................................................................47

28 U.S.C. § 2201 ..................................................................................22

28 U.S.C. §158 (a)(1 .........................................................................1, 2

Cal. Bus. & Prof. Code § 6147 ...........................................................30

Cal. Civ. Code § 2343 ..........................................................................39

Cal. Civ. Proc. Code § 1060 ................................................................22

Cal. Civ. Proc. Code § 366.2(a) ..........................................................32

Cal. Civ. Proc. Code § 425.16(e) ............................................. 12, 16, 17

Cal. Civ. Proc. Code § 425.16 ..............................................................1

Cal. Fam. Code § 6602..........................................................................31

Cal. Prob. Code § 9100 .........................................................................35

Cal. Prob. Code § 9103 .........................................................................35

Cal. Prob. Code § 9351 .........................................................................34

## **Rules**

California Rules of Professional Conduct Rule 1.5.1 .............................44

Fed. R. Bankr. P. 8002...........................................................................2

Fed.R.Civ.P. 17 .....................................................................................33

**<u>Other Authorities</u>**

CACI 4200 ................................................................................ 45, 47

CACI 4202 ..................................................................................45

California Practice Guide: Professional Responsibility ¶ 5:799
  (The Rutter Group 2019) ............................................. 30, 40

Mark L. Tuft, Ellen R. Peck, and Kevin E. Mohr, California Practice Guide:
  Professional Responsibility ¶ 3:122.1 (2019)...................37

Tuft, Peck & Mohr, California Practice Guide: Professional Responsibility ¶
  9:162.2 (The Rutter Group 2018) ........................................48

# I.    JURISDICTIONAL STATEMENT

Appellants The X-Law Group, P.C. ("The X-Law Group") and Filippo Marchino ("Marchino" and, collectively with The X-Law Group "X-Law") and Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez, deceased ("Hernandez"), Young Blue LLC ("Young Blue"), and Sandy Le, individually and on behalf of Tina Ngan Le, decedent ("Le" and, collectively with Hernandez and Young Blue, "the Clients") appeal from the Order Denying Defendants' Special Motion to Strike and to Dismiss (1-ER-3–4, February 4, 2021), as amended (Amended Order Denying Defendants' Special Motion to Strike and to Dismiss (1-ER-1–2, February 5, 2021)), issued by the Honorable Scott C. Clarkson ("Judge Clarkson") of the United States Bankruptcy Court for the Central District of California, which held that none of the claims of Plaintiff Richard A. Marshack, Chapter 7 Trustee for Eagan Avenatti, LLP ("the Trustee") were subject to dismissal under California Code of Civil Procedure § 425.16 et seq. ("the anti-SLAPP statute").  The Bankruptcy Court had jurisdiction over the matter under 11 U.S.C. §§ 1334 and 157.  The Order is a final appealable order under 28 U.S.C. §158 (a)(1).  Specifically, the collateral order doctrine applies to appeals under 28 U.S.C. §158 (a)(1).  In re Castillo, 297 F.3d 940, 946 (9th Cir. 2002).  Denials of anti-SLAPP motions are immediately appealable under the collateral order doctrine.

1

<u>Planned Parenthood Fed'n of Am., Inc. v. Center for Med. Progress</u>, 890 F.3d 828, 832 (9th Cir. 2018).

Defendants timely filed their Notice of Appeal on February 17, 2021, within 14 days of the entry of the Order as prescribed by Fed. R. Bankr. P. 8002. (2-ER-7–10.)  Because Defendants elected to have the appeal heard by the district court, this Court has jurisdiction under 28 U.S.C. §158 (c)(1)(A).

## II.  STATEMENT OF ISSUES

1. Did the Bankruptcy Court err when it declined to dismiss the Trustee's first claim for relief, for a preliminary injunction against The X-Law Group and Marchino, on the ground that the cause of action arose from acts of The X-Law Group and Marchino in furtherance of their right of petition or free speech under the United States Constitution and the California Constitution in connection with a public issue?

2. Did the Bankruptcy Court err when it ruled that The X-Law Group and Marchino were each not entitled to attorneys' fees under California's anti-SLAPP statute on the Trustee's first claim for relief, for a preliminary injunction against The X-Law Group and Marchino?

3. Did the Bankruptcy Court err when it declined to dismiss the Trustee's second claim for relief, for a declaratory judgment against The X-Law Group and Hernandez, on the ground that the cause of action arose from acts of The X-Law

Group and Hernandez in furtherance of their right of petition or free speech under the United States Constitution and the California Constitution in connection with a public issue?

4.      Did the Bankruptcy Court err when it ruled that The X-Law Group and Hernandez were each not entitled to attorneys' fees under California's anti-SLAPP statute on the Trustee's second claim for relief, for a declaratory judgment against The X-Law Group and Hernandez?

5.      Did the Bankruptcy Court err when it declined to rule that the Trustee's third claim for relief, for a declaratory judgment against The X-Law Group and Young Blue LLC, was subject to dismissal on the ground that the cause of action arose from acts of The XLaw Group, P.C. and Young Blue LLC in furtherance of their right of petition or free speech under the United States Constitution and the California Constitution in connection with a public issue?

6.      Did the Bankruptcy Court err when it ruled that The X-Law Group and Young Blue LLC were each not entitled to attorneys' fees under California's anti-SLAPP statute on the Trustee's third claim for relief, for a declaratory judgment against The X-Law Group and Young Blue LLC, notwithstanding that the claim was dismissed after the Motion to Strike was filed?

7.      Did the Bankruptcy Court err when it declined to rule that the Trustee's fourth claim for relief, for a declaratory judgment against The X-Law Group and

3

Le, was subject to dismissal on the ground that the cause of action arose from acts of The X-Law Group and Le in furtherance of their right of petition or free speech under the United States Constitution and the California Constitution in connection with a public issue?

8.      Did the Bankruptcy Court err when it ruled that The X-Law Group and Le were not each entitled to attorneys' fees under California's anti-SLAPP statute on the Trustee's fourth claim for relief, for a declaratory judgment, notwithstanding that the Trustee dismissed that claim against The X-Law Group and Le after the Motion to Strike was filed?

9.      Did the Bankruptcy Court err when it declined to rule that the Trustee's fifth claim for relief, for tortious interference with contractual relations, against The X-Law Group and Marchino, was subject to dismissal on the ground that the cause of action arose from acts of The X-Law Group and Marchino in furtherance of their right of petition or free speech under the United States Constitution and the California Constitution in connection with a public issue?

10.     Did the Bankruptcy Court err when it ruled that The X-Law Group and Marchino were not each entitled to attorneys' fees under California's anti-SLAPP statute on the Trustee's fifth claim for relief, for tortious interference with contractual relations, notwithstanding that the Trustee dismissed that claim against The X-Law Group and Marchino after the Motion to Strike was filed?

11.     Did the Bankruptcy Court err when it declined to rule that the Trustee's sixth claim for relief, for tortious interference with prospective economic advantage, against The X-Law Group and Marchino, was subject to dismissal on the ground that the cause of action arose from acts of The X-Law Group and Marchino in furtherance of their right of petition or free speech under the United States Constitution and the California Constitution in connection with a public issue?

12.     Did the Bankruptcy Court err when it ruled that The X-Law Group and Marchino were not each entitled to attorneys' fees under California's anti-SLAPP statute on the Trustee's sixth claim for relief, for tortious interference with prospective economic advantage, notwithstanding that the Trustee dismissed that claim against The X-Law Group and Marchino after the Motion to Strike was filed?

13.     Did the Bankruptcy Court err when it declined to dismiss the Trustee's ninth claim for relief, to avoid a transfer under the Uniform Voidable Transactions Act, against The X-Law Group and Marchino, on the ground that the cause of action arose from acts of The X-Law Group and Marchino in furtherance of their right of petition or free speech under the United States Constitution and the California Constitution in connection with a public issue?

14.     Did the Bankruptcy Court err when it ruled that The X-Law Group and Marchino were each not entitled to attorneys' fees under California's anti-SLAPP

statute on the Trustee's ninth claim for relief, to avoid a transfer under the Uniform Voidable Transactions Act, against The X-Law Group and Marchino?

## III.   STANDARD OF REVIEW

A bankruptcy court's interpretation of state law is reviewed *de novo*.  In re Park at Dash Point, L.P., 985 F.2d 1008, 1010 (9th Cir. 1993).  Denial of an anti-SLAPP motion is reviewed *de novo* as well.  Mindys Cosms., Inc. v. Dakar, 611 F.3d 590, 595 (9th Cir. 2010).

## IV.   STATEMENT OF THE CASE

### A.   Factual Background

This case is, at its core, an attempt by the bankruptcy estate of a law firm, Eagan Avenatti, LLP ("EA"), to obtain quantum meruit fees arising out of three cases from several defendants: three defendants who the Trustee alleges are EA's former Clients; the law firm currently representing them (The X-Law Group); and one of the firm's attorneys, Filippo Marchino.  (4-ER-542–62.)  Each of the three cases, Ramirez v. City of Pasadena Los Angeles County Superior Court Number BC664114 ("Ramirez"), Young Blue LLC v. Herron, Los Angeles County Superior Court Number BC693618 ("Young Blue"), and Le v. Saldivar, Los Angeles County Superior Court Number BC691517 ("Le"), was, as of the filing of the anti-SLAPP motion, still pending.  (4-ER-546–49 ¶ 19-41; 3-ER-364–436.)

