**Appeal Case No. 8:21-CV-00336-ODW**

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

**In Re: EAGAN AVENATTI, LLP**

**THE X-LAW GROUP, P.C., a professional corporation;
FILIPPO MARCHINO, an individual, *et al.*,**

*Appellants and Defendants*,

vs.

**RICHARD A. MARSHACK, Chapter 7 Trustee for Eagan
Avenatti, LLP,**

*Respondent and Plaintiff*,

On Appeal from the United States District Court for the Central
District of California
Bankruptcy Case No. 8:18-BK-13560-SC
Adversary Case No. 8:20-ap-01086-SC
Honorable Scott C. Clarkson, Bankruptcy Judge

## RESPONDENT'S BRIEF

KELLNER LAW GROUP P.C.
Richard L. Kellner (SBN 171416)
rlk@kellnerlaw.com
1180 South Beverly Driver, Suite 610
Los Angeles, CA 90035
Tel: 310-780-6759  Fax: 310-277-0635

MARSHACK HAYS LLP
D. Edward Hays (SBN 162507)
ehays@marshackhays.com
TINHO MANG (SBN 322146)
tmang@marshackhays.com
870 Roosevelt
Irvine, CA 92620
Tel: 949-333-7777  Fax: (949-333-7778)

*Attorneys for Respondent and Plaintiff, Richard A. Marshack, Trustee*

# **TABLE OF CONTENTS**

1.   Summary of Argument and Material Allegations in the First
     Amended Complaint.................................................................. 1

2.   Defendants' Appeal is Frivolous Because the Gravamen of the
     Trustee's Claims is Not Based Upon "Protected Activity" ....... 8
     B.   The Declaratory Judgment Claim .................................. 13
     C.   The Uniform Voidable Transactions Act Claim............ 13
     D.   The Tortious Interference Claims. .................................. 15

3.   While Not Necessary Because the Anti-SLAPP Motions Was
     Patently Frivolous Because Defendants Admit that the
     Gravamen of the Claims Was "Quantum Meruit," Defendants'
     Motion Also Fails Because the Trustee Can Prove a Probability
     of Prevailing. ........................................................................... 15

4.   It is the Trustee – and Not Defendants – Who is Entitled to
     Attorneys' Fees; Judge Clarkson is Correct in Stating that
     Defendants' anti-SLAPP Motion is Frivolous. ........................ 32

5.   Conclusion................................................................................ 35

# TABLE OF AUTHORITIES

## Cases

*Albino v. Baca*

   (9th Cir. 2014) 747 F.3d 1162 ........................................................ 31

*Baharian-Mehr v. Smith*

   (2010) 189 Cal.App.4th 265, 273-276, 117 Cal. Rptr. 3d 153 ...... 33

California Back Specialists Medical Group v. Rand

   *(2008) 160 Cal.App.4th 1032, 1036-1037, 73 Cal. Rptr. 3d 268* ..... 4

*Chavez. v. City of Los Angeles*

   (2010) 47 Cal.4th 970, 989 ............................................................. 34

City of Cotati v. Cashman,

   *29 Cal.4th 69, 124 Cal. Rptr. 2d 519, 52 P.3d 695 (2002)* ............... 1

*Curtis v. Estate of Fagan*

   (2000) 82 Cal.App.4th 270, 279-280, 98 Cal. Rptr. 2d 84 ........... 26

*Dacey v. Taraday*

   (2011) 196 Cal.App.4th 962 ..................................................... 27, 28

*Defrees ex rel. U.S. Aero, Inc. v. Kirkland*

   (9th Cir. 2014) 579 Fed Appx. 538 at * 7-8, 2014 U . S . App.

   LEXIS 11163 ................................................................................ 33

*Dragnea v. Dragnea (In re Dragnea)* (Bankr. E.D. Cal. 2019)

   609 B.R. 239, 257 ........................................................................ 22

*Drell v. Cohen*

   (2014) 232 Cal.App.4th 24, 181 Cal. Rptr. 3d 19.......................... 32

Drell v. Cohen

   *(2014) 232 Cal.App.4th 24, 181 Cal. Rptr. 3d 191* .......................... 9

Drell v. Cohen,

   *232 Cal.App.4th 24, 181 Cal.Rptr.3d 191 (2014)* ............................ 1

Drell v. Cohen,

   *232 Cal.App.4th at 30, 181 Cal. Rptr. 3d 191* ................................ 10

*Fox v. Abrams*

   (1985) 163 Cal.App.3d 610, 210 Cal. Rptr. 260 .......................... 29

*Fracasse v. Brent*

   (1972) 6 Cal.3d 784, 792 ................................................... 24

*Fracasse,*

   6 Cal.3d at 792 .............................................................. 25

*Grewal v. Jammu*

   (2011) 191 Cal.App.4th 977, 989, 119 Cal. Rptr. 3d 835 .............. 16

*Grewal v. Jammu*, 191 Cal.App.4th at 989),

   119 Cal. Rptr. 3d 835 .................................................... 20

*Hedging Concepts, Inc. v. First Alliance Mortgage Co.*

   (1996) 41 Cal.App.4th 1410, 1419, 49 Cal. Rptr. 2d 191 ............. 28

*Heller Ehrman LLP v. Davis Wright Tremaine LLP,*

   4 Cal.5th 467 ............................................................. 29

*Heller Ehrman LLP v. Davis Wright Tremaine LLP,*

   4 Cal.5th at 483 .......................................................... 30

*Holber v. Segal (In re Segal)* (E.D. Pa. 2016)

   579 B.R. 734, 751 ....................................................... 22

*In re Birting Fisheries, Inc.,*

   300 B.R. at 497 .......................................................... 22

*In re Eagan Avenatti, LLP*, Case No.

    8:17-bk-11961-CB ......................................................................... 17

*In re Heller Ehrman LLP*

    (9th Cir. 2018) 716 F.App'x 693, 695, 2018 U.S. App. LEXIS 7635

    .................................................................................................... 29

*In re Ryerson*

    (9th Cir. 1984) 739 F.2d 1423, 1424-26 ......................................... 22

*Labrum & Doak v. Ashdale (In Re Labrum & Doak)*

    (Bankr. E.D. Pa. 1998) 227 B.R. 391.............................................. 29

*Leonard v. Alexander*

    (1942) 50 Cal.App.2d 385, 389...................................................... 26

*Maglica v. Maglica*

    (1998) 66 Cal.App.4th 442, 449, 78 Cal. Rptr. 2d 101.................. 26

*Maglica v. Maglica,*

    66 Cal.App.4th at 449, 78 Cal. Rptr. 2d 101 ................................. 21

*Mahony v. Haines*

    (1924) 66 Cal.App. 456.................................................................. 25

Malin v. Singer

    *(2013) 217 Cal.App.4th 1283, 1293, 159 Cal. Rptr. 3d 292*.......... 10

Malin v. Singer *(2013)*

    *217 Cal.App.4th 1283, 129, 217 Cal. App. 4th 1283* ....................... 3

*Mann v. Quality Old Time Serv., Inc.*

    (2006) 139 Cal.App.4th 328, 339-40, 42 Cal. Rptr. 3d 607 .......... 33

Martinez v. Metabolife Internal., Inc.

