Appeal Case No. 8:21-CV-00336-ODW

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## In Re: EAGAN AVENATTI LLP

THE X-LAW GROUP, P.C., a professional corporation, et al.,

Appellants,

v.

RICHARD A. MARSHACK, Chapter 7 Trustee for Eagan Avenatti, LLP,

Appellee.

On Appeal from the United States Bankruptcy Court for the Central District of California, Bankruptcy Case No. 8:19-BK-13560-SC and Adversary Case No. 8:20-ap-01086-SC

## REPLY BRIEF OF APPELLANTS

**THE X-LAW GROUP, P.C., FILIPPO MARCHINO, ELBA HERNANDEZ, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE AND SUCCESSOR IN INTEREST TO ANDRES RAMIREZ, DECEASED, YOUNG BLUE LLC, AND SANDY LE, INDIVIDUALLY AND ON BEHALF OF TINA NGAN LE, DECEDENT**

Filippo Marchino, Esq. (SBN 256011)
fm@xlawx.com
Thomas E. Gray, Esq. (SBN 299898)
tg@xlaw.com
**THE X-LAW GROUP, P.C.**
625 Fair Oaks Ave, Suite 390
South Pasadena, CA 91030
Tel: (213) 599-3380

*Attorneys for Appellants Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez, deceased, Young Blue LLC, and Sandy Le, individually and on behalf of Tina Ngan Le, decedent*

David B. Golubchik (SBN 185520)
dbg@lnbyb.com
Kurt Ramlo (SBN 166856)
kr@lnbyb.com
**LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.**
10250 Constellation Blvd., Ste. 1700
Los Angeles, CA 90067
Tel: (310) 229-1234

*Attorneys for Appellants The X-Law Group, P.C. and Filippo Marchino, an individual*

i

## **TABLE OF CONTENTS**

**Page(s)**

I.    INTRODUCTION ......................................................................................1

II.   ARGUMENT...........................................................................................2

    A. Trustee Has Waived Many Arguments in His Brief. ...............................2

    B. Trustee Raises Entirely New Issues On Appeal Attempting to
    Escape the Consequences of His Waiver of Key Issues In the
    Bankruptcy Court. ..................................................................................2

    C. Trustee Misstates the Law on Anti-SLAPP Motions. ..............................3

        1. Plaintiff's Are Responsible For Anti-SLAPP Attorneys'
        Fees Even if They Abandon Claims.....................................................3

        2. An Anti-SLAPP Motion Is Not a Motion to Dismiss. .........................4

        3. A Plaintiff Must Rely on Evidence to Meet His Burden. .....................4

    D. The Claims Fall Within the Scope of the Anti-SLAPP Statute. ...............6

        1. Trustee Misrepresents the Complaint's Allegations and the
        Law Governing Anti-SLAPP Motions..................................................6

        2. Preliminary Injunction............................................................................8

        3. Declaratory Relief. ...............................................................................10

        4. Tortious Interference. ...........................................................................10

        5. Voidable Transfer...................................................................................11

    E. Trustee Failed to Carry His Burden of Establishing the Claims
    Were Legally Sufficient and That He Had Sufficient Evidence
    to Prevail at Trial. ..................................................................................13

        1. Trustee Concedes the Claims Related to Young Blue and
        Le Should Have Never Been Filed.......................................................13

2.  Trustee Does Not Dispute That He Could Not Prevail on His Tortious Interference Claims. ........................................................13

3.  The Ramirez-Related Claims. ............................................................13

F.  Because Trustee's Claims Should Have Been Dismissed Under the Anti-SLAPP Statute, Defendants Should Have Been Awarded Attorneys' Fees. ...................................................................................27

G.  Defendants Cannot Be Sanctioned. ........................................................28

III.  CONCLUSION ..............................................................................29

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<u>Cases</u>

*Baral v. Schnitt,*
  1 Cal. 5th 376 (2016) ....................................................................................7

*Barnes, Crosby, Fitzgerald & Zeman, LLP v. Ringler,*
  212 Cal. App. 4th 172 (2012) ....................................................................26

*Bradley v. Breen,*
  73 Cal. App. 4th 798 (1999) ......................................................................19

*Bradley v. Nevada Power Co.,*
  185 F.3d 865 (9th Cir. 1999) .....................................................................15

*California Med. Ass'n, Inc. v. Aetna U.S. Healthcare of California, Inc.,*
  94 Cal. App. 4th 151 (2001) ......................................................................23

*Cf. Comstock v. Aber,*
  212 Cal. App. 4th 931 (2012) ......................................................................6

*Chambers v. Kay,*
  29 Cal. 4th 142 (2002) ...............................................................................26

*Corralejo v. Quiroga,*
  152 Cal. App. 3d 871 (1984) .....................................................................28

*Dacey v. Taraday,*
  196 Cal. App. 4th 962 (2011) ............................................................. 19, 20

*Dawes v. Rich,*
  60 Cal. App. 4th 24 (1997) ........................................................................20

*Dinosaur Dev., Inc. v. White,*
  216 Cal. App. 3d 1310 (1989) ...................................................................23

*Drell v. Cohen,*
  232 Cal. App. 4th 24 (2014) ........................................................................9

*Fleming v. Coverstone,*
  No. 08CV355 WQH (NLS), 2009 WL 764940 (S.D. Cal. Mar. 18, 2009)............3

*Fracasse v. Brent,*
  6 Cal. 3d 784 (1972) ..................................................................................15

*Gerbosi v. Gaims, Weil, W. & Epstein, LLP,*
  193 Cal. App. 4th 435 (2011) ....................................................................28

## TABLE OF AUTHORITIES (cont'd)

**Page(s)**

*Gieg v. DDR, Inc.,*
   407 F.3d 1038 (9th Cir. 2005) ...................................................................2

*Heller Ehrman LLP v. Davis Wright Tremaine LLP,*
   4 Cal. 5th 467 (2018) ................................................................... 24, 25

*In re Birting Fisheries, Inc.,*
   300 B.R. 489 (B.A.P. 9th Cir. 2003) ...................................................14

*In re Fitness Holdings Int'l, Inc.,*
   714 F.3d 1141 (9th Cir. 2013) ............................................................14

*Jewel v. Boxer,*
   156 Cal. App. 3d 171 (1984) ...............................................................25

*Joseph Saveri Law Firm, Inc. v. Michael E. Criden, P.A.,*
   No. 14-CV-01740-EDL, 2015 WL 1029364 (N.D. Cal. Mar. 9, 2015) ...............26