The Trustee alleged that EA represented Elba Hernandez ("Hernandez") "in her capacity as guardian ad litem for her minor son, Andres Ramirez ('Ramirez'), who was severely injured when he was struck by a car." (4-ER-546 ¶ 19.)   The Trustee claimed that EA performed services on behalf of Hernandez, but that is false. (4-ER-546 ¶ 21.) EA represented only Andres Ramirez. (5-ER-803–14.)  Hernandez could not have been, and was not, a party in the personal injury lawsuit while her son was alive, and her only role during that time was that of the guardian ad litem of her son while EA purported to represent him. (5-ER-798–860.) EA withdrew from representing Ramirez in the summer of 2018, and he passed away on February 25, 2019, months after EA had withdrawn as counsel. (4-ER-546 ¶ 23, 24.) While the Trustee alleged the existence of a retainer agreement, he never identified a valid contract, signed by all parties, including EA. Nor did the Trustee allege that EA ever sought state court approval of the retainer EA wanted to use in order to represent Ramirez, a minor, in his personal injury action. State court records reveal that this mandatory procedure was not followed. (5-ER-798–801, 5-ER-825–63.) In addition, EA waived any entitlement to fees relating to the Ramirez case. (4-ER-560 ¶ 122.) Last, Hernandez exercised her right to void any contract that may have existed between her son and EA. (4-ER-724–25 ¶¶ 3, 8.)

The Trustee admitted that he was unable to locate any contract between EA and Young Blue, much less one containing a lien provision. (4-ER-784 ¶¶ 5-8, 4-

ER-789.) Even if a contract did exist, Young Blue never received a copy of it and exercised its right to void it. (4-ER-733 ¶¶ 3, 5.)

Le exercised her right to void any contract that may have existed, and the Trustee failed to locate or produce a valid contract. (4-ER-730 ¶ 6.)

### B.     Procedural History

The Trustee first filed his complaint on May 19, 2020.   (5-ER-1076.) Defendants filed a motion to strike the purported liens on the Clients' cases.  (4-ER-709-721.)   The Trustee did not oppose the motion, resulting in Judge Clarkson striking the liens "in their entirety" and prohibiting the Trustee from reasserting the liens unless he "obtain[ed] an order from this Court establishing the existence and validity of the lien relating to the applicable" case.  (1-ER-5–6.)

The Trustee filed an Amended Complaint, the one at issue in this appeal, on October 26, 2020.  (4-ER-542–62.) The Complaint alleged a "claim" for preliminary injunction against X-Law, asking that the contingency fee portion of the recovery in each of the underlying cases be deposited with the Clerk of the Court.  (4-ER-549–52 at ¶¶ 43-57.)  It also contained three claims for declaratory judgment, against the Clients and the X-Law Group, P.C., that asked the Court to set the amount of fees the Estate was entitled to and to allocate the contingency fee in the cases between the Estate and the X-Law Group, P.C. (4-ER-552–54 ¶¶ 58-73.)  The Trustee also asserted a tortious interference with contractual relations and a tortious interference

8

with prospective economic advantage claim against X-Law seeking damages arising out of it purportedly structuring the settlement of the <u>Ramirez</u> litigation.  (<u>4-ER-554–58</u> ¶ 74-105.)  Finally, the Trustee brought a voidable transfer claim against X-Law, again related to the <u>Ramirez</u> litigation.[1]  (<u>4-ER-560-–61</u> at ¶¶ 117-132.)

Defendants filed a motion seeking dismissal of all of the Trustee's claims under Rule 12(b), and the aforementioned preliminary injunction, declaratory relief, tortious interference with contractual relations, tortious interference with prospective economic advantage, and voidable transfer claims under the anti-SLAPP statute (the anti-SLAPP motion.)  (3-ER-439–539.)

The Trustee filed an opposition to the anti-SLAPP motion.  (3-ER-241–359.) In the case of the declaratory relief claims arising out of the <u>Young Blue</u> and <u>Le</u> cases, the Trustee merely noted that he had filed a motion seeking to amend the complaint and delete those claims, and that therefore the Bankruptcy Court did not need to decide whether such claims could be brought while the underlying cases were still ongoing.  (<u>3-ER-256–57</u>.)  The Trustee also abandoned the tortious interference with contractual relations and a tortious interference with prospective economic advantage claims, merely noting that they were removed from his proposed amended complaint.  (<u>3-ER-264</u>.)

---

[1] The Trustee also alleged a claim for "further relief" and a claim for violation of automatic stay and turnover, but they are not the subject of this appeal.  (<u>4-ER-558–59</u> at ¶ 106-116.)

In addressing whether the claims fell within the scope of the anti-SLAPP statute, the Trustee discussed only the <u>Ramirez</u> declaratory judgment claim, but <u>not</u> the <u>Le</u> or <u>Young Blue</u> claim.  (<u>3-ER-274</u>.)  For the two tortious interference claims, the Trustee simply noted "On this cause of action, the Trustee has already filed a motion to amend which will remove this claim."  (<u>3-ER-275</u>.)  The Trustee relied entirely on the declaration of his counsel, Mr. Kellner, in an attempt to meet his burden on the second prong of the anti-SLAPP statute, probability of prevailing on the merits.  (<u>3-ER-275–280</u>.)  The Trustee took the position that if Defendants partially prevailed, then "any attorney fee would have to be offset by a counterpart award of attorneys' fees to the Trustee on Defendants' [remaining] frivolous anti-SLAPP claims" and that "the best that Defendants can claim in their anti-SLAPP motion is a wash."  (<u>3-ER-281</u>.)

Defendants filed a reply in support of their anti-SLAPP motion, which addressed the arguments made by the Trustee in his opposition.  (2-ER-201–40.)  In addition, Defendants filed evidentiary objections to Mr. Kellner's declaration.  (2-ER-35–52.)

At the hearing on the anti-SLAPP motion, the Court sustained many of Defendants' evidentiary objections.  (6-ER-1133–50 at 50:16-67:3.)  However, it only discussed the merits of the anti-SLAPP motion briefly, merely stating:

> Okay. The Court has carefully reviewed all the pleadings with respect to the motion. They call it "special motion to strike and motion to

dismiss." I've looked at the case law. I've looked at the standards under the anti-SLAPP statute, and all of the cases, and I find that the motion should be denied in full.

The motion to dismiss is irrelevant now. The anti-SLAPP motion is frivolous, and it shouldn't be even considered any further than we already have, but I have carefully considered it, and it's frivolous, and it shouldn't have been brought, but that will be the end of that. It doesn't meet any of the standards necessary for obtaining any attorney fee award of any type with respect to this matter, and that will be the ruling of the Court.

(6-ER-1153–54 at 70:18-71:6.)

The order did not go into any greater detail:

The Court having read and considered the Motion, the Opposition filed by Plaintiff, Defendants' Reply to Trustee's Opposition, and other pleadings filed in this adversary [sic], and having heard the arguments of counsel, and for the reasons stated on the record including the rulings on Defendants' evidentiary objections, the Court enters its Order as follows:

IT IS ORDERED that the Motion is denied in its entirety including Defendants' request for an award of attorneys' fees.

(1-ER-6.)

## V.    SUMMARY OF ARGUMENT

The central issue on appeal is whether Judge Clarkson erred in denying Defendants' anti-SLAPP motion.  Because an attorneys' fee award to the prevailing defendant in such a motion is *mandatory*, if Judge Clarkson should have dismissed

11

even one claim pursuant to the anti-SLAPP statute, then he should have awarded attorneys' fees. Because the Trustee abandoned several of his claims in the face of Defendants' then-pending anti-SLAPP motion, and made no attempt to argue that these claims fell outside the scope of the anti-SLAPP statute or that they were legally sufficient and supported by sufficient evidence to obtain a favorable judgment, he effectively conceded that they were subject to dismissal pursuant to the statute, rendering Defendants the prevailing party and, hence, entitled to an attorneys' fee award.

Separate and apart from the Trustee's abandonment of several claims, each and every state law claim brought by the Trustee fell within the scope of the portion of the anti-SLAPP statute that protects "any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law." Cal. Civ. Proc. Code § 425.16(e). The factual basis for the Trustee's claims consisted of allegations about Defendants' communications with counsel for opposing parties, arguments regarding Defendants' improper structuring of settlements, and accusations that Defendants improperly withheld information from the probate court. This litigation-related conduct falls squarely within the scope of Cal. Civ. Proc. Code § 425.16(e).

Although the Trustee's claims were legally deficient to survive an anti-SLAPP motion for a plethora of reasons, described in greater detail below, several permeated throughout the claims.

- First, the Trustee's claims were unripe for the reason that he could not sue the Clients to obtain a determination of the EA bankruptcy estate's quantum meruit entitlement to fees until the underlying cases had completely resolved.

- Second, in the case of X-Law, the Trustee could not sue current counsel until *after* the Trustee obtained a judgment against the Clients, which was obviously impossible when he sued both simultaneously.

- Third, the Trustee could not sue X-Law at all because it was impossible to sue successor counsel for quantum meruit fees when there was not a valid attorneys' fee lien <u>and</u> the purported liens had already been stricken by Judge Clarkson.

- Fourth, in the claims arising out of the <u>Ramirez</u> litigation, EA's only client was Ramirez, not his mother Hernandez, and the Trustee alleged Hernandez was the only person who obtained any money from the <u>Ramirez</u> litigation, thereby precluding the Trustee from obtaining any fees.

- Fifth, claims premised on X-Law improperly structuring the <u>Ramirez</u> settlement were barred by the litigation privilege and other privileges as

13

well as legally untenable in light of the fact that clients, not attorneys are the ones who make settlement decisions.

- Finally, as a result of Judge Clarkson sustaining many of Defendants' evidentiary objections, the Trustee was left without the evidence he would need to substantiate his claims, thereby requiring them to be dismissed under the anti-SLAPP statute.