    *(2003) 113 Cal.App.4th 181, 188, 6 Cal. Rptr. 3d 494*................ 2, 8

*Mojtahedi v. Vargas*

    (2014) 228 Cal.App.4th 974, 176 Cal. Rptr. 3d 313...................... 25

O&C Creditors Group LLC v. Stephens & Stephens XII, LLC
   *(2019) 42 Cal.App.5th 546, 255 Cal. Rptr. 3d 59* ........................... 11

*Overstock.com, Inc. v. Gradient Analytics, Inc.*
   (2007) 151 Cal.App.4th 688, 699-670, 61 Cal. Rptr. 3d 29 .......... 16

*Overstock.com, Inc. v. Gradient Analytics, Inc.*,
   151 Cal.App.4th at 699-670; 61 Cal. Rptr. 3d 29 ........................... 20

Park v. Board of Trustees of California State University
   *(2017) 2 Cal.5th 1057, 1063* ........................................................... 9

Personal Court Reporters, Inc. v. Rand
   *(2012) 205 Cal.App.4th 182, 189-194, 140 Cal. Rptr. 3d 301* .. 4, 10

*Port Medical Wellness, Inc. v. Connecticut General Life Ins. Co.*
   (2018) 24 Cal.App.5th 153, 180, 233 Cal. Rptr. 3d 830................. 28

Rand Resources, LLC v. City of Carson
   *(2019) 6 Cal.5th 610* ........................................................................ 9

Rand Resources, LLC*,*
   *6 Cal.5th at 621* ................................................................... 9, 11, 14

*Rex-Tech Int'l, LLC v. Rollings (In re Rollings)* (5th Cir. 2011)
   451 F.App'x 340, 343-46 ................................................................ 22

*Rosenberg v. Lawrence*
   (1938) 10 Cal.2d 590....................................................................... 26

*Rosenfeld, Meyer & Susman v. Cohen*
   (1987) 191 Cal.App.3d 1035, 237 Cal. Rptr. 14............................. 29

*Sears, Roebuck and Co. v. O'Brien*,
   178 F.3d 962, 964 (8th Cir. 1999)................................................... 22

*Spires v. American Bus Lines*
   (1984) 158 Cal.App.3d 211, 217, 204 Cal. Rptr. 531..................... 29

*Sweetwater Union High School Dist. v. Gilbane Building Co.*
   (2019) 6 Cal.5th 931, 947 ............................................................ 16

*Sweetwater Union High School Dist. v. Gilbane Building Co.,*
   6 Cal.5th at 947 ....................................................................... 20

*Valentine v. Read*
   (1996) 50 Cal.App.4th 787, 793, 57 Cal. Rptr. 2d 836.................. 28

*Valentine v. Read,*
   50 Cal.App.4th at 793, 57 Cal. Rptr. 2d 836 ................................ 21

*Wagner v. Wagner*
   (2008) 162 Cal.App.4th 249 ........................................................ 28

*Wilcox v. Superior Court*
   (1994) 27 Cal.App.4th 809, 33 Cal. Rptr. 2d 446.......................... 15

**Statutes**

*CCP § 425.1(b)(1)* ........................................................................ 1

U.S.C. § 108(a)............................................................................ 27

U.S.C. § 1334 .............................................................................. 22

Other Authorities

Cal. Code of Civil Procedure § 366.2 ......................................... 27, 28

*The Uniform Voidable Transactions Act Claim* ........................ i, 13, 22

**Rules**

Rules of Professional Conduct, Rule 2-200 .................................... 30

**Codes**

Cal. Business & Professions Code § 6147(b)................................... 26

Cal. Civil Code § 3439.04 ............................................................. 22

Cal. Code of Civil Procedure § 425.16(b)(2)................................... 16

Cal. Code of Civil Procedure § 425.16(c)(1) .............................. 32, 34

Cal. Probate Code § 3601............................................................. 26, 27

Cal. Probate Code §§ 2644, 2647......................................................... 27

1. **Summary of Argument and Material Allegations in the First Amended Complaint**

Plaintiff is the Chapter 7 bankruptcy trustee ("Trustee") for Michael Avenatti's law firm, Eagan Avenatti, LLP. In order to recover quantum meruit fees for services provided by Eagan Avenatti before it was substituted out of several valuable contingency cases, Trustee filed suit against several former clients and their successor counsel, The X-Law Group, P.C. and its principal, Filippo Marchino. Mr. Marchino had been a partner in the Eagan Avenatti firm and the attorney in charge of the subject cases. In response to the complaint, The X-Law Group and Mr. Marchino filed an anti-SLAPP motion which the Bankruptcy Court denied as frivolous. This appeal followed.

Under California law, a defendant may file a special motion to strike any cause of action "arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue." CCP § 425.1(b)(1). The burden rests upon the movant to establish a *prima facie* showing that the challenged cause of action arises from protective activity. *Drell v. Cohen*, 232 Cal.App.4th 24, 181 Cal.Rptr.3d 191 (2014). If the movant fails to meet this burden, the California Supreme Court has held that the motion must be denied without the court ever needing to reach a determination of the probable validity of the subject claims. *City of Cotati v. Cashman*, 29 Cal.4th 69, 124 Cal. Rptr. 2d 519, 52 P.3d 695 (2002).

On its face, Appellants' anti-SLAPP motion patently fails because the "principal thrust or gravamen" of the allegations in Trustee's complaint do not arise from defendants' acts in furtherance of their constitutional rights to petition or free speech. *Martinez v. Metabolife Internal., Inc.* (2003) 113 Cal.App.4th 181, 188, 6 Cal. Rptr. 3d 494. Instead, the "principal thrust or gravamen" of Trustee's Amended Complaint ("FAC") is: (a) to avoid the fraudulent transfer made by Michael Avenatti when he purported to waive (in direct contempt of a federal court restraining order) the Eagan Avenatti firm's claim for fees for services performed for the benefit of his partner, Mr. Marchino, and Mr. Marchino's law firm The X-Law Group. The fraudulent transfer occurred shortly after a $10 million judgment was entered against the Eagan Avenatti firm; and (b) to establish the claim for *quantum meruit* fees for work actually performed.

Remarkably, Defendants effectively concede that the anti-SLAPP motion is baseless by acknowledging the gravamen of this case is a claim to *quantum meruit* fees for work done by debtor law firm Eagan Avenatti as follows:

> "This case is, at its core, an attempt by the bankruptcy estate of a law firm, Eagan Avenatti, LLP ("EA"), to obtain quantum meruit fees arising out of three cases from several defendants . . . who the Trustee alleges are EA's former Clients . . ."

(Opening Brief, p. 6.)

2

California law is clear that a claim for *quantum meruit* fees in an action between former and successor counsel does not constitute "protected conduct." *Drell, supra*.  In *Drell*, the plaintiff (successor counsel) filed suit against former counsel seeking declaratory relief regarding the respective rights of the attorneys to fees arising out of the settlement of an underlying case.  In response to the complaint, defendant filed an anti-SLAPP motion which the trial court denied. On appeal, the California Court of Appeal affirmed holding that when the gravamen of a claim is a law firm's entitlement to attorneys' fees – it does not constitute "protected activity."  That is true even if there are collateral facts that could (potentially) involve "protected activity":

> Defendants contend the complaint is based on the assertion of their lien in the demand letter to Mr. Musakhanyan's insurer, which was "related to litigation contemplated in good faith." Defendants argue that attorney demand letters, made in anticipation of litigation, are protected under section 425.16, and that attorney lien claims should be subject to the same standard. (See *Malin v. Singer* (2013) 217 Cal.App.4th 1283, 129, 217 Cal. App. 4th 1283.)  Defendants are correct that a demand letter may be protected, but a complaint is not a SLAPP suit unless the gravamen of the complaint is that defendants acted wrongfully by engaging in protected activity. The complaint here did not allege defendants engaged in wrongdoing by asserting their lien.  Rather, the complaint asked the court to declare the parties' respective rights to attorney fees. The complaint necessarily refers to defendants' lien, since their demand letter is key evidence of plaintiff's need to obtain a declaration of rights, but the complaint does not seek to prevent defendants from exercising their right to assert their lien.

It is well settled that not all litigation-related conduct is protected activity. (See, e.g., *California Back Specialists Medical Group v. Rand* (2008) 160 Cal.App.4th 1032, 1036-1037, 73 Cal. Rptr. 3d 268 [lawsuit concerning the validity of medical liens asserted in a personal injury action did not target protected activity]; *Personal Court Reporters, Inc. v. Rand* (2012) 205 Cal.App.4th 182, 189-194, 140 Cal. Rptr. 3d 301, [lawsuit by court reporters to recover fees incurred in underlying action did not target protected activity].) None of the purposes of the anti-SLAPP statute would be served by elevating a fee dispute to the constitutional arena, thereby requiring a party seeking a declaration of rights under an attorney lien to demonstrate a probability of success on the merits in order to obtain equitable relief.

*Drell* at 30.

After affirming the denial of the anti-SLAPP motion in *Drell*, the Court of Appeal found that the appeal was frivolous: "[a]s for this appeal, we find it has no merit whatsoever and is poorly conceived." *Id* at 31. The same is true in this case.