*Ketchum v. Moses,*
   24 Cal. 4th 1122, 17 P.3d 735 (2001) ....................................................3

*Khai v. Cty. of Los Angeles,*
   730 F. App'x 408 (9th Cir. 2018) ...........................................................6

*Levine v. Levine,*
   102 Cal. App. 4th 1256 (2002) ............................................................20

*Mahony v. Haines,*
   66 Cal. App. 456, 226 P. 620 (Cal. Ct. App. 1924) ............................15

*Mann v. Quality Old Time Serv.,*
   Inc., 139 Cal. App. 4th 328 (2006) ......................................................27

*Mindys Cosms., Inc. v. Dakar,*
   611 F.3d 590 (9th Cir. 2010) ................................................................4

*Mireskandari v. Daily Mail & Gen. Tr. PLC,*
   No. CV1202943MMMFFMX, 2014 WL 12586434 (C.D. Cal. Nov. 7, 2014) .....3

*Mojtahedi v. Vargas,*
   228 Cal. App. 4th 974 (2014) ..............................................................18

*Moofly Prods., LLC v. Favila,*
   24 Cal. App. 5th 993 (2018) ................................................................28

*O&C Creditors Grp., LLC v. Stephens & Stephens XII, LLC,*
   42 Cal. App. 5th 546 (2019) ............................................................7, 9

## TABLE OF AUTHORITIES (cont'd)

Page(s)

*O&C Creditors Grp., LLC,*
 42 Cal. App. 5th at 571 ....................................................................................10

*Rand Res., LLC v. City of Carson,*
 6 Cal. 5th 610 (2019) ....................................................................................7, 9

*Ruiz v. Podolsky,*
 50 Cal. 4th 838 (2010) ......................................................................................21

*S. Oregon Barter Fair v. Jackson Cty., Oregon,*
 372 F.3d 1128 (9th Cir. 2004) ...........................................................................4

*Shakur v. Schriro,*
 514 F.3d 878 (9th Cir. 2008) .............................................................................2

*Soukup v. L. Offs. of Herbert Hafif,*
 39 Cal. 4th 260 (2006) ........................................................................................4

*Sweetwater Union High Sch. Dist. v. Gilbane Bldg. Co.,*
 6 Cal. 5th 931 (2019) .........................................................................................4

*Taheri L. Grp. v. Evans,*
 160 Cal. App. 4th 482 (2008) ...........................................................................12

*Truong v. Mountain Peaks Fin. Servs., Inc.,*
 No. 3:12-CV-01681-WQH, 2013 WL 485763 (S.D. Cal. Feb. 5, 2013) ...............3

*TYR Sport Inc. v. Warnaco Swimwear Inc.,*
 679 F. Supp. 2d 1120 (C.D. Cal. 2009) ............................................................14

*Untalan v. Stanley,*
 No. 219CV07599ODWJEMX, 2020 WL 6078474 (C.D. Cal. Oct. 15, 2020)......2

*Valentine v. Read,*
 50 Cal. App. 4th 787 (1996) .............................................................................21

*Vien-Phuong Thi Ho v. Recontrust Co.,*
 669 F. App'x 857 (9th Cir. 2016).......................................................................2

# TABLE OF AUTHORITIES (cont'd)

**Page(s)**

## Statutes

11 U.S.C. § 108(a) ......................................................................................19

228 Cal. App. 4th at 976 .............................................................................18

Cal. Civ. Proc. Code § 128.5 ......................................................................28

Cal. Civ. Proc. Code § 366.2 ......................................................................20

Cal. Civ. Proc. Code § 415.16 ....................................................................28

Cal. Civ. Proc. Code § 425.16 ....................................................................28

Cal. Prob. Code § 9000 ...............................................................................20

Cal. Prob. Code § 9103 ...............................................................................19

Cal. Prob. Code § 9392 ...............................................................................22

## Other Authorities

California Practice Guide: Professional Responsibility ¶ 10:39
   (The Rutter Group 2019) .........................................................................23

Recommendation Relating to Notice to Creditors in Estate Administration
   (Dec. 1989), 20 Cal. Law Revision Com. Rep. (1990) p. 513 ..............20

Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial ¶ 9:1094a.
   (The Rutter Group 2020) .........................................................................28

## I.     INTRODUCTION

Appellants The X-Law Group, P.C. ("The X-Law Group") and Filippo Marchino ("Marchino" and, collectively with The X-Law Group "X-Law") and Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez, decedent ("Hernandez"), Young Blue LLC ("Young Blue"), and Sandy Le, individually and on behalf of Tina Ngan Le, decedent ("Le" and, collectively with Hernandez and Young Blue, "the Clients") appeal the order denying Defendants' Special Motion to Strike and to Dismiss.  In response, Trustee has filed an <u>overlength</u>[1] brief that variously ignores Defendants' dispositive arguments, raises arguments for the first time on appeal, and attempts to retroactively recast the central allegations of his complaint as "ancillary."  Trustee's seeks to portray X-Law as engaged in a nefarious scheme with Michael Avenatti to eliminate Eagan Avenatti ("EA")'s quantum meruit claim to fees in the <u>Ramirez</u> case.  The complaint at issue here does not allege that X-Law was involved in any conspiracy with Avenatti to commit wrongdoing and Trustee made no attempt to prove this in the Bankruptcy Court; it does not even appear in the 18 "facts" he repeatedly refers to in his brief.  The Court must recognize that this is simply a last-ditch-effort by Trustee to distract the Court from the truth: Trustee asserted meritless claims against

---

[1] Trustee's brief is over the page limit and failed to include a type volume certificate. FRBP Rule 8015.

Defendants, abandoned half when faced with an anti-SLAPP motion, and is now attempting to avoid having to pay Defendants their rightful attorneys' fees.

## II.    ARGUMENT

### A.    Trustee Has Waived Many Arguments in His Brief.

Failure to respond to arguments results in waiver.  Vien-Phuong Thi Ho v. Recontrust Co., 669 F. App'x 857, 859 (9th Cir. 2016) (citing Shakur v. Schriro, 514 F.3d 878, 892 (9th Cir. 2008)); Untalan v. Stanley, No. 219CV07599ODWJEMX, 2020 WL 6078474, at *4 (C.D. Cal. Oct. 15, 2020) (Wright, J.).  As discussed below, Trustee has failed to address many of Defendants' arguments.