## VI.   ARGUMENT

### A.   Legal Standard for an Anti-SLAPP Motion

"First, the defendant must establish that the challenged claim arises from activity protected by section 425.16.  If the defendant makes the required showing, the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success."  Baral v. Schnitt, 1 Cal. 5th 376, 384 (2016) (citation omitted).  "To satisfy the burden of showing the probability of prevailing on his or her claims..., a plaintiff must demonstrate that the complaint is both legally sufficient and, assuming his or her proffered evidence is believed, supported by facts sufficient to sustain a favorable judgment."  GeneThera, Inc. v. Troy & Gould Prof'l Corp., 171 Cal. App. 4th 901, 908, 90 Cal. Rptr. 3d 218, 223 (2009).  Accordingly, Defendants will first explain why each of the claims fall within the scope of the activity protected by the anti-SLAPP statute before explaining why the Trustee

14

<u>failed</u> to meet his burden to establish that his complaint was not only legally sufficient, but also supported by facts sufficient to sustain a favorable judgment.

**B.  Because the Trustee Did Not Oppose Dismissal of the <u>Le</u> and <u>Young Blue</u> Declaratory Relief Claims or the Two Tortious Interference Claims, the Court Erred in Not Granting Defendants' Motion as to These Claims and Awarding Attorneys' Fees.**

It is well-established law that failure to respond to arguments results in waiver. <u>Vien-Phuong Thi Ho v. Recontrust Co.</u>, 669 F. App'x 857, 859 (9th Cir. 2016) (citing <u>Shakur v. Schriro</u>, 514 F.3d 878, 892 (9th Cir. 2008)); <u>Untalan v. Stanley</u>, No. 219CV07599ODWJEMX, 2020 WL 6078474, at *4 (C.D. Cal. Oct. 15, 2020) (Wright, J.).

The Trustee abandoned the <u>Young Blue</u> and <u>Le</u> declaratory relief claims, as well as the two tortious interference claims and made no attempt to argue that they either fell outside the scope of the anti-SLAPP statute or that the Trustee had established that he had sufficient evidence to obtain a favorable judgment on them. (3-ER-256–57,  3-ER-264, 3-ER-274, 3-ER-275.)   The Bankruptcy Court should have granted the anti-SLAPP motion as to them and awarded Defendants attorneys' fees as the prevailing party on these claims.  Its decision to deny the motion as to these claims is contrary to the rule that "when a voluntary dismissal follows the filing

15

of a[n anti-SLAPP] motion to strike, there is a 'presumption' that the moving party is the 'prevailing party'" and therefore entitled to fees.   eCash Techs., Inc. v. Guagliardo, 127 F. Supp. 2d 1069, 1084 (C.D. Cal. 2000) (quoting Coltrain v. Shewalter, 66 Cal. App. 4th 94, 107–08, 77 Cal. Rptr. 2d 600, 608 (1998)), aff'd, 35 F. App'x 498 (9th Cir. 2002).  The fact that the Trustee abandoned these claims did not allow him to escape liability for anti-SLAPP attorneys' fees.   Mireskandari v. Associated Newspapers, Ltd., 665 F. App'x 570, 571–72 (9th Cir. 2016); Sylmar Air Conditioning v. Pueblo Contracting Servs., Inc., 122 Cal. App. 4th 1049, 1054, 18 Cal. Rptr. 3d 882, 885–86 (2004).

## C.   The Claims Alleged in the Amended Complaint Fall Within the Scope of the Anti-SLAPP Statute.

### 1.   The Anti-SLAPP Statute Has A Broad Scope.

The California legislature instructed courts that the anti-SLAPP statute "shall be construed broadly." Cal. Civ. Proc. Code § 425.16(a).  "The anti-SLAPP statute's definitional focus is not the form of the plaintiff's cause of action but, rather, the defendant's *activity* that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning." Bleavins v. Demarest, 196 Cal. App. 4th 1533, 1540, 127 Cal. Rptr. 3d 580, 586 (2011) (emphasis in original) (citations omitted).

The anti-SLAPP statute protects "any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law." Cal. Civ. Proc. Code § 425.16(e).

"[A] statement is 'in connection with' litigation under section 425.16, subdivision (e)(2) if it relates to the substantive issues in the litigation and is directed to persons having some interest in the litigation." Neville v. Chudacoff, 160 Cal. App. 4th 1255, 1266, 73 Cal. Rptr. 3d 383, 391 (2008). This provision "protect[s] statements to persons who are not parties or potential parties to litigation, provided such statements are made 'in connection with' pending or anticipated litigation." Summerfield v. Randolph, 201 Cal. App. 4th 127, 136, 133 Cal. Rptr. 3d 487, 494 (2011). Courts "examine 'the specific acts of wrongdoing' alleged, 'without particular heed to the form of action within which it has been framed.'" Bergstein v. Stroock & Stroock & Lavan LLP, 236 Cal. App. 4th 793, 811, 187 Cal. Rptr. 3d 36, 50 (2015) (quoting Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP, 133 Cal. App. 4th 658, 671, 35 Cal. Rptr. 3d 31, 39 (2005)). "Communications that are preparatory to or in anticipation of commencing official proceedings come within the protection of the anti-SLAPP statute." Comstock v. Aber, 212 Cal. App. 4th 931, 943, 151 Cal. Rptr. 3d 589, 599 (2012). In addition, "An attorney's communication with opposing counsel on behalf of a client regarding

pending litigation directly implicates the right to petition and thus is subject to a special motion to strike." GeneThera, Inc., 171 Cal. App. 4th at 908. "[A]n attorney who has been made a defendant in a lawsuit based upon a written or oral statement he or she made on behalf of clients in a judicial proceeding or in connection with an issue under review by a court, may have standing to bring a SLAPP motion." Jespersen v. Zubiate-Beauchamp, 114 Cal. App. 4th 624, 629, 7 Cal. Rptr. 3d 715, 718–19 (2003).

In determining whether a claim falls within the anti-SLAPP statute, courts can use a "but for" test and ask whether but for the protected activity, the plaintiff would have a reason to bring a claim against the defendant. Mindys Cosmetics, Inc. v. Dakar, 611 F.3d 590, 598 (9th Cir. 2010).

Courts do not permit plaintiffs to distance themselves from their own allegations in the face of an anti-SLAPP motion. Cf. Comstock, 212 Cal. App. 4th at 942.

### 2.   The "Claim" For Preliminary Injunction.

The Trustee's preliminary injunction "claim" is based on allegations that place it squarely within the scope of the anti-SLAPP statute. First, the basis for the relief the Trustee sought was "(1) X-Law and Marchino's expressed belief that the Estate is not entitled to fees and/or to receive a portion of the proceeds of a settlement, judgment, or other recovery in the [state-court] Cases, and (2) X-Law's

18

deceit in making material misrepresentations that the action involving the Estate of Andres Ramirez did not result in any positive proceeds (despite the fact that it is believed a settlement in excess of $10 million was entered and pending a request for distribution to Hernandez)." (4-ER-550 at ¶ 49.) The Trustee also "incorporates by reference and realleges paragraphs 1-42." (4-ER-549 at ¶ 43.) Among these "incorporated" allegations are that Marchino made the representation about the lack of any recovery by the Estate of Andres Ramirez on August 6, 2020 (after the adversary proceeding was initiated by the Trustee). (4-ER-547 at ¶ 29.) The Trustee also alleged that "[a]t the same time, a petition was filed by Hernandez in the Probate Action for a Court determination that Hernandez is the sole heir and entitled to all distributions of the Decedent's Estate (as her deceased son's only legal heir). The Petition was filed in May 2020, and there is no mention in the Petition about the settlement in the Hernandez Case or EA's claim to fees from settlement proceeds in the Hernandez Case." (4-ER-547.) Finally, the Trustee stated that "X-Law has sent multiple communications to the Receiver and the Trustee contesting the Estate's right to fees and/or to receive a portion of the proceeds of a settlement, judgment, or other recovery in the Cases. Marchino signed and/or sent each of these communications. Marchino also made statements to opposing counsel in at least one of the Cases contesting the Estate's rights." (4-ER-549 at ¶ 42.)

In short, the Trustee brought the preliminary injunction claim against X-Law

19

because X-Law made statements to the opposing party in this adversary proceeding (the Trustee and his counsel) about the deficiencies in the claims asserted against X-Law and its clients.  Communications with the opposing party about the merits of a pending lawsuit fall squarely into the scope of the anti-SLAPP statute.  Even the earlier communications with the Receiver were obviously about contemplated litigation (i.e., the Receiver bringing a similar lawsuit to the one the Trustee ultimately did in the adversary proceeding) and in any event also about how it was inappropriate to file the liens in the underlying cases.

To the extent that X-Law was sued for filings in the probate court, the legal positions taken in those filings, or statements made or not made, those too fall squarely within the scope of the anti-SLAPP statute.  See Graham-Sult v. Clainos, 756 F.3d 724, 735–36, 739–40 (9th Cir. 2014) (misstatements to and concealment of information from the probate court are covered).

"Statements to opposing counsel in at least one of the Cases contesting the Estate's rights" is clearly covered by the anti-SLAPP motion.  (4-ER-549 at ¶ 42.] Again, the Trustee sued X-Law for communicating with opposing counsel on a case, regarding a matter that is pertinent to both this case and the underlying cases. Whether or not the Trustee had a lien, or some other hypothetical entitlement to fees, would impact the resolution of the underlying cases.

Claims premised on wrongful disbursement of settlement funds have also

been explicitly found to fall within the scope of the anti-SLAPP statute.  O&C
Creditors Grp., LLC v. Stephens & Stephens XII, LLC, 42 Cal. App. 5th 546, 566-
574 (2019).  The only difference between the claims asserted in O&C Creditors Grp.
and the ones here is that the Trustee sought to *prevent* what he believed would be a
wrongful disbursement of settlement funds.