Even though Plaintiff's Opposition and arguments made during the hearing below centered on *Drell* – the Opening Brief neither mentions this controlling case nor addresses the fact that Defendants' admission that this dispute regarding attorneys' fees cannot constitute a viable anti-SLAPP claim. That is why the Statement of Facts effectively destroys all of Defendants' arguments, *ab initio*, by admitting that the gravamen of this case is the Trustee's attempt to obtain *quantum meruit* fees for work done by the debtor law firm (EA).

Or, perhaps, Defendants want to deflect all attention away from co-defendant Filippo's nefarious and fraudulent scheme with Michael

Avenatti to brazenly violate bankruptcy court orders and seek to defraud the Bankruptcy Court and EA creditors.  This too cannot be deemed "protected activity" – nor does the Statement of Facts even address these core allegations.   However, Defendants' apparent strategy of "burying their head in the sand" is not a strategy that can work based upon this Record.

The timeline of events pled in the operative complaint reveals entirely unseemly (at best) conduct by defendant Filippo Marchino and X-Law – none of which constitutes "protected activity."  It is quite surprising that any rational attorney would want to publicize the facts of this incredibly illicit scheme.   Indeed, the Opening Brief largely **ignores** all of these facts that underly the claims that are the subject of the anti-SLAPP motion:

➢ On May 22, 2018, Jason Frank Law obtained a $10 million judgment in the Bankruptcy Court against debtor Eagan Avenatti LLP ("EA"). [ER 545 – FAC ¶ 13.]

➢ EA is a law firm that had been run by Michael Avenatti – with co-defendant Filippo Marchino ("Marchino") holding himself out as a partner with the firm. [ER 546, 560 – FAC ¶¶ 119, 121.]

➢ Marchino and Avenatti had an intimate and multifaceted relationship.  Among other things, Avenatti admitted **during his bankruptcy** that EA was actually paying the salaries of X-Law employees, paying the office space that was shared by EA and X-Law, and had assigned a portion of EA's fee rights to X-Law. [ER 545, 546 – FAC ¶ 18.]

5

➢ At the same time, Marchino was the EA partner/attorney running a number of lucrative EA contingency matters – including two involving catastrophic injuries sustained by Andres Ramirez (hereinafter, the "Hernandez" action) and Tina Le. [ER 546, 549, 560, FAC ¶ 19, 37, 38, 121.]

➢ In fact, Marchino became the receptor of cases referred by EA upon Avenatti's arrest (for crimes unrelated to the Hernandez representation). [ER 555-56, FAC ¶ 78.]

➢ Brazenly, on June 1, 2018 (within days of the entry of the $10 million JFL judgment), Marchino and Avenatti executed a substitution of counsel form in the Hernandez action – even though the Marchino would continue to work on the case, albeit under the name of his X-Law firm. [ER 546, 560 - FAC ¶¶ 23, 121, 127.]

➢ To make matters even more unseemly, the Bankruptcy Court issued an Order on July 11, 2018, restraining EA from assigning, encumbering, or in any way transferring any proceeds, attorney's fees, costs, rights to payments, and accounts receivable it is or may be entitled to receive from the lawsuits and clients – including those involved in this adversary proceeding. [ER 545, 560 – FAC ¶¶ 74, 122.]

➢ Nonetheless, Avenatti and Marchino blantantly violated the July 11 Order by agreeing that EA would waive its claim to attorney's fees in a case that it had been litigating for over one year. [ER  560 – FAC ¶ 122.]

➢ Indeed, as the partner in charge of the case, Marchino was well aware of the tremendous amount of work done on the

case – from its inception in December 2016 through June 2018. [ER 546 - FAC ¶ 21.]

In sum, the gravamen of this case is: (a) Michael Avenatti conspired with his former partner, Mr. Marchino, in an attempt to defraud creditors by stripping EA's right to attorneys' fees – in direct response to the JFL $10 million judgment and in contempt of a federal court restraining order; and (b) the Trustee efforts to seek *quantum meruit* recovery for fees arising from services performed by the Eagan Avenatti firm.

As Judge Clarkson aptly noted, the anti-SLAPP motion is frivolous and should never have been brought in the first place. Unfortunately, it is representative of the type of "scorched earth" litigation tactics that are generally frowned upon by the Federal courts. Indeed, the operative complaint has been amended (thus mooting the motion to dismiss) [ER 1118 – Hearing Transcript, p. 35:18-25], and yet Defendants persist in pursuing a frivolous appeal from the anti-SLAPP Order that truly will have no substantive effect on the course of this case.

The Trustee was extremely gracious in not directly seeking the award of attorneys' fees for Defendants' frivolous conduct (except as an offset if any entitlement to fees was made) in connection with the initial motion. [ER 281 – Trustee's Opp. to Motion to Strike, p. 31.] Nonetheless, Defendants appear undeterred and continue to leverage their own attorney time to strategically increase the Trustee's cost of litigating this case. As a result, the Trustee must respectfully request the imposition of its attorneys' fees for opposing this frivolous appeal

of an anti-SLAPP claim.  Given the holding in *Drell* that an appeal of an order denying an anti-SLAPP motion relating to a fee dispute "has no merit whatsoever and is poorly conceived," this appeal is not well-grounded in fact or law.

Upon consideration of all of the pleadings and case law, Hon. Scott C. Clarkson correctly ruled that Defendants' anti-SLAPP motion was ***frivolous***:

> . . . The anti-SLAPP motion is frivolous, and it shouldn't be even considered any further than we already have, but I have carefully considered it, and it's frivolous, and it shouldn't have been brought, but that will be the end of that.  It doesn't meet any of the standards necessary for obtaining any attorney fee award of any type with respect to this matter, and that will be the ruling of the Court.

[ER 1153-54 - Hearing Transcript, p. 70:24-71:6.]

Trustee respectfully requests that this Court affirm and find that this appeal is frivolous.

## 2.    Defendants' Appeal is Frivolous Because the Gravamen of the Trustee's Claims is Not Based Upon "Protected Activity"

It is well established that a party cannot base an anti-SLAPP motion upon collateral facts that arguably might involve some form of protected speech.  In order to have a viable anti-SLAPP claim, the "principal thrust or gravamen" of the allegations must arise from an act in furtherance of the movant's constitutional rights to petition or free speech. *Martinez v. Metabolife Internal., Inc.* (2003) 113 Cal.App.4th 181, 188, 6 Cal. Rptr. 3d 494.  This basic flaw in Defendants' motion has been cogently stated by the California

Supreme Court in *Rand Resources, LLC v. City of Carson* (2019) 6 Cal.5th 610:

> . . . [A] claim does not 'arise from' protected activity simply because it was filed after, or because of, protected activity, or when protected activity merely provides the evidentiary support or context for the claim. [Citation.] Rather, the protected activity must 'supply the elements of the challenged claim.'"

*Rand Resources, LLC*, 6 Cal.5th at 621.

Stated succinctly, "the defendant's act underlying the plaintiff's cause of action must itself have been an act in furtherance of the right of petition or free speech." *Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1063.

For each claim that is the subject of the anti-SLAPP motion in this matter, the case of *Drell v. Cohen* (2014) 232 Cal.App.4th 24, 181 Cal. Rptr. 3d 191, is controlling and directly on point. Like this case, *Drell* involved a dispute relating to a former counsel's claim to attorney fees. Drell was the subsequent counsel representing the client. Following the settlement of the action, Drell received a settlement check in his name and that of his client's former counsel (who had also filed an attorney lien). When Drell filed a declaratory relief action to determine the status of former counsel's attorney lien, that attorney responded with an anti-SLAPP motion claiming that the assertion of the lien was "protected activity." The Court ruled that the anti-SLAPP motion was properly denied – because the gravamen of the case was the "claim for fees" and not an attack arising out of the assertion of the lien:

Defendants contend the complaint is based on the assertion of their lien in the demand letter to Mr. Musakhanyan's insurer, which was "related to litigation contemplated in good faith." Defendants argue that attorney demand letters, made in anticipation of litigation, are protected under section 425.16, and that attorney lien claims should be subject to the same standard. (See *Malin v. Singer* (2013) 217 Cal.App.4th 1283, 1293, 159 Cal. Rptr. 3d 292.) Defendants are correct that a demand letter may be protected, but a complaint is not a SLAPP suit unless the gravamen of the complaint is that defendants acted wrongfully by engaging in protected activity. The complaint here did not allege defendants engaged in wrongdoing by asserting their lien. Rather, the complaint asked the court to declare the parties' respective rights to attorney fees. The complaint necessarily refers to defendants' lien, since their demand letter is key evidence of plaintiff's need to obtain a declaration of rights, but the complaint does not seek to prevent defendants from exercising their right to assert their lien.