### B.    Trustee Raises Entirely New Issues On Appeal Attempting to Escape the Consequences of His Waiver of Key Issues In the Bankruptcy Court.

It is blackletter law that "An appellate court will not consider arguments not first raised before the [lower] court unless there are exceptional circumstance."  Gieg v. DDR, Inc., 407 F.3d 1038, 1047 n.10 (9th Cir. 2005).  As further discussed below, Trustee raises entirely new arguments not addressed in the Bankruptcy Court and allegations absent from the complaint.

C.    **Trustee Misstates the Law on Anti-SLAPP Motions.**

1.    **Plaintiff's Are Responsible For Anti-SLAPP Attorneys' Fees Even if They Abandon Claims.**

Trustee states the "complaint has been amended (thus mooting the motion to dismiss)." [Trustee's Brief ("TB") 7.]  However, "any SLAPP defendant who brings a successful motion to strike is entitled to mandatory attorney fees." Ketchum v. Moses, 24 Cal. 4th 1122, 1131 (2001).  This appeal is for those fees.  Trustee ignores that a plaintiff cannot escape the mandatory fee provision by eliminating defendants or claims after the anti-SLAPP motion has been filed.  [Defendants' Brief ("DB") 15-16.]  Trustee attempted to evade the fees by amending the complaint, which eliminated two defendants and the tortious interference claims.  [Id.]  Failing to replead claims and parties in an amended complaint is the same as eliminating them from an existing complaint and does not avoid the fees.  See Mireskandari v. Daily Mail & Gen. Tr. PLC, No. CV1202943MMMFFMX, 2014 WL 12586434, at *7 (C.D. Cal. Nov. 7, 2014); Truong v. Mountain Peaks Fin. Servs., Inc., No. 3:12-CV-01681-WQH, 2013 WL 485763, at *12 (S.D. Cal. Feb. 5, 2013); Fleming v. Coverstone, No. 08CV355 WQH (NLS), 2009 WL 764940, at *5 (S.D. Cal. Mar. 18, 2009).

Trustee's belief that this appeal will have no substantive effect ignores the law of the case doctrine.  S. Oregon Barter Fair v. Jackson Cty., Oregon, 372 F.3d 1128,

1136 (9th Cir. 2004).  This Court's rulings on the issues in this appeal will be determinative in the operative complaint.  For example, a determination that claims against the Ramirez estate are time-barred will require dismissal of equivalent claims in the current complaint.  The purpose of Defendants' anti-SLAPP motion will still be served.

### 2.    An Anti-SLAPP Motion Is Not a Motion to Dismiss.

Contrary to what Trustee implies [TB 31], an anti-SLAPP motion is akin to a motion for summary judgment.  Soukup v. L. Offs. of Herbert Hafif, 39 Cal. 4th 260, 278 (2006).  It requires the plaintiff substantiate his claims with admissible evidence, but "does not impose an initial burden of production on the moving defendant" Mindys Cosms., Inc. v. Dakar, 611 F.3d 590, 599 (9th Cir. 2010).

### 3.    A Plaintiff Must Rely on Evidence to Meet His Burden.

A plaintiff facing an anti-SLAPP motion "may not rely solely on its complaint…instead, its proof must be made upon competent admissible evidence." Sweetwater Union High Sch. Dist. v. Gilbane Bldg. Co., 6 Cal. 5th 931, 940 (2019).

> [T]he court may consider affidavits, declarations, and their equivalents if it is reasonably possible the proffered evidence set out in those statements will be admissible at trial. Conversely, if the evidence relied upon *cannot* be admitted at trial, because it is categorically barred or undisputed factual circumstances show inadmissibility, the court may not consider it in the face of an objection. If an evidentiary objection is made, the plaintiff may attempt to cure the asserted defect or demonstrate the defect is curable.

Id. at 949.

4

Defendants made numerous evidentiary objections to the declaration of Mr. Kellner, and the Court largely sustained them. [2]  Trustee, who cannot rely on the allegations of his own complaint, was left unable to substantiate its core allegations.

Trustee states that "Defendants claim that the Trustee could not prove the risk of dissipation of assets" but fail to provide a citation to where this claim was made. [TB 24.]  The fact Trustee failed to establish that the <u>Ramirez</u> case had settled and whether the settlement had even been paid, made it impossible for him to prove that X-Law had made "fraudulent misrepresentations to the Trustee in an attempt to hide the approximately $4 million fee that he was receiving."  [<u>Id;</u> DB 51-52.]  Although Trustee's 18 "facts" contain information largely irrelevant to the claims at issue here, they are conspicuously lacking in any allegation that "Marchino and his law firm (X-Law) [were engaged in] in a conspiracy with Michael Avenatti … to hide a $4 million fee".[3]  [<u>Id.</u> at 16-20, 24.]

Trustee neither argues Judge Clarkson erred in sustaining these evidentiary objections nor demonstrates the defects were curable.  Nor did Trustee request leave

---

[2] Objections to most of the basis of fact 2 and part of fact 8 were sustained [6-ER-1138-1148].  All of the basis for facts 3, 6, 10, and 17 were sustained [6-ER-1134-1135, 1139, 1144–1145, 1148].

[3] The allegations Trustee cites to in his own complaint do not allege any conspiracy to do this.

to conduct discovery before the motion was heard.  See <u>Khai v. Cty. of Los Angeles</u>, 730 F. App'x 408, 411 (9th Cir. 2018).

Finally, Trustee did not factually substantiate the claims that he abandoned. [TB 20-23.]

### D.    The Claims Fall Within the Scope of the Anti-SLAPP Statute.

#### 1.    Trustee Misrepresents the Complaint's Allegations and the Law Governing Anti-SLAPP Motions.

Trustee claims "[t]he gravamen of this case is a claim to avoid the fraudulent transfer of the Eagan Avenatti firm's right to fees and to recover the quantum meruit value of services provided."  [TB 12.]  Trustee actually alleges nothing of the sort. This is an attempt to excise the portions of the Complaint that demonstrate why the anti-SLAPP motion was warranted and create a new version after the fact.[4]  The <u>Le</u> and <u>Young Blue</u>-related claims obviously have nothing to do with a fraudulent transfer (Trustee now denies he is contending transferring clients is improper).  [TB 29-30.]  Trustee only accuses X-Law of fraud in the tortious interference claims, where he accuses X-Law of structuring the <u>Ramirez</u> settlement and defrauding courts by failing to disclose information.  [4-ER-554-558.]  There is no allegation of

---

[4] Courts do <u>not</u> permit plaintiffs to distance themselves from their own allegations in the face of an anti-SLAPP motion.  <u>Cf.</u> <u>Comstock v. Aber</u>, 212 Cal. App. 4th 931, 942 (2012).

the purported scheme between Marchino and Avenatti that Trustee now touts. [TB 4-5.]