These allegations in the preliminary injunction claim are not some sort of
superfluous color or context.  "A party seeking an asset freeze must show a
*likelihood* of dissipation of the claimed assets, or other inability to recover monetary
damages, if relief is not granted." Johnson v. Couturier, 572 F.3d 1067, 1085 (9th
Cir. 2009) (emphasis added). "It is critical that the finding of a likelihood of
irreparable injury be grounded in facts revealing that the party to be restrained will
likely seek to dissipate or secret assets. Otherwise, absent such a showing, any
plaintiff could prevail upon this Court to freeze the assets of any defendant against
whom damages were sought." Total Access Payments, Inc. v. Maximum Bus.
Innovations, Inc., No. CV 10-5475-GHK (RCX), 2010 WL 11552998, at *3 (C.D.
Cal. July 29, 2010).  Without these allegations, the Trustee would not be able to
obtain a preliminary injunction.

### 3.   The Claims for Declaratory Relief.

As was noted above, the Trustee made no argument on whether the Le and
Young Blue claims fell within the scope of the anti-SLAPP statute and thereby

conceded that they did.  Regardless, all three declaratory relief claims fall within the scope of the anti-SLAPP statute.

Because the claims for declaratory judgment arise out of the settlement of the underlying cases (or a judgment following trial), they also fall within the scope of the anti-SLAPP statute.  O&C Creditors Grp., LLC, 42 Cal. App. 5th at 571 (finding anti-SLAPP statute applied because "O&C Creditors cannot allege its claims without the settlement agreement—both because the allegedly wrongful "disbursement" of "proceeds" occurred only because of the settlement agreement and because the alleged attorney lien could not arise without the settlement" and explaining that an attorneys' "lien claim...exists only *because of* the settlement agreement").

Courts routinely find that declaratory relief claims prompted by the opposing party engaging in protected speech fall within the scope of the anti-SLAPP statute. Levy v. City of Santa Monica, 114 Cal. App. 4th 1252, 1259, 8 Cal. Rptr. 3d 507, 513 (2004) (claim for declaration that a playhouse conforms with zoning ordinance after neighbor contacted council member, who in turn contacted planning staff about it); Country Side Villas Homeowners Assn. v. Ivie, 193 Cal. App. 4th 1110, 1117, 123 Cal. Rptr. 3d 251, 257 (2011) (declaration regarding homeowners' associations' governing documents sought against homeowner who criticized board).

Declaratory relief claims require an "actual controversy". 28 U.S.C. § 2201; Cal. Civ. Proc. Code § 1060. The Trustee alleges one exists, as he must to bring a

declaratory relief claim. (4-ER-552at ¶ 63.) In the case of the <u>Ramirez</u> declaratory

relief claim, the allegations necessary to create the controversy are that X-Law has

"disavowed" the purported lien, refused to pay the Trustee, and stated that there was

no recovery in <u>Ramirez</u>. (4-ER-552 ¶  62.) He also makes similar allegations for the

<u>other</u> declaratory relief claims.  (4-ER-549 ¶ 42, 4-ER-553 ¶¶ 66, 70.)  Such claims

therefore fall within the scope of the anti-SLAPP statute.

### 4.   The Tortious Interference Claims.

As was noted above, the Trustee failed to address whether the two tortious

interference claims fell within the scope of the anti-SLAPP statute, thereby

conceding that they did.  In addition, in both of these claims, the Trustee alleged that

> defendants X-Law and Marchino negotiated a settlement of $10.35
> million in the Hernandez case. In order to circumvent the EA
> lien...and EA's quantum meruit rights/claims, defendants X-Law and
> Marchino devised a scheme by which it could circumvent not only
> scrutiny of its attorneys' fees by the Trustee in Probate Court – but
> also circumvent the Trustee's/EA's contractual right to a lien for
> attorneys' fees and quantum meruit claim to attorneys' fees.

(4-ER-555 ¶ 79, 4-ER-557 ¶ 96.)   The Trustee also alleged that "X-Law and

Marchino fraudulently and improperly structured the settlement such that the Estate

of Andres Ramirez received nothing, and Elba Hernandez received 100% of the

$10.35 million settlement (4-ER-555  ¶ 80, 4-ER-557 ¶ 97.)  The Trustee also made

allegations about X-Law's failure to disclose information to the probate court.  (4-

ER-555 ¶ 81-82, 4-ER-557-58 ¶ 98-99.)  Finally, the Trustee alleged that "To further

curtail any scrutiny of this deceptive scheme, X-Law and Marchino have dismissed the Hernandez Case, with prejudice – yet, have not advised nor received permission from the Probate Court for doing so."  (4-ER-555 ¶ 84, 4-ER-558 ¶ 101.]

To the extent X-Law was sued for filings in the probate court, the legal positions taken in those filings, or statements made or not made, these claims fall within the scope of the anti-SLAPP statute.  The allegations regarding structuring the settlement and settling the case must, in context, be read as meaning that X-Law advised Hernandez to settle the case in this manner and acted on her behalf in doing so.  This conduct is also protected by the anti-SLAPP statute.  O&C Creditors Grp., LLC, 42 Cal. App. 5th at 566 (settlement agreements fall within scope of conduct protected by anti-SLAPP statute); Thayer v. Kabateck Brown Kellner LLP, 207 Cal. App. 4th 141, 154, 143 Cal. Rptr. 3d 17, 27 (2012) ("legal advice and settlement made in connection with litigation are within section 425.16").

Finally, tortious interference claims premised on settling around a fee agreement have been explicitly held to be subject to anti-SLAPP.  O&C Creditors Grp., LLC, 42 Cal. App. 5th at 571.

### 5. The Voidable Transfer Claim and the Ramirez Declaratory Judgment Claim.

Although the precise basis for liability in the voidable transfer claim is ambiguous, *whatever* the Trustee intended to allege, it necessarily depended on the

24

allegations regarding the structuring of the settlement of the <u>Ramirez</u> litigation that appear earlier in the complaint and are incorporated by reference. <u>Manwin Licensing Int'l S.A.R.L. v. ICM Registry, LLC,</u> No. CV119514PSGJCGX, 2013 WL 12123772, at *10 (C.D. Cal. Feb. 26, 2013) (because plaintiff had incorporated by reference all of its earlier allegations into its state law claims, the court would consider all of those allegations to determine whether the claims fell within scope of anti-SLAPP statute). (4-ER-555 ¶¶ 79-80, 4-ER-557 ¶¶ 96-97.) As is the case with the two abandoned tortious interference claims, these allegations bring the claims within the scope of the anti-SLAPP statute. The Trustee alleged that only EA represented Hernandez in her capacity as guardian ad litem for Ramirez, that it worked on Ramirez's complaint, and that it was substituted out as counsel before Ramirez passed away. (4-ER-546 ¶¶ 19-25.) In the case of the waiver the Trustee repeatedly referred to, the waiver was provided to Ramirez only. (4-ER-560–61 ¶¶ 122-131; 4-ER-570.) Without allegations that would allow the Trustee to obtain money for Hernandez's claims even though it represented only Ramirez, which is the purpose of the settlement structuring claims, the Trustee would not be able to obtain any monetary recovery or other meaningful relief.

**D.** **The Trustee Failed to Carry His Burden of Establishing the Claims Were Legally Sufficient and That He Had Sufficient Evidence to Prevail at Trial.**

### 1.   The Declaratory Relief Claims Against the Clients

### a.   The Declaratory Relief Claims Against the Clients Were Legally Deficient Because the Underlying Cases Were Still Ongoing.

"In order for an attorney to recover upon a contract for services in the conduct of an action it is necessary for him to show an actual termination of the litigation in which he is employed." Mahony v. Haines, 66 Cal. App. 456, 459–60, 226 P. 620 (Cal. Ct. App. 1924).  In other words, although "[a] litigant's former attorney [may be] entitled to recover the reasonable value of services rendered to the time of discharge,...the right to such recovery does not ripen until the litigant prevails." S. California Gas Co. v. Flannery, 232 Cal. App. 4th 477, 488, 181 Cal. Rptr. 3d 436, 444 (2014).  This is because "the attorney's action for reasonable compensation accrues only when the contingency stated in the original agreement has occurred - i.e., the client has had a recovery by settlement or judgment." Fracasse v. Brent, 6 Cal. 3d 784, 792, 494 P.2d 9 (1972).  The ultimate consequence of this is that an attorney is forbidden from bringing a declaratory relief action based on a contingency agreement until such time that there is a settlement or judgment. Id. at 792–93.  ("In light of these rules, it seems clear that there is no present controversy such as would justify the court in exercising its discretion to entertain an action for declaratory relief.")

"A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." Texas v. United States, 523 U.S. 296, 300 (1998) (quotation omitted). "Allegations of possible future injury do not satisfy the requirements of Art. III." Whitmore v. Arkansas, 495 U.S. 149, 158 (1990). "[A]n unripe claim is not justiciable." Association of Am. Med. Colleges v. United States, 217 F.3d 770, 784 n. 9 (9th Cir. 2000).