It is well settled that not all litigation-related conduct is protected activity. (See, e.g., *California Back Specialists Medical Group v. Rand* (2008) 160 Cal.App.4th 1032, 1036-1037, 73 Cal.Rptr. 3d 268 [lawsuit concerning the validity of medical liens asserted in a personal injury action did not target protected activity]; *Personal Court Reporters, Inc. v. Rand* (2012) 205 Cal.App.4th 182, 189-194, 140 Cal. Rptr. 3d 301 [lawsuit by court reporters to recover fees incurred in underlying action did not target protected activity].) None of the purposes of the anti-SLAPP statute would be served by elevating a fee dispute to the constitutional arena, thereby requiring a party seeking a declaration of rights under an attorney lien to demonstrate a probability of success on the merits in order to obtain equitable relief.

*Drell v. Cohen*, 232 Cal.App.4th at 30, 181 Cal. Rptr. 3d 191.

Defendants have failed to cite *Drell* – even though it was the focus of the Opposition to the anti-SLAPP motion [ER 272 – 73 - Trustee's Opp to Motion to Strike, pp. 22-23] and was explicitly referenced at the hearing on the motion. [ER 1152 – Hearing Transcript, p. 69:10-15.]  Instead, they rely upon the inapposite case of *O&C Creditors Group LLC v. Stephens & Stephens XII, LLC* (2019) 42 Cal.App.5th 546, 255 Cal. Rptr. 3d 59, where the Court actually cited *Drell*.  Defendants could not have missed the citation to *Drell*, nor *O&C Creditors Group LLP's* attempt to distinguish the case (which reveals its full applicability to this motion):

> Here, however, the gravamen of the cross-claim is that Fireman's Fund engaged in wrongdoing by settling the Stephens-Fireman's Fund litigation "around" O'Reilly's attorney lien and disbursing proceeds pursuant to the settlement agreement and in contravention of that lien.

*Id*., 42 Cal.App.5th at 571, 255 Cal. Rptr. 3d 59.

In other words, the "settlement agreement" was the crux of the claim in *O&C Creditors Group LLC* – and not the claim for prior counsel's fees.  At most, Defendants recite ancillary facts that merely provide "context" for the claim.  As the Supreme Court has ruled, "a claim does not 'arise from' protected activity . . . when the protected activity merely provides context for the claim:

> A] claim does not 'arise from' protected activity simply because it was filed after, or because of, protected activity, or when protected activity merely provides the evidentiary support or context for the claim. [Citation.] Rather, the protected activity must 'supply the elements of the challenged claim.'"

*Rand Resources, LLC*, 6 Cal.5th at 621.

The gravamen of this case is a claim to avoid the fraudulent transfer of the Eagan Avenatti firm's right to fees and to recover the *quantum meruit* value of services provided.

## A. The Preliminary Injunction Claim

On the Preliminary Injunction claim, the gravamen of the claim is that the Trustee has a *quantum meruit* interest in the fees of the Hernandez matter. Specifically, the gravamen of the Preliminary Injunction claim is set forth in paragraph 44:

> 44.  Under California law, as the former attorneys for Hernandez, Young Blue, and Le ("Clients"), EA has a right to payment for the reasonable value of the services it provided to the Clients, regardless of whether or not EA has a written fee agreement with the Clients and/or a lien on the proceeds of any recovery.

[ER 549 – FAC ¶ 44.]

By Defendants' logic, any former counsel who seeks his or her *quantum meruit* fees would be subjected to an anti-SLAPP motion because the corpus of the claim involves a litigation settlement. Indeed, the relief sought was specifically the determination of the allocation of fees between X-Law and the Trustee. [ER 551-552 – FAC ¶ 57.]

Defendants' recitation to ancillary facts is completely beside the point – since the analysis must be directed to the gravamen of the claims.   Indeed, Defendants unwittingly undermine their entire argument by admitting that the gravamen of this case is the Trustee's assertion that debtor EA has a claim for *quantum meruit* fees. (Opening Brief, p. 6.)

12

Under *Drell*, *supra*, Defendants' appeal of this issue is frivolous and completely without any merit.

## B. The Declaratory Judgment Claim

Similarly, the gravamen of the Declaratory Judgment Claim is also that EA has a *quantum meruit* claim for fees, as set forth in paragraphs 59 and 60:

> 59.   EA provided representation to Hernandez as a representative of Andres Ramirez in the Hernandez Case and performed substantial services on her behalf.
>
> 60.   The Trustee has a valid and enforceable quantum meruit claim for services rendered by EA in the Hernandez Case.

[ER 552 – FAC ¶¶ 59, 60.]

And, again, the relief sought was a judicial determination of the apportionment of fees between X-Law and the Trustee based upon *quantum meruit.* [ER 552-53 – FAC ¶¶ 63-65.]  This also pertains to the claims with respect to the Le and Young Blue representations. [ER 553-554 – FAC ¶¶ 68-73.]

For similar reasons, these anti-SLAPP claims are patently frivolous.

## C. The Uniform Voidable Transactions Act Claim

The gravamen of the Uniform Voidable Transactions Act Claim is that X-Law and Marchino stripped EA of its most valuable asset – its contingency fee cases – through a conspiracy with Avenatti made with full knowledge of the Bankruptcy Court's restraining Order and the JFL $10 million judgment. [ER 560-61 – FAC ¶¶ 118 – 128.)

Again, the Trustee is not claiming that X-Law had no right to represent Hernandez – the gravamen of the claim is that it should not have stripped the Bankruptcy Estate of its interest in quantum meruit or other attorney's fees in violation of the UVTA.

The only argument that Defendants assert with respect to the Uniform Voidable Transactions Act claim is that it is dependent upon the structuring of the Hernandez settlement. (Opening Brief, pp. 24-25.)   That is not the gravamen of the UVTA claim. Based upon applicable caselaw, this assertion is completely devoid of any merit. Again, the California Supreme Court's statement of the standard bears repeating:

> . . . [A] claim does not 'arise from' protected activity simply because it was filed after, or because of, protected activity, or when protected activity merely provides the evidentiary support or context for the claim. [Citation.] Rather, the protected activity must 'supply the elements of the challenged claim.'"

*Rand Resources, LLC*, 6 Cal.5th at 621.

The gravamen of the Uniform Voidable Transaction Act claim involves facts that occurred long before the case was actually settled (i.e., the conveyance of valued contingency cases without a referral fee or even facilitating quantum meruit.) As alleged in the complaint, the fraudulent transfer was Michael Avenatti's agreement with Mr. Marchino (his former partner) that the Eagan Avenatti firm waived any right to fees for services performed. [ER 560-61 – FAC ¶¶ 122-128.]

Just like the other anti-SLAPP claims, this one is patently frivolous.

14

**D. The Tortious Interference Claims.**

On this cause of action, the Trustee filed a motion to amend which removed this claim.

Again, the gravamen of this claim was not protected activity – but, rather, Defendants' attempt to strip the bankruptcy estate of its *quantum meruit* claim to fees in the cases by the artifice of the referral to X-Law without seeking a referral fee.  [ER 555-56 – FAC ¶¶ 75-105.]

Accordingly, the anti-SLAPP motion as to these claims is also frivolous.

**3.** **While Not Necessary Because the Anti-SLAPP Motions Was Patently Frivolous Because Defendants Admit that the Gravamen of the Claims Was "Quantum Meruit," Defendants' Motion Also Fails Because the Trustee Can Prove a Probability of Prevailing.**

Since the Trustee has already established that the anti-SLAPP motion is frivolous because the gravamen of the Claims for Relief is not based upon protected conduct, there is no need for this Court to go to the second step of determining whether the Trustee can establish a probability of prevailing on the claim.