Trustee ignores the numerous cases that Defendants have cited. In fact, he only addresses one case, <u>O&C Creditors Grp., LLC v. Stephens & Stephens XII, LLC</u>, which he attempts to distinguish on the basis that a settlement agreement was "the crux of the claim" in that case even while quoting language stating that the gravamen of the claim was settling around an attorney lien and disbursing funds in contravention of the lien. 42 Cal. App. 5th 546, 566-574 (2019). [TB 11.]

There is no "gravamen of the *complaint*" test; the anti-SLAPP statute allows individual allegations to be targeted, even when individual claims are based on both protected and unprotected activity. <u>Baral v. Schnitt</u>, 1 Cal. 5th 376, 396 (2016). That is to prevent plaintiff from structuring the complaint to escape review. <u>Id.</u> at 392–93. The question is not what Trustee's overarching theory is, but whether any allegations pertaining to conduct protected by anti-SLAPP statutes supply a factual basis for any elements of any claims. <u>Rand Res., LLC v. City of Carson</u>, 6 Cal. 5th 610, 621 (2019) ("the protected activity must supply elements of the challenged claim.") (quotations omitted).[5] The answer is yes. The Ninth Circuit has articulated this as a question of whether but for the protected activity, the plaintiff would have

---

[5] Trustee misquotes this case as stating "the protected activity must 'supply **the** elements of the challenged claim.", falsely implying that it must supply *all* of the elements, not just one. [TB 11 (emphasis added).]

a reason to bring a claim against the defendant.  Mindys Cosmetics, Inc. v. Dakar,
611 F.3d 590, 598 (9th Cir. 2010).

Trustee does not dispute that the allegations identified by Defendants pertain
to conduct protected by the anti-SLAPP statute, but rather argues that they are
"ancillary."  They are not.  The Complaint included claims related to two cases that
had not settled at all and one that he alleged partially settled in a manner that resulted
in the estate of EA's former client obtaining zero recovery.  Trustee admits "the
quantum meruit claims…cannot accrue until…there is a recovery"; he included
these additional allegations in an attempt to assert claims that he otherwise could not
(and ultimately *still* could not).  [TB 27.]  Without these "ancillary" allegations, his
claims are missing essential elements.

## 2.    Preliminary Injunction.

Trustee claims the gravamen of the preliminary injunction claim "is that
Trustee has a quantum meruit interest in the fees of the Hernandez matter."  [TB 12.]
He then quotes a paragraph identifying *all three cases* as the subject of the
preliminary injunction motion.  [Id.]  Trustee ignores Defendants' argument that the
identified allegations are necessary for an asset freeze injunction.  The paragraph
identified as the gravamen of the claim is insufficient for such an injunction.

Trustee argues "By Defendants' logic, any former counsel who seeks his or
her quantum meruit fees would be subjected to an anti-SLAPP motion because the

corpus of the claim involves a litigation settlement" and that "the relief sought was specifically the determination of the allocation of fees between X-Law and Trustee." [Id.]  But the claim actually asks that the *entire* amount of the contingency fee portion of any recovery be deposited with the court.  [4-ER-551-552.]  The claim attempts to withhold what Trustee apparently does not dispute is X-Law's portion of fees because X-Law engaged in protected conduct.  This is not a standard quantum meruit claim; Trustee brought the claim because he believes that X-Law was going to misappropriate what he believes is the Estate's share of the contingency fees. [Id.].

Moreover, Trustee's argument is found in the *dissenting opinion* in O&C Creditors Grp., LLC v. Stephens & Stephens XII, LLC, 42 Cal. App. 5th 546, 577 (2019) (Tucher, J. concurring and dissenting).  The majority actually held that allegations of disregarding liens and distributing settlement proceeds could not be distinguished from the protected settlement activity.  Id. at 568-69.  Based on the rule stated in Rand Resources, the settlement "forms the fundamental factual basis for the claims" and elements of the claim.  Id. at 568, 570.  Drell v. Cohen predates Rand Resources' clarification of the scope of the anti-SLAPP statute.  232 Cal. App. 4th 24 (2014).  It is distinguishable in that it involved a declaratory judgment sought by subsequent counsel after former counsel asserted a lien and, unlike this case, did not accuse the defendant of engaging in wrongdoing.  Id. at 30.

Finally, the preliminary injunctive claim is, according to Trustee, derivative of other claims, so the other arguments made below would apply equally to it as well. [TB 21.]

### 3. Declaratory Relief.

Trustee made no argument in the Bankruptcy Court that the <u>Le</u> and <u>Young Blue</u> claims fell outside the scope of the anti-SLAPP statute and thereby conceded the issue. [3-ER-256-257.] He now improperly attempts to do so. Trustee's quoted paragraphs from the <u>Ramirez</u> declaratory relief claim are insufficient to state a claim because they omit the essential allegation of an actual controversy. [TB 13.] He ignores the cases that are expressly premised on court recognition that declaratory claims where someone's protected speech established the controversy fall within the scope of anti-SLAPP. [DB 22.] All three declaratory claims fall within the scope of the statute. Trustee cannot avoid the fact that, pursuant to <u>O&C Creditors Grp., LLC</u>, they fall within the scope of the anti-SLAPP statute. 42 Cal. App. 5th at 571.

### 4. Tortious Interference.

Trustee failed to address in the Bankruptcy Court whether the tortious interference claims fell within the scope of the anti-SLAPP statute, thereby conceding they did. Now, on appeal, he states that "[o]n this cause of action, Trustee filed a motion to amend which removed this claim", which is irrelevant. [TB 15.] Trustee's only other argument is to assert that "the gravamen of this claim was not

10

protected activity–but, rather, Defendants' attempt to strip the bankruptcy estate of its quantum meruit claim to fees in the cases by the artifice of the referral to X-Law without seeking a referral fee." [Id.] The *asset stripping* allegation appears in neither claim. The *referral fee* allegation only appears in *one* tortious interference claim. [4-ER-554-558.][6] The core of the tortious interference claims is that the Ramirez settlement was structured so that the Ramirez Estate received nothing, and X-Law failed to inform the probate court about what occurred. [Id.] This is the so-called "scheme" intended to interfere with contractual relations or prospective economic advantage. [Id.] Trustee does not dispute that allegations regarding structuring settlements and failing to provide information to the court fall within the scope of the anti-SLAPP statute.