All three of the declaratory relief claims against the Clients were unripe and unjusticiable because the underlying cases had not fully settled. (3-ER-365–436.) Therefore, the Court should have dismissed them under the anti-SLAPP statute.

      b. **The Declaratory and Injunctive Relief Claims Against X-Law Were Deficient Because the Underlying Cases Were Still Ongoing and the Trustee Had Not Established the Existence of a Valid and Enforceable Lien.**

      i.   **The Cases Against the Clients Were Still Ongoing.**

Former counsel may not sue successor counsel under a quantum meruit theory *unless they first obtain a judgment against the client.* Mojtahedi v. Vargas, 228 Cal. App. 4th 974, 979, 176 Cal. Rptr. 3d 313, 316 (2014) ("Without first establishing a right to any portion of his clients' settlement proceeds, plaintiff in this case lacks any basis to assert that defendant fraudulently withheld any money from him."); Olsen

v. Harbison, 191 Cal. App. 4th 325, 332, 119 Cal. Rptr. 3d 460, 465 (2010) ("Plaintiff had a written retainer agreement with [the client]…and then was fired by the client. Under these circumstances, plaintiff might be entitled to quantum meruit—from the client. Instead, he sought to recover the value of services rendered from defendant. There is no basis for such a claim.")

This rule is absolute; even if the clients did not dispute the entitlement to or the amount of fees, the former counsel would ***still need to sue the clients first***. Mojtahedi, 228 Cal. App. 4th at 978. Former counsel is required to "allege facts establishing that he adjudicated the existence, value, [and] enforceability of his lien" if it wishes to assert a cause of action against current counsel. Id.

Because the Clients' cases were ongoing and the Trustee sued X-Law and its Clients simultaneously, the declaratory judgment claims against X-Law were not ripe.

ii.    **The Purported Liens Were Void.**

"Without an enforceable lien, plaintiff cannot prove that he has a right to a portion of the settlement money." Id. at 977. "Unlike other liens, 'an attorney's lien is not created by the mere fact that an attorney has performed services in a case.' An attorney's lien is created only by an attorney fee contract with an express provision regarding the lien or by implication in a retainer agreement that provides the attorney will be paid for services rendered from the judgment itself." Id. at 977–78 (quoting

28

Carroll v. Interstate Brands Corp., 99 Cal. App. 4th 1168, 1172, 121 Cal. Rptr. 2d 532 (2002)).  This is not in any way automatic.  "[A]n attorney under a contingent fee agreement has no special or charging lien, unless it has been specifically contracted for."  Jones v. Martin, 41 Cal. 2d 23, 27, 256 P.2d 905 (1953), overruled on other grounds by Fracasse, 6 Cal. 3d 784.  "Unlike a service lien or a mechanic's lien,...an attorney's lien is not created by the mere fact that an attorney has performed services in a case."  Carroll, 99 Cal. App. 4th at 1172.  "Because an attorney's lien is not automatic and requires a contract for its creation, **a direct contractual relationship between the attorney and the client is essential**."  Id. at 1172 (emphasis added).  The Bankruptcy Court had already struck the purported liens.  [1-ER-6.]

Where a law firm cannot establish it has a valid lien, it "is no different from any other plaintiff who claims the defendant [former client] owes it money; it has the right to pursue its claims, but not to deprive the defendant of possession and use of her property and assets in the meantime."  Grant & Eisenhofer, P.A. v. Brown, No. CV175968PSGPJWX, 2018 WL 3817859, at *9 (C.D. Cal. Mar. 27, 2018); cf. In re Bailey, 197 F.3d at 1002 (where predecessor counsel's contract was void, there could be no valid lien and successor counsel could not have committed conversion).  This is significant because without a lien, it is impossible for a prior law firm to sue successor counsel.  Mark L. Tuft et al., California Practice Guide: Professional

Responsibility ¶ 5:799 (The Rutter Group 2019); <u>Matter of Respondent H</u>, No. 89-O-11979, 1992 WL 348560, at *9 (Cal. Bar Ct. Nov. 13, 1992) (attorney could not be disciplined for failing to keep in trust the amount of fees due to former counsel while knowing of "lien" claim when there was not adequate proof the lien in fact existed).

Under California law

(a) An attorney who contracts to represent a client on a contingency fee basis shall, at the time the contract is entered into, ***_provide a duplicate copy of the contract, signed by both the attorney and the client, or the client's guardian or representative, to the plaintiff, or to the client's guardian or representative_***.
...
(b) ***_Failure to comply with any provision of this section renders the agreement voidable at the option of the plaintiff_***, and the attorney shall thereupon be entitled to collect a reasonable fee.

Cal. Bus. & Prof. Code § 6147 (emphasis added).  Hernandez, Le, and Young Blue disputed the existence of the purported contracts that supposedly contain the lien provisions but, if such contracts *did* exist, they each exercised their right to void their respective contracts as they never received copies of these purported contingent fee contracts, signed by both themselves and EA. (4-ER-725 ¶ 8., 4-ER-733 ¶ 5, 4-ER-730 ¶ 6.)  The Trustee could locate only two purported contracts, for <u>Ramirez</u> and <u>Le</u>, and admitted that neither was signed by EA.  (4-ER-789.)

In addition, the Clients, through their counsel, ***_already voided the contracts_*** (if they ever existed) by informing the Trustee that the Estate was not entitled to any

recovery pursuant to contract and demanding that the Trustee produce the purported contracts. (4-ER-738-82); (4-ER-786–87.)  Alderman v. Hamilton, 205 Cal. App. 3d 1033, 1038, 252 Cal. Rptr. 845 (1988) (clients had exercised right to void contract when they "denied that the contract was enforceable and refused to pay any moneys to Alderman after the sale of the real property").

"If the contingency fee agreement is void, there is no contingency fee arrangement. 'A void contract is no contract at all; it binds no one and is a mere nullity....Consequently, such a contract cannot be enforced.'" Fergus v. Songer, 150 Cal. App. 4th 552, 573, 59 Cal. Rptr. 3d 273, 290 (2007).  Notably, a court cannot recognize a lien based upon a void contract.  In re Bailey, 197 F.3d at 1002.

Because Judge Clarkson voided the purported liens, following the Clients' decision to exercise their right to void them, the Trustee cannot bring a declaratory relief claims against X-Law.  (1-ER-6.)

## 2. The Claims Related to the Ramirez Litigation Have Additional Deficiencies.

### a. The Purported Ramirez Retainer Agreement Was Void Because It Was Never Approved by Any Court.

Under California law,

"[a] contract for attorney's fees for services in litigation, made by or on behalf of a minor, is void unless the contract is approved, on petition by an interested person, by the court in which the litigation is pending"

Cal. Fam. Code § 6602.

31

Here, the Amended Complaint itself did not allege that this was done in the Ramirez personal injury case; nor is there any evidence of it occurring. (5-ER-798–801, 5-ER-825–63.) Therefore, any contingent fee contract that might have existed is void and X-Law owes no duty to the Trustee, and cannot be held liable on the declaratory relief claim. In re Bailey, 197 F.3d at 1002.

### b. **Any Claim Against the Ramirez Estate Is Time Barred.**

Under California law, "[i]f a person against whom an action may be brought on a liability of the person, whether arising in contract, tort, or otherwise, and whether accrued or not accrued, dies before the expiration of the applicable limitations period, and the cause of action survives, an action may be commenced within one year after the date of death, and the limitations period that would have been applicable does not apply." Cal. Civ. Proc. Code § 366.2(a). "Code of Civil Procedure section 366.2 provides for an outside time limit of one year for filing any type of claim against a decedent." Dobler v. Arluk Med. Ctr. Indus. Grp., Inc., 89 Cal. App. 4th 530, 535, 107 Cal. Rptr. 2d 478 (2001). More than a year after Ramirez' death, the Trustee filed suit. He waited too long.

To be clear, this state deadline applies to bankruptcy estates and their trustees; EA's bankruptcy had no effect on the Trustee's deadline. Kapila v. Belotti (In re Pearlman), No. 6:07-BK-00761-KSJ, 2012 WL 2370389, at *3, 2012 Bankr. LEXIS 2858 (Bankr. M.D. Fla. June 18, 2012). Another court found that the Bankruptcy

Code's "preemption [of a similar probate statute] to be inappropriate because we cannot discern a 'clear and manifest' intention on the part of Congress to override the state's strong and traditional interest in regulating the probate matters of its citizens." In re Phar-Mor, Inc. Sec. Litig., 178 B.R. 692, 696 (W.D. Pa. 1995), aff'd sub nom. Coopers & Lybrand v. Shapira, 101 F.3d 689 (3d Cir. 1996).  The court also recognized another reason to follow the state statute of limitations:

> A nonclaim statute forever terminates the estate's capacity to be sued, regardless of the cause of action asserted. Congress, in enacting the Bankruptcy Code, expressly left to state law the determination of an individual's capacity to be sued in adversary proceedings by incorporating Fed.R.Civ.P. 17 into the bankruptcy scheme. Rule 17(b) provides, in relevant part, that the "capacity of an individual ... to sue or be sued shall be determined by the law of the individual's domicile." In light of this specific provision in the Bankruptcy Code, we submit that preemption would be inappropriate

Id. (citation omitted).  This circuit has endorsed the position taken in Phar-Mor.  In re EPD Inv. Co., LLC, 523 B.R. 680, 691 (B.A.P. 9th Cir. 2015) ("In cases like *Phar–Mor,* which involve state probate statutes, we agree that because Congress has not expressed an intention to override a state's strong and traditional interest in regulating probate matters, the Code may not control.").

Notably, this has been recently confirmed by a well-reasoned decision in the bankruptcy court of this district in <u>Gottlieb v. Berrent (In re Lee)</u>, Adv. No. 1:20-ap-01066-MT, Case No. 1:18-bk-11869-MT (Bankr. C.D. Cal. Jan. 19, 2021), which relied on <u>EPD</u> and <u>In re Pearlman</u>. (2-ER-27–32.)  Judge Tighe held that Section 366.2 bars a Chapter 7 trustee's voidable transaction claims against a probate estate that was not commenced within California's one-year statute. (2-ER-29–31.) It also held that the one-year statute of California's Probate Code controls instead of Bankruptcy Code §546's two-year statute, based on federalism's strong and traditional interest in allowing the States to regulate probate matters. (2-ER-31.) Finally, it recognized that Section 366.2 applies to requests for declaratory relief. (2-ER-31–32.)