Nonetheless, the Trustee has more than sufficient proof to establish a probability of prevailing.  The standard is satisfied if the complaint is legally sufficient and supported by a sufficient *prima facie* showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited. *Wilcox v. Superior Court* (1994) 27 Cal.App.4th 809, 33 Cal. Rptr. 2d 446.  The court treats the evidence in opposition to an anti-SLAPP similar to that opposing a

motion for summary judgment – rather than weigh credibility or evaluate the weight of evidence, the court accepts "as true all evidence favorable to the plaintiff." *Overstock.com, Inc. v. Gradient Analytics, Inc.* (2007) 151 Cal.App.4th 688, 699-670, 61 Cal. Rptr. 3d 29.  The burden plaintiff faces is also lower – merely showing a "minimum level of legal sufficiency." *Grewal v. Jammu* (2011) 191 Cal.App.4th 977, 989, 119 Cal. Rptr. 3d 835.  Rather than needing to proffer admissible evidence, the opposing party's showing is satisfied "if it is reasonably possible the evidence . . . will be admissible at trial." *Sweetwater Union High School Dist. v. Gilbane Building Co.* (2019) 6 Cal.5th 931, 947.

Finally, unlike summary judgment motions, the anti-SLAPP statute expressly permits the court to consider the parties' "pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." Cal. Code of Civil Procedure § 425.16(b)(2).

Since any potential review of these issues would be based upon a *de novo* review of the record, the following facts are more than sufficient to demonstrate a probability of success on the merits.

- Fact # 1.  Debtor EA was retained by Hernandez on behalf of her son (Andres Ramirez) to represent him on a contingency fee basis in connection an action to recover damages sustained when he was struck by a car while riding his bicycle through an intersection in the city of Pasadena, CA. [ER 546 – FAC ¶¶ 19-20; ER 284 - Kellner Decl, ¶ 13.]
- Fact # 2.  Debtor EA performed the following services in connection with the action: (a) filing of a tort claim;

(b) substantial motion practice when the notice of tort claim was rejected as untimely; (c) filing of the complaint and then amendment of the complaint; (d) propound and respond to discovery; (e) conduct depositions; (f) retain experts; and (g) otherwise develop the case in anticipation of the first scheduled trial date of December 5, 2018. [ER  546 - FAC ¶ 21; ER 284-85 - Kellner Decl., ¶¶ 14-27.]

- Fact # 3.  During the course of Debtor EA's representation, Hernandez discussed with EA her belief that her son was in critical condition and had a low chance for survival in the foreseeable future. [Kellner Decl., ¶ 26.]

- Fact # 4.  On May 22, 2018, a judgment was entered against debtor EA in favor of Jason Frank Law in the amount of $10 million – as a result of EA's default of its obligations under a structured settlement entered as part of a prior Chapter 11 bankruptcy entitled *In re Eagan Avenatti, LLP*, Case No. 8:17-bk-11961-CB. [ER 545 - FAC ¶¶ 12-13; ER 283 - Kellner Decl., ¶ 7.)

- Fact # 5.  On July 11, 2018, the Bankruptcy Court entered an order that restrained EA from, *inter alia*, transferring its fee rights in a number of cases – including that involving Andres Ramirez. [ER 545 – FAC ¶ 14; ER 283 - Kellner Decl., ¶ 8.]  This order was served on counsel for X-Law and Marchino. [ER 283 - Kellner Decl., ¶ 8.]

- Fact # 6.   During the 2017 EA Bankruptcy, it was represented that X-Law and EA entered into an agreement in which EA assigned a portion of its fee rights to X-Law, paid

the salaries of X-Law employees, and paid the entire rent for office space shared by EA and X-Law. [ER 545-46 – FAC ¶ 18; ER 284 - Kellner Decl., ¶ 11.]

- <u>Fact # 7.</u>  Further, by an agreement dated "as of August 1, 2018", EA purported to transfer all of its personal property to X-Law, including its computer servers on which its client files were stored. [ER 545-46 – FAC ¶ 18; ER 284 - Kellner Decl., ¶ 12.]

- <u>Fact # 8.</u>  On June 1, 2018, less than two weeks after the $10 million JFL Judgment was entered against EA, Marchino obtained a substitution of attorney from Avenatti through which he continued to represent Andres Ramirez (by and through his mother, Elba Hernandez). [ER 546 – FAC  ¶ 23; ER 283-84 - Kellner Decl., ¶¶ 7, 9.]  The substitution was filed on July 26, 2018, after the Bankruptcy Court had entered the order restraining EA from transferring its fee rights – including for this case. [ER 546 - FAC ¶ 23, ER 283-85 - Kellner Decl., ¶¶ 9, 27.]

- <u>Fact # 9.</u>  Nonetheless, Marchino continued to work on the Hernandez/Ramirez case as a partner of EA – both before and after the ostensible substitution of attorney until at least August 2018. [ER 285-86 - Kellner Decl., ¶ 28.]  Further, and emblematic of the cozy and continuing relationship between Mr. Marchino and EA, a Notice of Case Management **was filed and served by EA on November 19, 2018 as attorneys for the Ramirez plaintiffs.** [ER 352-59 - Exh. 9.]

18

- <u>Fact #10</u>.  This ruse is further revealed by the fact that even though there was an alleged substitution in July 2018 for Marchino to represent Ramirez through X-Law – ***Marchino continued to represent clients through EA as an EA attorney until at least October 10, 2018.*** [ER 286 - Kellner Decl., ¶ 30.]

- <u>Fact # 11.</u>  Further, EA acted as Marchino's attorney in an attorney-fee dispute involving X-Law and the Dordick law firm. [ER 286 - Kellner Decl., ¶ 31.]

- <u>Fact # 12.</u>   On February 25, 2019, 13-year-old Andres Ramirez passed away. [ER 546 – FAC   ¶ 24; ER 286 - Kellner Decl., ¶ 32.]

- <u>Fact # 13.</u>  On April 26, 2019, Hernandez filed an action in the Probate Court of the Los Angeles Superior Court under Case Number 19STPB03950, seeking to be appointed the personal representative of her son's estate ("Probate Action"). [ER 546-47 – FAC ¶ 25; ER 286 - Kellner Decl., ¶ 33.]

- <u>Fact # 14.</u>  On May 30, 2019, Hernandez was appointed the personal representative of Ramirez's estate – based upon the representation that he died intestate. [ER 547 – FAC   ¶ 26; ER 286 - Kellner Decl., ¶ 34.]

- <u>Fact # 15.</u>  On July 16, 2019, the operative complaint in the Ramirez action was amended to include Hernandez as the successor-in-interest to Andres Ramirez (as the heir to Mr. Ramirez) and the Estate of Andres Ramirez as plaintiffs in the action. [ER 286 - Kellner Decl., ¶ 34; ER 311 – Exh. 7.]

- <u>Fact # 16</u>.  The only claim in the First Amended Complaint that Ms. Hernandez was asserting was as the sole heir to the Estate of Ramirez (her son) – and also claims were filed on behalf of the Estate of Ramirez. [ER 286 - Kellner Decl., ¶ 34; ER 311 - Exh. 7.]  Thus, all of Hernandez's claims were 100% derivative of her son's claims.

- <u>Fact # 17.</u>  In or about August 2020, X-Law settled the Estate of Ramirez action for $10.35 million – providing all of the payment in the name of Ms. Hernandez (and nothing for the Estate of Ramirez). Based upon discussions with counsel for the defendant City of Pasadena, the full settlement has been paid to X-Law. [ER 287 - Kellner Decl., ¶¶ 36-37.]

- <u>Fact # 18.</u>  Until the Trustee intervened in the Probate Matter involving the Estate of Ramirez, the Probate Court had not been advised of EA's claim to fees or the $10.35 million settlement (for which nothing was paid to the Estate of Ramirez). The Probate matter is still pending. [ER 287 - Kellner Decl., ¶ 39.]