### 5. Voidable Transfer.

Trustee's characterization of the voidable transfer claim, that "X-Law and Marchino stripped EA of…its contingency fee cases–through a conspiracy with Avenatti made with full knowledge of the Bankruptcy Court's restraining Order and the JFL $10 million judgment" is entirely inaccurate. [TB 13.] There is no allegation of conspiracy or that X-Law was responsible for the fee waiver letter, but *nine*

---

[6] This allegation contradicts Trustee's assertion elsewhere that he is not arguing that EA's clients did not have the right to choose new attorneys. [TB 30.] It is also a different type of litigation-related conduct protected by the anti-SLAPP statute: clients choosing their attorneys and attorneys advising their clients about referral fees.

*consecutive paragraphs* identify the transfer of the Ramirez case as the subject of the claim.[7] [4-ER-560-561.] Trustee insists he is not claiming that it was improper for X-Law to take over representation, but that appears to be the transfer in the voidable transfer claim; substituting counsel or discussing doing so clearly fall within the scope of anti-SLAPP. Taheri L. Grp. v. Evans, 160 Cal. App. 4th 482, 489 (2008).

Trustee claims the structuring of the Ramirez settlement is not the gravamen, but those allegations, incorporated by reference, are necessary, just as they are for the Ramirez declaratory relief claim. [TB 14.] Without them, Trustee's claims would be defeated by the allegation that the Ramirez Estate received nothing; Trustee included them so that there is something to seek a quantum meruit recovery from (the allegation that Hernandez knew her son was going to die is not in the complaint).

---

[7] Trustee was required to plead fraud with particularity so, had he done so, it would have been explicit.

**E.      Trustee Failed to Carry His Burden of Establishing the Claims Were Legally Sufficient and That He Had Sufficient Evidence to Prevail at Trial.**

**1.      Trustee Concedes the Claims Related to <u>Young Blue</u> and <u>Le</u> Should Have Never Been Filed.**

Trustee abandoned the <u>Young Blue</u> and <u>Le</u> declaratory relief claims and fails to argue that they were viable.  He demonstrates how frivolous they were by stating "the quantum meruit claims in a contingency representation cannot accrue until…there is a recovery."  [TB 27.]  Why were these claims brought when it is undisputed that they were still ongoing and there was no recovery?

**2.      Trustee Does Not Dispute That He Could Not Prevail on His Tortious Interference Claims.**

Trustee makes no attempt to rebut Defendants' arguments that his claims for tortious interference were not legally cognizable or factually supported.  [DB 41-45.]

**3.      The <u>Ramirez</u>-Related Claims.**

**a.      Trustee Fails to Cite Any Binding Authority Stating that Preliminary Injunction is a Cause of Action.**

*Preliminary* injunction is not a cause of action.  [DB 40-41.]  Trustee states that "the Ninth Circuit has expressly recognized a complaint for injunctive relief."

[TB 22.]  The case he relies on was decided by the Bankruptcy Appellate Panel, not the Ninth Circuit itself.  In re Birting Fisheries, Inc., 300 B.R. 489 (B.A.P. 9th Cir. 2003).  It does not address whether a *preliminary* injunction, as opposed to a permanent injunction, is a cause of action.  And it is not binding.  In re Fitness Holdings Int'l, Inc., 714 F.3d 1141, 1144 n.3 (9th Cir. 2013).  "[A] claim for injunctive relief is not a substantive claim, but merely a remedy which must be supported by a viable substantive theory."  TYR Sport Inc. v. Warnaco Swimwear Inc., 679 F. Supp. 2d 1120, 1141 n. 13 (C.D. Cal. 2009).  In re Birting Fisheries, Inc. does not contradict this. Trustee could not seek a preliminary injunction when he could not assert his other claims.  Trustee's preliminary injunction claim sought an injunction "until the Court can hear and determine Trustee's claim for a declaratory judgment allocating those fees between the Estate and X-Law."  [4-ER-550-551.]  It could not survive without the declaratory relief claims.

   **b.**  **Trustee Ignores That He Failed to Establish That the Ramirez Case Had *Even Partially Settled* and in Fact Alleged That Only Hernandez, Not the Estate of Ramirez, Had Any Recovery, Thereby Barring Any Declaratory Relief Claim.**

Trustee argues "the cause of action to recover attorneys' fees accrues when the contingency has occurred – i.e., when the client obtains the recovery." [TB 24.]

Although there is authority that requires "actual termination of the litigation" before a claim for fees can be brought, Trustee has failed to identify a single case holding that such a claim can be brought when a case has only partially settled. Mahony v. Haines, 66 Cal. App. 456, 459–60 (1924). Fracasse v. Brent likewise requires "the matter [be] finally been resolved." 6 Cal. 3d 784, 792 (1972). Even *after* Fracasse, courts still follow the termination rule. Bradley v. Nevada Power Co., 185 F.3d 865 (9th Cir. 1999) (following the "California rule" of "termination of the litigation").

Second, nothing in Fracasse suggests "that declaratory relief could be proper prior to the actual recovery of fees." [TB 24.] It never specified such circumstances. Fracasse, 6 Cal. 3d at 793. The requested relief of allocating fees is impossible before settlement. The EA-Ramirez contingency agreement Trustee relies on states fees are taken from the "settlement *payment*, arbitration award or judgment in favor of the Client" "in the event that a *net* recovery be obtained by the Client." [5-ER-1055, 1061.]

It is impossible to determine EA's quantum meruit award when only part of the case has settled or to determine whether work done on the case and costs any incurred by EA are relevant to one defendant, the other defendant, or both defendants and award quantum meruit accordingly. It is impossible to determine "net" recovery at this time.

*Third*, Trustee's claim contradicts his allegations that although there was a recovery in the <u>Ramirez</u> case, it was not on behalf of Ramirez's estate, but rather Hernandez.  [4-ER-547, 555, 556, 558.]  Hernandez could not have been EA's client. [DB 36-40.]  Trustee attempts to circumvent this by asserting that Hernandez knew her son was going to die, but had EA continue to work on the case.  [TB 21.]  This allegation was not found anywhere in the Complaint, and Judge Clarkson sustained the evidentiary objection to the portion of Mr. Kellner's declaration that Trustee relied on for it.  [TB 17; 6-ER-1144–45.]  With regards to the portion of the case that has settled, there is no recovery on behalf of Ramirez and the contingency has not occurred.