Although the failure to comply with the statute of repose was sufficient reason to dismiss the claims against Hernandez, the Trustee also failed to comply with the prerequisites for bringing a claim against the estate of a decedent.  "A timely filed claim is a condition precedent to filing an action against a decedent's estate." <u>Dobler</u>, 89 Cal. App. 4th at 536; Cal. Prob. Code § 9351 ("An action may not be commenced against a decedent's personal representative on a cause of action against the decedent unless a claim is first filed as provided in this part and the claim is rejected in whole or in part.").

Here, the Trustee failed to file a timely claim in probate court before initiating

this lawsuit. The deadline to file a claim is, by default, "[f]our months after the date letters are first issued to a general personal representative." Cal. Prob. Code § 9100. Hernandez was appointed on May 30, 2019. (2-ER-58.)  Therefore, the claim was filed late.  (2-ER-60–61.)

Even if the Trustee asserted lack of knowledge of the probate proceedings, he would still be time barred. Cal. Prob. Code § 9103 (setting forth 60-day period to file petition with the court for leave to file a late claim that runs, at the latest, from date of actual knowledge of the administration of the estate).  EA's receiver had filed and served a notice of lien on June 12, 2019. (4-ER-697.) Two entries before this in the register of action is the motion for leave to file a first amended complaint, which was filed by "Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez, deceased." (3-ER-376.) Thus, by June 12, 2019, EA had knowledge that Ramirez was deceased and that the estate had been opened and the Trustee has failed to petition the probate court to file a late claim "within 60 days after the creditor has actual knowledge of the administration of the estate." Cal. Prob. Code § 9103(a)(1). Instead, the Trustee filed a probate claim (which is not a petition) on September 25, 2020. (92-ER-61.) Filing a late claim and then suing without petitioning the probate court results in dismissal of the lawsuit. Interinsurance Exch. v. Narula, 33 Cal. App. 4th 1140, 1147-48, 39 Cal. Rptr. 2d 752, 756-57 (1995)

35

Because the Trustee failed to file a timely claim or timely petition to file a late claim, his claim for relief against the Ramirez estate in this action is time barred as a matter of law. More than 60 days have passed since the Trustee filed his probate claim (and obviously the Trustee had notice of administration of the estate at the time he filed the claim). The probate court is also unable to allow a claim because Ramirez passed away more than a year prior. Cal. Prob. Code § 9103(f). Likewise, 11 U.S.C. § 108 cannot save the Trustee. See Spears Carpet Mills, Inc. v. Century Nat. Bank of New Orleans, 85 B.R. 86, 88 (W.D. Ark. 1988) (deadlines that serve as condition precedents to bringing state law claims are not extended by 11 U.S.C. §108(a)). The ultimate consequence of this is that the Bankruptcy Court should have dismissed the claim with prejudice. Kapila v. Belotti (In re Pearlman), 2012 WL 2370389, at *3.

### c. **EA's Client was Ramirez, Not Hernandez in Her Personal Capacity.**

In an apparent attempt to avoid the dispositive arguments above, the Trustee implied that EA somehow represented Hernandez, Ramirez's mother and guardian ad litem, while EA simultaneously represented Ramirez.  This argument fares no better.  "A guardian *ad litem* is not a party to an action, but merely the representative of record of a party." J.W. v. Superior Court, 17 Cal. App. 4th 958, 964, 22 Cal. Rptr. 2d 527 (1993).  "Attorneys for a minor...may be selected by a guardian or

conservator, **but the attorney-client relationship exists with the minor or incompetent person, not the guardian or conservator**."  Mark L. Tuft, Ellen R. Peck, and Kevin E. Mohr, California Practice Guide: Professional Responsibility ¶ 3:122.1 (2019) (emphasis added).

`EA had no valid lien on the proceeds of Hernandez's wrongful death claim and the Trustee has no cause to sue her here.  EA's client was Ramirez, not Hernandez, and EA withdrew as counsel for Ramirez while he was still alive. Hernandez had no claim until after Ramirez passed away, and he did not pass away until 9 months after EA was no longer involved in his case.  Although California recognizes wrongful death claims for the loss of a child, loss of consortium, the equivalent claim that allows one to recover for the damages they sustain as a result of an injury suffered by a loved one who has not passed away, can be brought by spouses, but not parents. Baxter v. Superior Court, 19 Cal. 3d 461, 466, 563 P.2d 871 (1977) (declining to recognize loss of consortium claims brought by parents); Budavari v. Barry, 176 Cal. App. 3d 849, 854 n.7, 222 Cal. Rptr. 446, 449 n.7 (1986) ("To the extent that appellant here seeks recovery for loss of consortium, a wrongful death action affords compensation for equivalent elements: loss of support or services, and deprivation of love, companionship, affection, and the like").  Having no attorney-client relationship with Hernandez in her personal capacity, the Trustee could not interfere in any manner with her recovery. Therefore, because Hernandez

37

in her personal capacity was the only recipient of settlement money from the Ramirez litigation, the declaratory relief claim, and other similar claims relating to it, should have been dismissed.  (4-ER-555 ¶ 80.)

In his opposition to the ani-SLAPP, the Trustee argued that Hernandez had liability because "she actually signed the retainer and was an intended beneficiary of the services for purposes of *quantum meruit*." (3-ER-264.) The Trustee acknowledged Hernandez was solely the guardian ad litem for Ramirez. (3-ER-264.) As such, Hernandez was acting as Ramirez's agent. Cruz v. Superior Court, 121 Cal. App. 4th 646, 651–52, 17 Cal. Rptr. 3d 368, 371–72 (2004). It is a basic rule of agency law that "[i]t is presumed, in the absence of an agreement otherwise, that an agent who contracts for a disclosed principal intends to bind only the principal and not to incur a personal liability. Thus, the agent will not ordinarily be held personally liable except on clear and explicit evidence of an intention to substitute his or her personal liability for that of the principal or to add his or her personal liability to that of the principal." 2B Cal. Jur. 3d Agency. None of the extremely limited exceptions that impose personal liability on the agent are available here:

> One who assumes to act as an agent is responsible to third persons as a principal for his acts in the course of his agency, in any of the following cases, and in no others:
>
> 1. When, with his consent, credit is given to him personally in a transaction;

2. When he enters into a written contract in the name of his principal, without believing, in good faith, that he has authority to do so; or,

3. When his acts are wrongful in their nature.

Cal. Civ. Code § 2343. To be clear, "wrongful" means tortious. Peredia v. HR Mobile Servs., Inc., 25 Cal. App. 5th 680, 693, 236 Cal. Rptr. 3d 157, 167 (2018). Quantum meruit claims are not torts. Drake v. Toyota Motor Corp., No. 2:20-CV-01421-SB-PLA, 2020 WL 7040125, at *13 (C.D. Cal. Nov. 23, 2020) (explaining that unjust enrichment is not a tort); Fed. Deposit Ins. Corp. v. Dintino, 167 Cal. App. 4th 333, 346, 84 Cal. Rptr. 3d 38, 49 (2008) (quantum meruit and unjust enrichment are the same).

The purported Ramirez retainer agreement and draft retainer agreement both identify Hernandez as signing in her capacity as guardian ad litem for Ramirez. (4-ER-622, 5-ER-1057, 5-ER-1062.) Therefore, Hernandez did not enter into any implied agreement with EA in her personal capacity and is not responsible for paying EA's claim for fees arising out of the Ramirez litigation.

"A person who, incidentally to the performance of his own duty or to the protection or the improvement of his own things, has conferred a benefit upon another, is not thereby entitled to contribution." Dinosaur Dev., Inc. v. White, 216 Cal. App. 3d 1310, 1315, 265 Cal. Rptr. 525, 528 (Ct. App. 1989). "The burden is on the person making the quantum meruit claim to show the value of his or her services and that they were rendered at the request of the person to be charged.

Allowing an attorney to recover the reasonable value of his or her services from a client is premised on the services being requested by the client." Strong v. Beydoun, 166 Cal. App. 4th 1398, 1404, 83 Cal. Rptr. 3d 632, 635–36 (2008) (citation omitted). What this means is that "[t]he client is not liable for quantum meruit fees to a lawyer with whom he or she did not contract and whose services the client did not request." Mark L. Tuft et al., California Practice Guide: Professional Responsibility ¶ 5:466.2a (The Rutter Group 2019). Hernandez did not request EA's services in her personal capacity, but as the guardian ad litem of Ramirez. The Trustee may believe that Hernandez benefited from the legal services EA provided, but EA provided services to Ramirez, *not Hernandez,* and she did not become liable under a quantum meruit theory by virtue of obtaining some purported benefit in the process of EA representing Ramirez when her wrongful death claim did not yet exist. Finally, "mere retention and use of the benefit resulting from the work where the recipient was not free to elect whether or not to accept or where that election could not influence the conduct of the other party with reference to the work performed" is insufficient to form the basis for a cause of action. 55 Cal. Jur. 3d Restitution § 53. Hernandez in her personal capacity could not somehow reject the purported incidental benefit she would supposedly later receive in her personal capacity from EA for work it had previously done on her son's case.