These facts are more than sufficient to establish the claims that are the subject of this anti-SLAPP – especially when the appropriate presumptions are applied to the evidence (*see Sweetwater Union High School Dist. v. Gilbane Building Co.,* 6 Cal.5th at 947; *Overstock.com, Inc. v. Gradient Analytics, Inc.*, 151 Cal.App.4th at 699-670; 61 Cal. Rptr. 3d 29, *Grewal v. Jammu*, 191 Cal.App.4th at 989), 119 Cal. Rptr. 3d 835:

(1) *Quantum meruit* – A law firm is entitled to *quantum meruit* measured as the reasonable value of services that were of benefit to the defendant. *Maglica v. Maglica*, 66 Cal.App.4th at 449, 78 Cal. Rptr. 2d 101. This includes a beneficiary to an estate to the extent of his or her distributions. *See Valentine v. Read*, 50 Cal.App.4th at 793, 57 Cal. Rptr. 2d 836.  Here, the Trustee has proffered more than sufficient facts to establish the entitlement to *quantum meruit.* (See Fact # 1 -3, 9.)  Indeed, Ms. Hernandez actually had conversations with EA attorneys during the pendency of the representation that she anticipated the imminent death of her son – for whom she assets she is the sole heir – and still had her attorneys continue to ostensibly do work on her behalf. (See Fact # 3.) Her recovery is 100% derivative of her right as the heir to her son's estate. (Fact # 15-16.) Finally, the claims are ripe since the *Ramirez* settlement has been finalized and paid to X-Law. (Fact # 17.)  Again, the legal arguments set forth above at pp.  5-8 are equally applicable here.

(2) *Preliminary Injunction and Declaratory Relief.*  Since these claims are derivative of the *quantum meruit* claim (and potentially the UVTA claim described below), the probability of prevailing has been more than sufficiently established by the proffered evidence.  Under the Declaratory Judgment Act and applicable case law, the bankruptcy court is fully empowered to provide relief for declaratory relief claims. Under 28 U.S.C. § 2201(a), "In a

case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." [1]

(3) *The Uniform Voidable Transactions Act Claim*. Under Cal. Civil Code § 3439.04, a UVTA claims is established if:

---

[1]    Of course, "the bankruptcy court has the power to issue declaratory judgments when the matter in controversy regards the administration of a pending bankruptcy case." *Sears, Roebuck and Co. v. O'Brien*, 178 F.3d 962, 964 (8th Cir. 1999); *see also* Fed. R. Bankr. P. 7001 ("The following are adversary proceedings . . . (9) a proceeding to obtain a declaratory judgment . . . ."); *Dragnea v. Dragnea (In re Dragnea)* (Bankr. E.D. Cal. 2019) 609 B.R. 239, 257. Further, the bankruptcy court has exclusive jurisdiction over property of the bankruptcy estate, and determining what property comes within the estate is a necessary and core exercise of the bankruptcy court's jurisdiction. *See, e.g.,* 28 U.S.C. § 1334 ("The . . . court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction . . . of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate . . . ."); *Holber v. Segal (In re Segal)* (E.D. Pa. 2016) 579 B.R. 734, 751. For these reasons, bankruptcy courts routinely enter declaratory judgments determining whether property belongs to the bankruptcy estate, regardless of whether any other relief is sought, and those judgments are routinely affirmed (or otherwise reviewed on the merits) by appellate courts. *See, e.g., In re Ryerson* (9th Cir. 1984) 739 F.2d 1423, 1424-26; *Rex-Tech Int'l, LLC v. Rollings (In re Rollings)* (5th Cir. 2011) 451 F.App'x 340, 343-46. Further, the Ninth Circuit has expressly recognized a complaint for injunctive relief. *E.g., In re Birting Fisheries, Inc.*, 300 B.R. at 497 ("A complaint for injunctive relief calls upon the bankruptcy court's equitable power under § 105, which grants the court broad power to 'issue any order . . . necessary or appropriate to carry out the provisions of this title.'").

> A transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation as follows:
>
> (1) With actual intent to hinder, delay or defraud any creditor of the    debtor [or]
>
> (2) Without receiving a reasonable equivalent value in exchange for the transfer or obligation, and the debtor either: (A) Was engaged or was about to be engaged in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transactions [or] (B) Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due."

Facts #1-10 are more than sufficient to establish a probability of prevailing on the merits of this claim.   The timing sequence here – from the $10 million JFL judgment against EA, to the immediate movement of the Ramirez case to Marchino's X-Law firm (while he continued to work for months on other EA cases as an EA partner), and then the knowing violation of the Bankruptcy Court's Orders and the abandonment of any fee claim – is more than sufficient to support the UVTA claim.

In sum, the Trustee alleged these claims in "good faith" – and with more than sufficient support.  Also, as noted above, this factual inquiry is not needed here because X-Law and Marchino are unable to sustain their burden with respect to the first prong of the anti-SLAPP

motion (*i.e.*, that the gravamen of the Claims is based upon protected activity).

The trial court properly found that Defendants X-Law and Marchino's anti-SLAPP motion is entirely without merit.

## A. Defendants' Other Arguments Are Based Upon a Frivolous Misreading of the Law

Defendants claim that the Trustee could not prove the risk of dissipation of assets. Given the incredibly egregious conduct by Marchino and his law firm (X-Law) in a conspiracy with Michael Avenatti, including his fraudulent misrepresentations to the Trustee in an attempt to hide the approximately $4 million fee that he was receiving – the need for a preliminary injunction is more than sufficiently alleged under these facts. [ER 544-49, 550-52 - FAC ¶¶ 9-18, 23-32, 49 – 57.]

Defendants make the same frivolous argument as they did before the Bankruptcy Court that a claim for *quantum meruit* fees cannot be made until the litigation is fully and completely settled. (Opening Brief, p. 26-27.) From the Trustee's briefing in the Court below, Defendants must now know that this is an incomplete and baseless assertion because the cause of action to recover attorneys' fees accrues when the contingency has occurred – *i.e.*, when the client obtains the recovery. *Fracasse v. Brent* (1972) 6 Cal.3d 784, 792. Notably, the California Supreme Court in *Fracasse* apparently kept the door open to the possibility that declaratory relief could be proper prior to the actual recovery of fees. *Fracasse*, 6 Cal.3d at 793. [2]

---

[2] Notwithstanding the California Supreme Court's ruling in *Fracasse* that the accrual of the cause of action for quantum meruit

Defendants' assertion that the Trustee cannot prosecute an action against Marchino and X-Law (Opening Brief, pp. 27-28) is also absurd.   The Trustee has independent claims against X-Law and Marchino that are not solely dependent upon prevailing on the *quantum meruit* claims against the EA clients.

Further, with respect to the claims against Hernandez (and the Ramirez action), there is absolutely no reason why the *quantum meruit* claims cannot be sequentially litigated in the same action (*i.e.*, the determination of the *quantum meruit* claims against Hernandez, and then the resulting action against X-Law and Marchino relating to the constructive trust created for such monies).

*Mojtahedi v. Vargas* (2014) 228 Cal.App.4th 974, 176 Cal. Rptr. 3d 313, does not support Defendants' argument. *Mojtahedi* involved a fee dispute in which the prior law firm: (a) only sued the subsequent law firm (and not the client); and (b) only sought relief based upon a lien (and not *quantum meruit* claim). There is no case that Trustee's counsel has located the prohibits a *quantum meruit* action from including the client and subsequent counsel as parties – with the claims against the client being litigated first.

For this reason, Defendants' reliance on *Mojtahedi* for the proposition that the subsequent counsel and client cannot be sued in the same action fails.

---

accrues upon the client's recovery (*Fracasse*, 6 Cal.3d at 792), Defendants instead rely upon a 1924 Court of Appeal case (*Mahony v. Haines* (1924) 66 Cal.App. 456) that has not been cited by any other case – let alone for the proposition espoused by Defendants since *Fracasse.*

Perhaps the most absurd (and, yes, frivolous) argument in this Opening Brief is Defendants' representation to this Court that a prior attorney cannot make a *quantum meruit* claim for fees in the absence of an "attorney lien." (Opening Brief, p. 28).   In the words of the California Court of Appeal in *Maglica v. Maglica* (1998) 66 Cal.App.4th 442, 449, 78 Cal. Rptr. 2d 101, "As every first year law student knows or should know, recovery in quantum meruit does not require a contract."   In fact, under California law, even when a fee contract is "void," an attorney can recover in *quantum meruit* the reasonable value of the services rendered. *Rosenberg v. Lawrence* (1938) 10 Cal.2d 590, 593-594; *see also*, Cal. Business & Professions Code § 6147(b) ["Failure to comply with any provision of this section renders the agreement voidable at the option of the plaintiff, and the attorney shall thereupon be entitled to collect a reasonable fee."].