*Fourth*, Trustee asserts that "the claims are ripe since the *Ramirez* settlement has been finalized and paid to X-Law."  [TB 21.]  Trustee ignores that Judge Clarkson sustained the evidentiary objections to the portions of Mr. Kellner's declaration that Trustee relied on to prove this.  [TB 20; 6-ER-1134-35, 1139.]

### c.   Trustee Ignores The Implications of the Lack of a Valid Lien.

Trustee misstates Defendants' argument about the lack of a valid lien.  [TB 26.]  The argument is that without a valid lien, Trustee cannot bring its declaratory relief claim against X-Law.  [DB 27-31.]

Trustee does not dispute the lien was void and had been voided. The consequence of this is fatal. Olsen v. Harbison controls. 191 Cal. App. 4th 325 (2010). There, a client fired their counsel and retained new counsel. Id. at 328. After the case settled, former counsel sued successor counsel for quantum meruit, alleging that successor counsel had failed to provide him with any of the attorneys' fees. The Court of Appeal explained that successor counsel could not be sued. Id. at 332. The lien is the mechanism that permits successor counsel to be sued. See Ellen R. Peck, and Kevin E. Mohr, California Practice Guide: Professional Responsibility ¶ 5:799 (2019).

Likewise, Trustee's argument that "Defendants are…incorrect that EA's alleged failure to get Probate Court approval for its agreement with a minor is fatal to its assertion of a right to quantum meruit fees as to Hernandez" mischaracterizes Defendants' argument: that the absence of the lien precludes claims against *counsel* (not Ramirez's estate). [DB 31-32.]

> **d.** **Trustee Cites No Authority Holding That An Attorney and Client Can Be Concurrently Sued for Quantum Meruit.**

Trustee argues it is possible to sequentially litigate claims against clients before counsel in the same action. [TB 25.] That is impossible, because in order to state a claim against the successor counsel, the former client must be sued first because

17

"[w]ithout first establishing a right to any portion of his clients' settlement proceeds, plaintiff…lacks any basis to assert that defendant fraudulently withheld any money from him." Mojtahedi v. Vargas, 228 Cal. App. 4th 974, 979 (2014).  Mojtahedi did address concurrently suing successor counsel and the client, but stated that, although (unlike here) there was no dispute between the clients and former counsel regarding the amount owed, a declaratory claim against the clients was still necessary before recovery would be compelled from successor counsel.  Id. at 978.  If the clients and successor attorney could be sued simultaneously, the court would have said so.

Trustee asserts he has "independent claims against X-Law and Marchino that are not solely dependent upon prevailing on the quantum meruit claims against the EA clients."  [TB 25.]  First, the cited portion of Defendants' brief addresses only the declaratory relief claims.  [DB 27-28.]  Second, the declaratory relief claims only refer to a quantum meruit entitlement to fees, not some unrelated theory.  [4-ER-552-554.]  Third, the plaintiff in Mojtahedi alleged claims for "fraud, violation of Commercial Code sections 3110(d) and 3420, negligence, and tortious interference with prospective economic advantage", but the term quantum meruit does not appear anywhere.  228 Cal. App. 4th at 976.  Therefore, Mojtahedi is not limited to quantum meruit.

> **e.      Trustee Ignores Large Portions of Defendants'**
> **Argument That He Failed to Comply With the Probate**
> **Code Procedures.**

Trustee ignores Defendants' argument that Trustee was required to petition the probate court to file a late claim "within 60 days after the creditor has actual knowledge of the administration of [Ramirez's] estate" pursuant to Cal. Prob. Code § 9103(a)(1), but he instead filed a probate claim.  [DB 35-36.]  This is dispositive.

In addition, Cal. Prob. Code § 9103(f) prohibits late claims from being brought more than one year after Ramirez's death.  [Id.]  Trustee's reliance on 11 U.S.C. § 108(a) is unavailing in light of the extensive authority from courts within this circuit and elsewhere that have held that probate deadlines are not extended by the Bankruptcy Code.  [DB 32-36.]  Trustee fails to offer contrary authority or even a reasoned explanation of why these cases were wrongly decided.

Finally, Trustee's reliance on Dacey v. Taraday does not save him.  196 Cal. App. 4th 962 (2011).  As the court in Bradley v. Breen explained, the purpose of § 366.2 was to provide a short cutoff so there could be "expeditious estate administration and security of title for distributees" 73 Cal. App. 4th 798, 801 (1999). It went on to explain that the rule "will avoid delay and procedural complication of every probate proceeding for the rare claim that might arise more than a year after the decedent's death."   Id. at 801 (quoting Recommendation Relating to Notice to

Creditors in Estate Administration (Dec. 1989), 20 Cal. Law Revision Com. Rep. (1990) p. 513).  That court recognized that the legislature "determined that the one-year statute of limitations will best effectuate the strong public policy of expeditious and final estate administration, despite the possibility that in a rare case" a cause of action would be foreclosed.  Id. at 805; see Dawes v. Rich, 60 Cal. App. 4th 24, 36 (1997).  Dacey fails to address the legislative intent and plain language arguments put forth in these better-reasoned opinions.  In addition, the limitations period stated in § 366.2 can be easily complied with even if the cause of action has not accrued by "the timely filing of a creditor claim", which tolls the statute.  Levine v. Levine, 102 Cal. App. 4th 1256, 1261 (2002).

Second, Dacey does not excuse Trustee's failure to file a timely creditor's claim in the probate court.  In fact, Dacey indicates that the rule for creditor's claims is different than that for causes of action.  196 Cal. App. 4th at 986.  A creditor's claim is broader than the causes of action discussed in § 366.2.  Specifically, a claim is defined as a "demand for payment for any of the following, whether due, not due, accrued or not accrued, or contingent, and whether liquidated or unliquidated" including "Liability of the decedent, whether arising in contract, tort, or otherwise." Cal. Prob. Code § 9000.  In contrast § 366.2 is limited to an action that "may be brought on a liability of the person, whether arising in contract, tort, or otherwise, and whether accrued or not accrued." Cal. Civ. Proc. Code § 366.2.  Trustee could have

submitted a creditor claim even though his quantum meruit claim was contingent.