### 3.     The "Claim" for Preliminary Injunction.

The "claim" for preliminary injunction suffered from the same legal deficiencies as the declaratory relief claims suffered from, as was explained above. Significantly, "[t]o seek injunctive relief, a plaintiff must show that he is under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury." Summers v. Earth Island Inst., 555 U.S. 488, 493 (2009). The same ripeness/justiciability issue is present. In addition, although Judge Clarkson believed otherwise (Transcript at 12:4-2:7), preliminary injunctive relief is not a cause of action. Goines v. Select Portfolio Servicing, Inc., No. 2:17-cv-00511-ODW (SKx), 2017 WL 8230221, at *3 (C.D. Cal. Apr. 21, 2017) (citing Jensen v. Quality Loan Serv. Corp., 702 F. Supp. 2d 1183, 1201 (E.D. Cal. 2010).)

### 4.    The Tortious Interference Claims

As was noted above, the Trustee never addressed whether the two tortious interference claims were legally sufficient or whether he had sufficient evidence to prevail a trial, thereby conceding that he did not. Putting aside the fatal lack of evidence to substantiate the claims, they suffered from fatal legal deficiencies that required dismissal under the anti-SLAPP statute.

### a.  The Trustee Failed to State a Claim for Tortious

**Interference with Contractual Relations.**

The claim for tortious interference with contractual relations fails because "[a]s its name implies, the existence of a valid contract is essential to the cause of action." Cuevas-Martinez v. Sun Salt Sand, Inc., 35 Cal. App. 5th 1109, 1120, 248 Cal. Rptr. 3d 200 (2019). As was explained above, the contract here, the Ramirez retainer agreement, was void and in any event has been voided, thereby barring a tortious interference claim. A-Mark Coin Co. v. Gen. Mills, Inc., 148 Cal. App. 3d 312, 322, 195 Cal. Rptr. 859, 866 (Ct. App. 1983).

In addition, the Trustee admitted that EA waived any entitlement to fees, meaning that this claim fails for lack of causation. (4-ER-655; 4-ER-560 at ¶ 122.)

Moreover, this claim fails for another reason: X-Law owes a duty to its client, not its client's former attorney or the former attorney's bankruptcy estate or its chapter 7 trustee. "It would be inconsistent with an attorney's duty to exercise independent professional judgment on behalf of his client to impose upon him an obligation to take into account the interests of predecessor attorneys." Mason v. Levy & Van Bourg, 77 Cal. App. 3d 60, 67, 143 Cal. Rptr. 389 (Ct. App. 1978). The Trustee takes issue with how X-Law's resolution of Ramirez affects EA, but ignores that X-Law's duty is to its clients, not to the Trustee or EA. X-Law cannot be sued for settling a case in a matter that is prejudicial to EA's purported lien because that requires the Court to second guess the decisions behind why the case was settled in

42

that manner to begin with.  "It can hardly be said that a client's intention in instituting a lawsuit is to benefit his attorney or that his intention in transferring his lawsuit from one attorney to another is to benefit the former attorney. The scope of liability for negligence should not be extended to such a situation."  Id. at 68.  The same is true for the Trustee's tortious interference claim.

X-Law cannot be sued for a claim that, if taken as true, would mean that X-Law had informed Hernandez (the individual who would actually make any allocation decisions) of her right to not allocate any of the settlement to the estate of Ramirez.  Sweeley v. Gordon, 47 Cal. App. 2d 385, 387, 118 P.2d 16 (1941). Moreover, the litigation privilege also protects X-Law from liability from making settlement offers to other parties.  GeneThera, Inc., 171 Cal. App. 4th at 910.  In addition, X-Law's conduct as the attorney and therefore an agent for its clients is privileged.  Strawn v. Morris, Polich & Purdy, LLP, 30 Cal. App. 5th 1087, 1102, 242 Cal. Rptr. 3d 216 (2019).  "[A]bsent extraordinary circumstances, an attorney may not be held liable for urging a client to breach a contract with some third party." Schick v. Lerner, 193 Cal. App. 3d 1321, 1329, 238 Cal. Rptr. 902 (1987).

Finally, the litigation privilege bars tortious interference claims between counsel that arise out of fee disputes.  Olsen, 191 Cal. App. 4th at 337.  The litigation privilege also bars liability on purported misrepresentation to the probate court or concealment of facts from the probate court.  Graham-Sult, 756 F.3d at 742;

Crossroads Inv'rs, L.P. v. Fed. Nat'l Mortg. Assn., 13 Cal. App. 5th 757, 786, 222 Cal. Rptr. 3d 1, 27 (2017).

### b. **The Trustee Failed to State a Claim for Tortious Interference With Prospective Economic Advantage.**

The tortious interference with prospective economic advantage claim is almost entirely duplicative of the tortious interference with contract claim and should be denied for the same reasons. The one portion of the claim that is distinct is the Trustee's bizarre allegation that "the parties did not effectuate a 'referral fee' to EA." (4-ER-558 at ¶ 102.) It is unclear why the Trustee believed that a violation of why this constituted tortious conduct. However, the law is clear that written client consent must be provided before such an agreement is entered into. California Rules of Professional Conduct Rule 1.5.1 and former Rule 2-200. The Trustee never alleged that consent was provided, meaning that the claim fails for lack of causation. Westside Ctr. Assocs. v. Safeway Stores 23, Inc., 42 Cal. App. 4th 507, 530, 49 Cal. Rptr. 2d 793 (1996).

Referring attorneys cannot use lawsuits to obtain referral fees that clients did not consent to. See Chambers v. Kay, 29 Cal. 4th 142, 155–56, 56 P.3d 645 (2002). This remains true even if the Trustee articulated the referral fee as a quantum meruit claim. Id. at 162.

In addition, the prospective advantage claim fails because the Trustee failed

to identify how X-Law's actions were independently wrongful.  Gemini Aluminum

Corp. v. California Custom Shapes, Inc., 95 Cal. App. 4th 1249, 1257, 116 Cal. Rptr.

2d 358 (2002).  This is "conduct that was wrongful by some legal measure other than

the fact of interference" itself.  Della Penna v. Toyota Motor Sales, U.S.A., Inc., 11

Cal. 4th 376, 393, 902 P.2d 740 (1995).

### 5.  The Voidable Transfer Claim

The Trustee alleges avoidable transfers arising from both actual fraud and

constructive fraud. (Dkt. No 92 ¶ 117-132.) The complaint, however, fails to allege

any transfer or any transfer that caused harm to the Debtor and its creditors. See

CACI 4200, 4202 (each require showing that "That [debtor] [transferred

property...to [defendant];...That [plaintiff] was harmed).

The plain language of the fee waiver letter contradicts the Trustee's

allegations.  (4-ER-560 ¶ 122.) Although the Trustee alleges that "[i]n violation of

the July 11, 2018 Order and with full knowledge of the $10 million JFL Judgment,

Michael Avenatti thereafter entered an agreement with Marchino and EA where the

Hernandez case was transferred to Marchino's firm (X-Law) and EA waived its right

to fees in the Hernandez case", the letter demonstrates that this is purposefully

misleading. (4-ER-560 ¶ 122.)  The letter does not suggest any agreement with

anyone to waive fees; to the contrary it states that "We want to inform you [the

client–Andres Ramirez] that given the limited amount of time we worked on your

45

case, **Eagan Avenatti will not seek to recover fees from any recovery you may ultimately receive**."  (4-ER-570 , emphasis added.)   The letter was signed by Avenatti and on EA letterhead, and addressed to Ramirez himself.  (4-ER-570.)  It is clear from the letter that EA acted unilaterally and that X-Law had no involvement in this decision by EA.  X-Law only served as successor counsel for Ramirez.

The fatal deficiencies of the fraudulent transfer claim can be posed as three questions: (1) what is the transfer? (2) who is the transferee? and (3) what are the damages?

As best Defendants can determine, there are three possible purported transfers that are alleged here: the transfer of the Ramirez case or client from EA to X-Law, the waiver of fees in the Ramirez case, and the structuring of the settlement of the Ramirez case in a manner that resulted in Hernandez receiving a recovery and the estate of Ramirez not receiving any net recovery.

Because a contingent fee agreement is between the attorney and client, any waiver of fees is at best a transfer from EA to Ramirez, and not to X-Law.  This is another instance of the Trustee attempting to sue X-Law when his actual dispute is with the client.  This ends the analysis.  The law is clear that a voidable transfer claim is alleged against the recipient or the person for whose benefit the transfer was made. See CACI 4200, 4202 (each require showing that "That [*debtor*] [transferred property...to [*defendant*]."); 11 U.S.C. § 550(a)(1). Similarly, under the dominion or

46

control test, the transferee would be the *client*, not X-Law. <u>In re Bullion Reserve of</u>

<u>N. Am.</u>, 922 F.2d 544, 549 (9th Cir. 1991). Any waived fees would have belonged

to Ramirez, so he was the beneficiary, not X-Law. This is also clear from the way

attorneys are required to treat settlement funds that they receive into their trust

accounts. Former Rule 4-100(A)[2] of the California Rules of Professional Conduct,

the rules in force at the time of EA's misconduct, explicitly states that:

> In the case of funds belonging in part to a client and in part presently
> or potentially to the member or the law firm, the portion belonging to
> the member or law firm must be withdrawn at the earliest reasonable
> time after the member's interest in that portion becomes fixed.
> However, when the right of the member or law firm to receive a portion
> of trust funds is disputed by the client, the disputed portion shall not
> be withdrawn until the dispute is finally resolved.

There are three basic methods that will result in fees becoming fixed:

- the *client expressly approves the attorney's interest* in a certain
  amount of the trust funds (e.g., by expressly approving a billing or
  an accounting of the funds setting forth the amount of fees earned
  by the attorney); *or*
- the *attorney and client agree* to the amount of the attorney's interest
  following a dispute; *or*
- the amount of the attorney's interest has been set forth in a *civil
  judgment, court order or binding arbitration award*.