Defendants are also incorrect that EA's alleged failure to get Probate Court approval for its agreement with a minor is fatal to its assertion of a right to *quantum meruit* fees as to Hernandez. (Opening Brief, pp. 31-32.)  Even when the law firm fails to get court approval to provide legal services to a minor, the attorney can still assert a claim for *quantum meruit* fees. *Leonard v. Alexander* (1942) 50 Cal.App.2d 385, 389.  This principle has been effectively codified in Cal. Probate Code § 3601; *see Curtis v. Estate of Fagan* (2000) 82 Cal.App.4th 270, 279-280, 98 Cal. Rptr. 2d 84 (Cal. Probate Code § 3601 is appropriately used to determine award of quantum meruit attorney fees for a minor).

Defendants' statute of limitations (Opening Brief, pp. 32-36) are also frivolous.  First, the filing of this bankruptcy action tolls all

unexpired statutes of limitation for a minimum of two years. 11 U.S.C. § 108(a). Since this bankruptcy action was filed on September 13, 2019, and the statute of limitations had not expired on that date, the plain language of the Bankruptcy Code preserves these claims as timely. Second, the Estate of Ramirez is the successor-in-interest to the representation that had been provided by Ms. Hernandez as the guardian ad litem for Mr. Ramirez while he lived. The representation inured to the Ramirez Estate's benefit – entitling EA to all of the rights under Cal. Probate Code §§ 2644, 2647, and 3601.

Also, Defendants' reference to Cal. Code of Civil Procedure § 366.2 similarly fails. A simple search of cases applying Section 366.2 should have revealed *Dacey v. Taraday* (2011) 196 Cal.App.4th 962, 982, 126 Cal.Rptr. 3d 804 – where the Court of Appeal ruled that Section 366.2's one year statute of limitations for "unaccrued claims" applies ***only*** to specific kind of "unaccrued claim." Specifically, the only "unaccrued claims" applicable to Section 366.2 are those where the breach or misconduct occurred prior to the decedent's death, but was not discovered until after decedent's death. *Id.* Since all of the parties agree that the *quantum meruit* claims in a contingency representation cannot accrue until (at the earliest) there is a recovery (after Ramirez's death in 2019), Defendants' arguments based on Section 366.2 are wrong (even if applicable).[3]

---

[3]    Defendants' reference to California Code of Civil Procedure § 366.2 as a "statute of repose" is also incorrect, since the cases actually interpret the Section 366.2 as a "statute of limitations." *See Dacey v. Taraday,* 96 Cal.App.4th at 980 (quoting *Wagner v. Wagner* (2008) 162 Cal.App.4th 249, 255, 75 Cal. Rptr. 3d 511.)

Next, Defendants claim that Ms. Hernandez was not the party to the attorney-client relationship with EA in her individual capacity (and, hence, EA's *quantum meruit* claims could only be applied to the Estate of Ramirez). This argument fails because: (a) it is alleged that Ms. Hernandez's claims are solely derivative as the sole heir of Mr. Ramirez; and (b) she actually signed the retainer and was an intended beneficiary of the services for purposes of *quantum meruit. See Valentine v. Read* (1996) 50 Cal.App.4th 787, 793, 57 Cal. Rptr. 2d 836 (a beneficiary of an estate remains liable (to the extent of the distribution) for *quantum meruit* expenses associated with the distribution). Indeed, the requisite elements for *quantum meruit* would be satisfied: "(1) the plaintiff acted to "an explicit or implicit request for the services" by the defendant; and (2) the services conferred a benefit on the defendant." *Port Medical Wellness, Inc. v. Connecticut General Life Ins. Co.* (2018) 24 Cal.App.5th 153, 180, 233 Cal. Rptr. 3d 830. Of course, "[a] quantum meruit or quasi-contractual recovery rests upon the equitable theory that a contract to pay for services is implied by law for reasons of justice." *Hedging Concepts, Inc. v. First Alliance Mortgage Co.* (1996) 41 Cal.App.4th 1410, 1419, 49 Cal. Rptr. 2d 191. Thus, it makes sense that the *quantum meruit* remedy is "justified where services were performed by a party at the request of another under circumstances in which compensation for such services would be expected." *Spires v. American Bus Lines* (1984) 158 Cal.App.3d 211, 217, 204 Cal. Rptr. 531. Under the wide equity of the doctrine of *quantum meruit*, Hernandez's recovery on the basis as the sole heir of Ramirez clearly is covered by the doctrine.

Next, Defendants argue that EA's interest in attorneys' fees cannot provide the basis for a fraudulent transfer.  Needless to say, the most valuable asset of any plaintiff contingency law firm is its prospective interest in attorneys' fees for its inventory of cases. (*E.g.*, *Labrum & Doak v. Ashdale (In Re Labrum & Doak)* (Bankr. E.D. Pa. 1998) 227 B.R. 391, 1998 Bankr. LEXIS 1558 ("[F]ees derived pre-petition, regardless of whether they are hourly or contingent fees, are partnership assets that belong to the bankruptcy estate").)

Defendants claim that a client has an inviolate right to select the attorney of his or her choosing. (Opening Brief, p. 48.)  Of course, that is true.  As is Defendants' apparent penchant, they cite to *In re Heller Ehrman LLP* (9th Cir. 2018) 716 F.App'x 693, 695, 2018 U.S. App. LEXIS 7635, but fail to mention that the underlying case (*Heller Ehrman LLP v. Davis Wright Tremaine LLP,* 4 Cal.5th 467) specifically limited its ruling to claims involving future "hourly" fees. *Id.*, 4 Cal.5th at 483.   The California Supreme Court expressly recognized that the *Jewel v. Boxer, supra*, rules have been firmly established and accepted by the courts with respect to contingency matters. *Id.,* 5 Cal.5th at 475 (citing *Fox**Error! Bookmark not defined.** v. Abrams* (1985) 163 Cal.App.3d 610, 210 Cal. Rptr. 260 and *Rosenfeld, Meyer & Susman v. Cohen* (1987) 191 Cal.App.3d 1035, 237 Cal. Rptr. 14.)  The Court also stated that its holding has no bearing on contingency cases and should not be interpreted as extending to them:

> . . . The situation might be different in the context of contingency fee matters, where what constitutes "a going concern" preserved for a "reasonable time" is considered against a backdrop in which the dissolved

> firm has yet to be paid for the work it performed and will
> not be paid until the matter is resolved. [citation omitted.]
> But we have no occasion to contemplate such matters
> here.

*Heller Ehrman LLP v. Davis Wright Tremaine LLP*, 4 Cal.5th at 483.

It must be stressed, Trustee is not contending that it was improper for Marchino to continue to represent Hernandez at X-Law (in addition to, or subsequent to, EA). The UVTA claim is predicated upon the conspiracy between X-Law/Marchino and Avenatti to waive or release EA's right to contingency fees for work already performed (which, EA and Marchino knew would wind up going to JFL to satisfy the $10 million judgment, and not them).

Next, Defendants argue that Trustee cannot assert a referral fee claim because there was no client signature authorizing a referral fee – as required by former California Rules of Professional Conduct, Rule 2-200 that was in effect at that time. This argument fails because it is well established that an attorney cannot use former Rule 2-200 as a defense for an obligation to refer a fee - if that attorney was the one responsible for not getting the Rule 2-200 consent signed by the client (*i.e.*, the "sword" and a "shield" argument). Under California law, Rule 2-200 client approval of referrals can be equitably estopped when:

> . . . one attorney refuses to comply with the rules' disclosure and consent requirements and inequitably blocks the other attorney from doing so. In such a case, the offending attorney is equitably estopped from wielding rule 2-200 as a sword to obtain unjust enrichment. Defendants assert "there is no 'bad guy' exception to" rule 2-200. Under the unique circumstances presented by this case, defendants are wrong.