### f. Trustee's Argument That Hernandez Is Liable For Work EA Provided Her Son Is Baseless.

Defendants explained why Hernandez could not possibly have been the client of EA and accordingly could not be liable for quantum meruit fees.  [DB 36-40.]  In response, Trustee argues that "Ms. Hernandez's claims are solely derivative as the sole heir of Mr. Ramirez" and " she actually signed the retainer and was an intended beneficiary of the services for purposes of quantum meruit."  [TB 28.]

Trustee's statement that Hernandez's claims are derivative is false.  Ruiz v. Podolsky, 50 Cal. 4th 838, 844 (2010) (wrongful death is not derivative, but new independent pecuniary injury suffered by loss of relative and distinct form survival claim).

Trustee appears to rely on Valentine v. Read, a case that Trustee claims holds that "a beneficiary of an estate remains liable (to the extent of the distribution) for *quantum meruit* expenses associated with the distribution."  But Valentine actually only discusses trusts, where "unlike probate administration, trust creditor claims proceedings are not mandatory."  50 Cal. App. 4th 787, 792 (1996).  An entirely different rule in probate limits such claims to when "neither the creditor nor the attorney representing the creditor in the matter has actual knowledge of the administration of the estate before the time the court made an order for final

21

distribution of the property."  Cal. Prob. Code § 9392(a).  Trustee cannot meet this requirement because he obviously had knowledge of the administration of the estate before an order for final distribution of the property (Trustee has never claimed that the order was already entered; probate is still open).  Moreover, personal liability is capped by what is distributed from the estate.  Cal. Prob. Code § 9392(b).  Because the Ramirez estate has received nothing to distribute, Hernandez could not have any liability.  [4-ER-547, 555, 556, 558.]

Trustee argues Hernandez signed the (invalid) Ramirez retainer, but she signed it in her capacity as guardian ad litem and is therefore not personally liable. [DB 38-39.]  Trustee cites quantum meruit cases, but they have no impact on the analysis.  The cases he quotes indicate that the services have to be requested, and Hernandez made the request in her capacity as guardian ad litem, so would not be personally liable.

Trustee also has no response to Defendants' argument that Hernandez could not be liable under a quantum meruit theory for any incidental benefit she received for work done on her son's case.  [DB 40.]

Likewise, Trustee has no response to Defendants' citation to Dinosaur Dev., Inc. v. White.  It recognized that "[a] person who, incidentally to the performance of his own duty . . ., has conferred a benefit upon another, is not thereby entitled to

contribution." <u>Dinosaur Dev., Inc. v. White</u>, 216 Cal. App. 3d 1310, 1315 (1989).[8]

This rule also applies to scenarios where the defendant received a benefit that was

incidental to the plaintiff's performance of an agreement with some third party.

<u>California Med. Ass'n, Inc. v. Aetna U.S. Healthcare of California, Inc.</u>, 94 Cal. App.

4th 151, 174 n. 27 (2001). There was already someone, Ramirez, who EA had an

agreement with, and corresponding obligation to perform work in exchange for

compensation. Trustee cannot opt to pursue Hernandez personally for work EA did

for Ramirez because he thinks that she benefitted from it.[9]

> **g.    Trustee is Unable to Provide a Coherent Explanation**
>
> **of the Voidable Transfer Claim.**

In their opening brief, Defendants identified three key questions that pertain

to Trustee's fraudulent transfer claim: "(1) what is the transfer? (2) who is the

transferee? and (3) what are the damages?" [DB 46.] Trustee is unable to answer

---

[8] Although <u>Dinosaur Development</u> uses the word "restitution," quantum meruit, restitution, and unjust enrichment are used interchangeably. <u>See</u> <u>Munoz v. MacMillan</u>, 195 Cal. App. 4th 648, 661 (2011); <u>Fed. Deposit Ins. Corp. v. Dintino</u>, 167 Cal. App. 4th 333, 346 (2008); <u>McBride v. Boughton</u>, 123 Cal. App. 4th 379, 388 n. 6 (2004). Thus, <u>Dinosaur Development</u> is cited as to "quantum meruit recovery." <u>Pac. Bay Recovery, Inc. v. California Physicians' Servs., Inc.</u>, 12 Cal. App. 5th 200, 215–16 (2017).

[9] EA was obligated to represent Ramirez until the time of its withdrawal even if it was a *certainty* that he would die before the litigation concluded. Mark L. Tuft et al., <u>California Practice Guide: Professional Responsibility</u> ¶ 10:39 (The Rutter Group 2019).

them coherently.  Defendants identified what they thought were the three possible transfers: "the transfer of the <u>Ramirez</u> case or client from EA to X-Law, the waiver of fees in the <u>Ramirez</u> case, and the structuring of the settlement of the Ramirez case in a manner that resulted in Hernandez receiving a recovery and the estate of Ramirez not receiving any net recovery."  [<u>Id.</u>].  Trustee discusses a *fourth* "transfer", X-Law not owing referral fees to EA (which is not mentioned in the voidable transfer claim, and therefore apparently incorporated by reference from the tortious interference with prospective advantage claim and not mentioned in his 18 "facts").  [TB 30; 4-ER-558].  Defendants will address each in turn.

**The Transfer of the Case or Client**.

Trustee apparently agrees that clients have an absolute right to choose their attorneys and there is nothing wrong with X-Law representing Ramirez.  [TB 29-30.]  Nevertheless, he discusses <u>Heller Ehrman LLP v. Davis Wright Tremaine LLP</u>, which rejected the applicability of <u>Jewel</u> claims to hourly matters on public policy grounds, recognizing that they interfere with a clients' choice of counsel.  4 Cal. 5th 467, 473, 475, 484 (2018).  A <u>Jewel</u> claim involves law firm partners being required to share fees from cases in progress at the time of the dissolution of a law firm according to their right to fees in the former partnership.  <u>Jewel v. Boxer</u>, 156 Cal.

App. 3d 171, 174 (1984). [10]  Trustee has not alleged a <u>Jewel</u> claim against X-Law and he never explains what the doctrine has to do with the voidable transfer claim. Nor does he allege or prove that Marchino was an *equity* partner at EA (and never alleges The X-Law Group, P.C. was a partner of any sort).  Dissolution only occurs following a statutorily enumerated event and neither receivership nor bankruptcy are listed in the statute. Cal. Corp. Code § 16801.