Tuft, Peck & Mohr, California Practice Guide: Professional Responsibility) ¶

9:162.2 (The Rutter Group 2018) (original italics.) The attorney only gains dominion

or control over the fees <u>after</u> the client assents or loses in litigation brought by the

---

[2] Current Rule 1.15 does not materially differ.

attorney. The problem for the Trustee, however, is that at least with regards to the portion of the <u>Ramirez</u> case that has settled, the Trustee will not obtain a recovery because the <u>Ramirez</u> estate did not obtain a recovery.

To be clear, transferring a *client or lawsuit* cannot be a fraudulent transfer. "It has long been recognized in this state that the client's power to discharge an attorney, with or without cause, is absolute." <u>Fracasse</u>, 6 Cal. 3d at 790. The California Supreme Court recently addressed this issue when it addressed a question the Ninth Circuit certified for it to hear. <u>Heller Ehrman LLP v. Davis Wright Tremaine LLP</u>, 4 Cal. 5th 467, 471, 411 P.3d 548 (2018). There a law firm had filed for chapter 11 bankruptcy and the bankruptcy administrator had attempted to set aside a waiver of the dissolved firm's right to fees earned by attorneys after the dissolution of the firm that the administrator contended was a fraudulent transfer. <u>Id.</u> at 472. The court held that a law firm could not have a property interest in ongoing matters because that "would also risk impinging on the client's right to discharge an attorney at will." <u>Id.</u> at 479. It recognized that a contrary rule could result in clients being pressured to use second-choice counsel rather than continue to use counsel who they had worked with previously and had moved on to other firms. <u>Id.</u> Applying this ruling, the Ninth Circuit held that there could be no fraudulent transfer because the law firm had no interest in the property. <u>In re Heller Ehrman LLP</u>, 716 F. App'x 693, 695 (9th Cir. 2018).

48

To the extent that the Trustee assumed that because EA waived its fees, X-Law received additional fees, that assumption was never stated and is fundamentally flawed. Attorneys are permitted to draft their contingent fee agreements in a manner where this would not occur. Mark L. Tuft, Ellen R. Peck, and Kevin E. Mohr, California Practice Guide: Professional Responsibility ¶ 5:1060.1 (2019). Thus, X-Law cannot be said to be the beneficiary or subsequent transferee of the transfer. The only conceivable beneficiary was Ramirez, who, putting aside EA's abandonment of his case, as discussed below, was clearly released from any obligation to pay EA a quantum meruit fee if he settled his case.

It is possible the Trustee intended to allege that the purported structuring of the Ramirez settlement is the fraudulent transfer. (4-ER-555 ¶ 80, 4-ER-557¶ 97.) However, that would be a transfer from Ramirez's estate to Hernandez, not to X-Law and, in any event, such claims would be barred by the litigation privilege for the reasons set forth in the opposition to the Trustee's tortious interference claims, as was explained above. Again, X-Law would not be the beneficiary or subsequent transferee.

Two elements of fraudulent transfer, harm and causation, are also not met for several reasons. As the letter itself indicates, EA waived its fees because it was never entitled to any, because EA was "unable to continue representing" Ramirez. (4-ER-570.) "[R]ecovery for services in quantum meruit is allowed only when the

attorney has *justifiable* cause for withdrawing. An attorney who voluntarily abandons a case without good cause will be denied compensation." Estate of Falco, 188 Cal. App. 3d at 1014.  In order to establish good cause exists,

> the attorney has the burden of proof to show: (1) counsel's withdrawal was mandatory, not merely permissive, under statute or state bar rules; (2) the overwhelming and primary motivation for counsel's withdrawal was the obligation to adhere to these ethical imperatives under statute or state bar rules; (3) counsel commenced the action in good faith; (4) subsequent to counsel's withdrawal, the client obtained recovery; and (5) counsel has demonstrated that his work contributed in some measurable degree towards the client's ultimate recovery.

Id. at 1016.  The reason for this rule "is the inequity of allowing lawyers to capitalize on their own voluntary actions in leaving clients lawyerless."  Rus, Miliband & Smith v. Conkle & Olesten, 113 Cal. App. 4th 656, 675, 6 Cal. Rptr. 3d 612 (2003). EA waived fees that it could never have collected because it abandoned, without cause, Ramirez.  Therefore, there was not any property that EA transferred to *anyone* and X-Law's actions could not have caused any harm.  The letter merely recognized that EA was *already* not entitled to any fees.

In addition, the letter also demonstrates that Ramirez, not his mother Hernandez, was the only client that EA represented and the only client whose fees were waived.  (4-ER-570.)  Combined with the fact that the time has run for the Trustee to sue Ramirez's estate and that Hernandez, not Ramirez's estate, received the entirety of the settlement, EA's transfer cannot have caused any damages to anyone.  The Trustee would be unable to recover any fees regardless of whether the

letter's waiver is enforceable or voidable.  For the same reason, the Trustee lacks Article III standing to bring the claim because he has not alleged an injury in fact.  Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1548 (2016).  The fraudulent transfer claim is a strong example of a claim where there is no injury in fact.  Voiding the transfer would have no consequence.

**6.  The Trustee failed to Carry His Burden of Establishing He Had Sufficient Evidence to Prevail at Trial.**

The Trustee identified the specific "evidence" he was relying on to establish the facts he needed to substantiate the claims that he had not abandoned.  (3-ER-276–80.)  However, Defendants submitted evidentiary objections (2-ER-35–52

), which the Court largely sustained, resulting in the Trustee being unable to establish key facts he needed to substantiate his claims.

First, the Trustee failed to establish that Hernandez believed that it was unlikely Ramirez would survive.  (3-ER-276-77; 3-ER-285 ¶ 26; 2-ER-45 Obj. 20; 6-ER-1144–45 6:11-62:2.)  This meant that the Trustee would be unable to establish Hernandez was actually having EA do work on *her* behalf, as opposed to her son's, on the Ramirez case, which the Trustee relied on to attempt to obtain a quantum meruit/declaratory relief recovery notwithstanding the fact that Hernandez was never EA's client, and the estate of Ramirez did not receive anything from the settlement of the Ramirez case.  (3-ER-279.)

Second, the Trustee was unable to establish that the <u>Ramirez</u> case had settled, how the settlement was structured, and whether the settlement had even been paid. (3-ER-278–79; 3-ER-287 ¶ 36-37; 2-ER-49 Obj. 28-29; 6-ER-1134–35 51:5-51:6, 52:10-52:11, 6-ER-1139 66:12-66:19.] This meant it was impossible for the Trustee to establish that his claims were ripe and that there were any damages.

Accordingly, even if the Trustee's claims were not legally deficient, Judge Clarkson should have dismissed them under the anti-SLAPP statute because the Trustee failed to substantiate them.

### E.   Because the Trustee's Claims Should Have Been Dismissed Under the Anti-SLAPP Statute, Defendants Should Have Been Awarded Attorneys' Fees.

"[A]ny SLAPP defendant who brings a successful motion to strike is entitled to *mandatory* attorney fees." <u>Ketchum v. Moses</u>, 24 Cal. 4th 1122, 1131, 17 P.3d 735, 741 (2001) (emphasis added). That will include fees for prevailing on this appeal. <u>Morrow v. Los Angeles Unified Sch. Dist.</u>, 149 Cal. App. 4th 1424, 1446, 57 Cal. Rptr. 3d 885, 902 (2007) Fees are awardable even if the defendant only obtained dismissal of certain claims or theories. <u>Bel Air Internet, LLC v. Morales</u>, 20 Cal. App. 5th 924, 946, 230 Cal. Rptr. 3d 71, 88 (2018); <u>Morrow</u>, 149 Cal. App. 4th at 1446. The <u>Le</u> and <u>Young Blue</u> declaratory relief claims, as well as the two tortious interference claims were dismissed by the Trustee in the face of this anti-

SLAPP motion.  Even if this Court does not find that Judge Clarkson erred in not dismissing the remaining claims pursuant to the anti-SLAPP statute, fees should be determined and awarded to Defendants on remand.  Dismissal of any of the claims against Defendants is not a "minimal and insignificant" victory.  Id.

## VII.   CONCLUSION

Defendants request that the Court reverse Judge Clarkson's denial of Defendants' anti-SLAPP motion and remand the case to Judge Clarkson for determination of the appropriate attorneys' fee award to Defendants.

Dated:  April 26, 2021          LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.

                                          */s/Kurt Ramlo*
                                          KURT RAMLO, ESQ.,
                                          *Attorneys for Appellants The X-Law Group, P.C.,*
                                          *a professional corporation and Filippo Marchino,*
                                          *an individual*

Dated:  April 26, 2021          THE X-LAW GROUP, P.C.

                                          */s/ Filippo Marchino*
                                          FILIPPO MARCHINO, ESQ.,
                                          *Attorneys for Appellants Young Blue LLC, Elba*
                                          *Hernandez, individually and as personal*
                                          *representative and successor in interest to Andres*
                                          *Ramirez, deceased, and Sandy Le, individually and*
                                          *on behalf of Tina Ngan Le, decedent*

## CERTIFICATE OF COMPLIANCE

I hereby certify that pursuant to Fed. R. Bankr. P. Section 8015(e)(h), Appellants' Opening Brief contains 12,842 words. The undersigned relied on the word count of his Microsoft Word word processing software in making this certification.

Dated:  April 26, 2021            **THE X-LAW GROUP, P.C.**

*/s/ Filippo Marchino*
FILIPPO MARCHINO, ESQ.,
*Attorneys for Appellants Elba Hernandez,*
*individually and as personal representative and*
*successor in interest to Andres Ramirez, deceased,*
*Young Blue LLC, and Sandy Le, individually and*
*on behalf of Tina Ngan Le, decedent*