*Barnes, Crosby, Fitzgerald & Zeman, LLP v. Ringler* (2012) 212 Cal.App.4th 172, 186, 151 Cal. Rptr. 3d 134.

Simply stated – Marchino cannot rely upon the scheme to circumvent Trustee's right to fees as a basis for asserting the Rule 2-200 defense.  In the context of the motion to dismiss, this affirmative defense cannot provide a basis for granting the motion.  Indeed, a motion to dismiss based upon an affirmative defense is rare because: (a) the complaint must be liberally construed in the plaintiff's favor; and (b) "a plaintiff is not required to say anything about [the facts concerning affirmative defenses" in his complaint"). *Albino v. Baca* (9th Cir. 2014) 747 F.3d 1162, 1169, 2014 U.S. App. LEXIS 615.  Here, the availability of equitable estoppel based upon the facts alleged is more than sufficient grounds for denial of the motion to dismiss based upon this argument.

Defendants argue that any "waived fee" by EA would have gone into Hernandez's possession.  This is a true "head scratcher."  There is no claim that X-Law charged a higher contingency fee percentage than EA – only that X-Law took the entire fee without providing EA with the customary referral fee for the work already done on the case. [ER 558 – FAC ¶ 102.)  Thus, Defendants' arguments make no sense and are completely irrelevant.

Finally, Defendants make a litany of arguments – such as whether there was good cause for EA's withdrawal (under the scheme alleged with Marchino simply continuing the representation under the guise of X-Law instead of EA to defraud EA's creditors [*see* Opening Brief, pp. 49-50]) – which at best would be reserved for summary judgment.  It is difficult to fathom how such arguments are pertinent

to a motion to dismiss, let alone an anti-SLAPP motion.

**4.** **It is the Trustee – and Not Defendants – Who is Entitled to Attorneys' Fees; Judge Clarkson is Correct in Stating that Defendants' anti-SLAPP Motion is Frivolous.**

As stated at the outset of this Brief, Judge Clarkson ruled that "[t]he anti-SLAPP motion is frivolous, and it shouldn't have been even considered any further than we already have, but I have carefully considered it, and it's frivolous, and it shouldn't have been brought…" [ER 1153-54 - Hearing Transcript, p. 70:24-71:3.]

Under Cal. Code of Civil Procedure § 425.16(c)(1), a party opposing an anti-SLAPP motion is entitled to attorneys' fees if the motion is frivolous *or* is solely intended to cause unnecessary delay. Even though the Trustee demonstrated to the Bankruptcy Court that Defendants' anti-SLAPP motion was patently frivolous – the Trustee was undeservedly gracious and limited his claim to attorneys' fees to only serve as an offset if there was any determination that any portion of the Amended Complaint was subject to anti-SLAPP. [ER 280-281 – Trustee's Opposition, pp. 30-31.]

However, Defendants have filed an appeal in the face of unmistakable caselaw that the anti-SLAPP motion is frivolous – such as *Drell v. Cohen* (2014) 232 Cal.App.4th 24, 181 Cal. Rptr. 3d 19, which holds that if the gravamen of the claim is a dispute on attorneys' fees, that does not constitute protected conduct under California's anti-SLAPP statutes. Remarkably, in this Opening Brief, Defendants admit as follows:

"This case is, at its core, an attempt by the bankruptcy estate of a law firm, Eagan Avenatti, LLP ("EA"), to obtain quantum meruit fees arising out of three cases from several defendants . . . who the Trustee alleges are EA's former Clients . . ."

(Opening Brief, p. 6.)

Simply stated, Defendants' anti-SLAPP appeal – after the patent defects of its anti-SLAPP motion were pointed out before the Bankruptcy Court – constitutes the type of frivolous conduct that warrants the imposition of attorneys' fees at the appellate level. (*Defrees ex rel. U.S. Aero, Inc. v. Kirkland* (9th Cir. 2014) 579 Fed Appx. 538 at * 7-8, 2014 U . S . App. LEXIS 11163 [citing *Baharian-Mehr v. Smith* (2010) 189 Cal.App.4th 265, 273-276, 117 Cal. Rptr. 3d 153].)

Further, even if Defendants somehow convince this Court that the ancillary tortious interference claims (that were voluntarily dismissed) were based upon a viable anti-SLAPP claim (which they were not), that will not provide Defendants with any entitlement to fees because "the results of the motion were so insignificant that the party did not achieve any practical benefit from bringing the motion." *Mann v. Quality Old Time Serv., Inc.* (2006) 139 Cal.App.4th 328, 339-40, 42 Cal. Rptr. 3d 607.)  In fact, the extent of a plaintiff's success is a crucial factor in determining prevailing attorney's fees. *Chavez. v. City of Los Angeles* (2010) 47 Cal.4th 970, 989.

As Judge Clarkson aptly notes, this anti-SLAPP motion is frivolous and should never have been brought.  The appeal – which appears to have been filed to "add to the cost" of the litigation to

disincentive the Trustee from proceeding represents the kind of "scorched earth" litigation tactics that are anathema to the proper administration of justice. Indeed, the appeal will accomplish nothing – except to increase the burdens on the Trustee, potentially deplete assets from the bankruptcy estate and – equally significant – exhaust precious resources from an overburdened federal court system.

The Trustee takes no delight in seeking attorneys' fees – but, co-defendants Marchino and X-Law have engaged in the type of frivolous conduct for which Cal. Code of Civil Procedure § 425.16(c)(1) was designed to address.

Accordingly, the Trustee requests that the Court affirm the Order below denying Defendants' anti-SLAPP motion and award the Trustee its attorneys' fees incurred in connection with this frivolous appeal.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## 5. CONCLUSION

For all the foregoing reasons, the Trustee respectfully requests that the Court affirm Judge Clarkson's Order denying Defendants' anti-SLAPP motion to strike and find that the appeal was frivolous with the amount of fees to be determined by separate motion.

Dated: May 26, 2021

KELLNER LAW GROUP PC

By_____

Richard L. Kellner
Special Litigation Counsel for
Plaintiff and Chapter 7 Trustee,
RICHARD A. MARSHACK

In Association with,

MARSHACK HAYS LLP

By___/s/ *D. Edward Hays*_____
D. EDWARD HAYS
TINHO MANG
Attorneys for Plaintiff and
Chapter 7 Trustee, RICHARD A.
MARSHACK

*The X-Law Group, P.C., et al. v. Richard A. Marshack, Chapter 7 Trustee for Eagan Avenatti, LLP*
**USDC Case No. 8:21-cv-00336-ODW**
**Bankruptcy Case No. 8:18-BK-13560-SC**
**Adversary Case No. 8:20-ap-01086-SC**
**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## Certificate of Service

I hereby certify that on **May 26, 2021**, I electronically filed the **RESPONDENT'S BRIEF** with the Clerk of the Court for the United States District Court for the Central District of California by using the CM/ECF system.

I certify that all parties of record to this appeal either are registered CM/ECF users, or have registered for electronic notice, or have consented in writing to electronic service, and that service will be accomplished through the CM/ECF system.

- **David B Golubchik**
  **dbg@lnbyb.com**

- **Thomas Edward Gray**
  **tg@xlawx.com,TC@xlawx.com,MR@xlawx.com**

- **D Edward Hays**
  **ehays@marshackhays.com,kfrederick@ecf.courtdrive.com,cmendoza@marshackhays.com,cmendoza@ecf.courtdrive.com,ehays@ecf.courtdrive.com**

- **Richard L Kellner**
  **Irma.c.deleon@gmail.com,icd@kbklawyers.com**

- **Tinho Mang**
  **tmang@marshackhays.com,kfrederick@ecf.courtdrive.com,cmendoza@marshackhays.com,tmang@ecf.courtdrive.com**

- **Filippo Marchino**
  **fm@xlawx.com,TG@xlawx.com,CC@xlawx.com,TC@xlawx.com,SG@xlawx.com,DB@xlawx.com**

- **Kurt Ernest Kates Ramlo**
  **kr@lnbyb.com,kr@ecf.inforuptcy.com**

I hereby certify that some of the parties of record to this appeal have not consented to electronic service. I have mailed the _____ by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days, to the following parties:
N/A
Dated: May 26, 2021                    */s/ Cynthia Bastida*
                                        CYNTHIA BASTIDA

1