**The Fee Waiver Letter**

Trustee states "[t]here is no claim that X-Law charged a higher contingency fee percentage than EA – only that X-Law took the entire fee without providing EA with the customary referral fee for the work already done on the case." [TB 31.]  The section Trustee appears to refer to explains that Ramirez, not X-Law, is the recipient of any transfer alleged in the fee waiver letter and that X-Law could not have received anything as a result of the Fee Waiver Letter, meaning X-Law was not the transferee. [DB 46-49.] [<u>Id.</u> at 46-48.]  The letter did not result in EA losing out on any fees, so it could not have caused harm.  [<u>Id.</u> at 50-51.]

Trustee also contends that Defendants' client abandonment argument [DB 50-51] is one for summary judgment, but makes no attempt to address the argument's merits.  [TB 31-32.]

---

[10] Although not decided in <u>Heller</u>, its rationale would apply to <u>Jewel</u> claims for contingency cases.  The rule stated in <u>Jewel</u> was incredibly harsh and would deter partners from agreeing to continue to represent clients.

**The Structuring of the Partial Settlement**

Trustee fails to address whether the structuring of the settlement in the Ramirez case constitutes the transfer.  It could not.  [DB 49.]

**Failure to Pay Referral Fees**

Trustee's attempt to respond to Defendants' 2-200 argument fails for several reasons.  [TB 30.]  First, Trustee simply ignores the more basic issue: Trustee's referral fee allegations amount to an argument that it is customary to provide a referral fee and there is no reason to believe that Hernandez would have rejected such a fee.  [4-ER-558.]  This is not a property interest.  Trustee does not even allege, as other plaintiffs seeking referral fees do, that there was an agreement between the two law firms to pay such a fee.  Chambers v. Kay, 29 Cal. 4th 142, 146 (2002); Barnes, Crosby, Fitzgerald & Zeman, LLP v. Ringler, 212 Cal. App. 4th 172, 174 (2012).

The case Trustee cites for equitable estoppel, Barnes, involved an exception that could only apply to class actions. See 212 Cal. App. 4th at 186; Joseph Saveri Law Firm, Inc. v. Michael E. Criden, P.A., No. 14-CV-01740-EDL, 2015 WL 1029364, at *6 (N.D. Cal. Mar. 9, 2015) (explaining the limited scope of Barnes). Equitable estoppel is unavailable when the firm "could have protected themselves by providing the client with the required written fee-sharing disclosure and obtaining [client] consent." Chambers, 29 Cal. 4th at 158–59.  In Barnes the original plaintiffs

had been replaced, the firm had no contact with the plaintiffs, and had been threatened if it contacted the plaintiffs.  212 Cal. App. 4th at 175.  The holding was limited to where "one attorney refuses to comply with the rules' disclosure and consent requirements and inequitably blocks the other attorney from doing so."  Id. at 186. The rule is inapplicable because the Ramirez case was not a class action, there was no substitution of clients to evade a 2-200, and there was no agreement between EA and X-Law to split fees.  EA had a relationship with the client in Ramirez, so it could have asked Hernandez for 2-200 consent.

F.    **Because Trustee's Claims Should Have Been Dismissed Under the Anti-SLAPP Statute, Defendants Should Have Been Awarded Attorneys' Fees.**

Trustee claims the tortious interference claims were "ancillary" and that Defendants obtained no benefit from their dismissal.  [TB 33.]  "[A] party who partially prevails on an anti-SLAPP motion must generally be considered a prevailing party unless the results of the motion were so insignificant that the party did not achieve any practical benefit."  Mann v. Quality Old Time Serv., Inc., 139 Cal. App. 4th 328, 340 (2006).  Prevailing includes eliminating claims even if similar claims remain.  Id.  The tortious interference claims differ from the other claims against X-Law because they are the only claims that are not premised on X-Law receiving or possessing something that Trustee asks the Court to reallocate (the

27

declaratory relief claim seeks allocation of fees between X-Law and the Estate and a voidable transfer is explicitly premised on X-Law receiving *something*). Trustee has nothing to say about the dismissal of the <u>Le</u> and <u>Young Blue</u> declaratory relief claims, which narrowed the scope of the litigation and was a complete victory for two of the three Clients.

### G. Defendants Cannot Be Sanctioned.

Trustee's argument that Defendants should be sanctioned is, on its face, frivolous. Trustee dismissed two defendants and abandoned four claims in the face of the anti-SLAPP motion, a clear victory for Defendants. When at least some claims are subject to dismissal, the plaintiff cannot be awarded sanctions under CCP § 415.16(c)(1). <u>Gerbosi v. Gaims, Weil, W. & Epstein, LLP</u>, 193 Cal. App. 4th 435, 450 (2011). Trustee cannot seek sanctions when he has not complied with the safe harbor period found within Cal. Civ. Proc. Code § 128.5(f). <u>See</u> Cal. Civ. Proc. Code § 425.16(c)(1); <u>Moofly Prods., LLC v. Favila</u>, 24 Cal. App. 5th 993, 998 (2018). He also failed to clearly articulate who he is seeking sanctions against or the amount requested. <u>See</u> <u>Corralejo v. Quiroga</u>, 152 Cal. App. 3d 871, 874 (1984); Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial ¶ 9:1094a. (The Rutter Group 2020).

## III.   CONCLUSION

Accordingly, Defendants request that the Court reverse the denial of Defendants' anti-SLAPP motion and remand the case for determination of the appropriate attorneys' fee award to Defendants.

Dated:  June 9, 2021

**LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.**

DAVID B. GOLUBCHIK, ESQ.,
*Attorneys for Appellants The X-Law Group, P.C., a professional corporation and Filippo Marchino, an individual*

Dated:  June 9, 2021

**THE X-LAW GROUP, P.C.**

FILIPPO MARCHINO, ESQ.,
*Attorneys for Appellants Young Blue LLC, Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez, deceased, and Sandy Le, individually and on behalf of Tina Ngan Le, decedent*

29

## CERTIFICATE OF COMPLIANCE

I hereby certify that pursuant to Fed. R. Bankr. P. Section 8015(h), Appellants' Reply Brief contains 6499 words. The undersigned relied on the word count of his Microsoft Word word processing software in making this certification.

Dated:  June 9, 2021                    **THE X-LAW GROUP, P.C.**

FILIPPO MARCHINO, ESQ.,
*Attorneys for Appellants Elba Hernandez,*
*individually and as personal*
*representative and successor in interest to*
*Andres Ramirez, deceased, Young Blue*
*LLC, and Sandy Le, individually and on*
*behalf of Tina Ngan Le, decedent*