O
JS-6

# United States District Court
# Central District of California

| | |
|---|---|
| In re EAGAN AVENATTI LLP,<br><br>Debtor.<br><br>―――<br><br>RICHARD A. MARSHACK, as Chapter 7 Trustee for Eagan Avenatti, LLP,<br><br>Plaintiff-Appellee,<br><br>v.<br><br>THE X-LAW GROUP, P.C., et al.,<br><br>Defendants-Appellants. | Case No. 8:21-cv-00336-ODW<br><br>**ORDER AFFIRMING THE BANKRUPTCY COURT'S RULING ON APPELLANTS' ANTI-SLAPP MOTION**<br><br>Bankruptcy Case No. 8:19-bk-13560-SC<br>Adversary Case No. 8:20-ap-01086-SC |

## I. INTRODUCTION

Appellants The X-Law Group, P.C., Filippo Marchino, Elba Hernandez, Young Blue LLC ("YBL"), and Sandy Le (collectively, "Appellants") appeal the Bankruptcy Court's denial of Appellants' Special Motion to Strike and to Dismiss. (*See* Notice of Appeal 7, 8, ECF No. 1.) For the reasons discussed below, the Court **AFFIRMS** the Bankruptcy Court's ruling and **DISMISSES** all grounds for appeal.[1]

---

[1] After considering the briefs and excerpts of record filed by each party, the Court finds that oral argument would not significantly aid the Court's analysis because the facts and legal arguments are adequately presented in the briefs and record. Fed. R. Bankr. P. 8019(b)(3).

## I. BACKGROUND

Appellee Richard A. Marshack is the 11 U.S.C. Chapter 7 bankruptcy trustee for the law firm Eagan Avenatti, LLP. (Appellee's Response Brief ("ARB") 1, ECF No. 12.) The parties' dispute began when Appellee sought quantum meruit fees from Appellants for legal services Eagan Avenatti provided in relation to three separate state court actions (the "EA Cases"). (*Id.*; Appellants' Opening Br. ("AOB") 6, ECF No. 11.) To recover the fees at issue, Appellee brought the underlying adversary proceeding in Bankruptcy Court against: (1) Hernandez, YBL, and Le as alleged former clients of Eagan Avenatti (the "Clients"); (2) X-Law as the law firm currently representing Hernandez, YBL, and Le; and (3) Marchino as an attorney and principal of X-Law. (ARB 1; AOB 6, 8.) According to Appellee, Hernandez's underlying EA Case has since settled, and the full settlement was paid to X-Law. (ARB 20.)

In his original complaint, Appellee sought to establish liens against the recoveries in the EA Cases. (AOB 8.) Upon Appellants' motion, the Bankruptcy Court struck the liens from the complaint. (*Id.*) On October 26, 2020, Appellee filed an amended complaint, which is the subject of this appeal. (*Id.*); *see* Am. Compl., *Marshack v. The X-Law Group, PC*, 8:20-ap-01086-SC ("*Adversary Proceeding*"), ECF No. 92 ("Am. Compl." or "Amended Complaint"). The Amended Complaint alleged, in relevant part, a First Claim for preliminary injunction requiring Appellants to deposit the contingency fee portion of the recoveries in the EA Cases with the Clerk of the Bankruptcy Court. Am. Compl. ¶¶ 43–57. By way of the Second, Third, and Fourth Claims, Appellee sought a declaratory judgment setting the amount of fees to which Eagan Avenatti's estate was entitled and allocating the EA Cases' contingency fees between Eagan Avenatti's estate and X-Law. *Id.* ¶¶ 58–73. Appellee's Fifth and Sixth Claims were for, respectively, tortious interference with contractual relations and tortious interference with prospective economic advantage, against X-Law and Marchino. *Id.* ¶¶ 74–105. Appellee's Ninth Claim was for voidable transaction against X-Law and Marchino. *Id.* ¶¶ 117–132.

On November 13, 2020, Appellants filed a special motion to strike the Amended Complaint, asserting that the First through Sixth and Ninth Claims should be stricken or dismissed under California Code of Civil Procedure section 425.16 (the "anti-SLAPP statute") and requesting attorney's fees. *See* Mot. Strike, *Adversary Proceeding*, ECF No. 92 ("Motion"). On January 20, 2021, the Bankruptcy Court held a hearing on the Motion and other pending matters including Appellee's motion for leave to amend the Amended Complaint and, among other changes, remove the Third through Sixth Claims. *See* Jan. 20, 2021 Hr'g Tr. ("Tr."), *In re Eagan Avenatti*, 8:19-bk-13560-SC ("*Bankruptcy Proceeding*"), ECF No. 267.

At the Motion hearing, the Bankruptcy Court granted Appellee's motion and dismissed the Third through Sixth Claims. *Id*. at 37. Counsel for Appellants acknowledged that the leave to amend the Amended Complaint mooted the anti-SLAPP challenges to these Claims. *Id*. at 40. Then, the Bankruptcy Court denied the Motion in its entirety, as follows:

> I've looked at the standards under the anti-SLAPP statute, and all of the cases, and I find that the motion should be denied in full. The motion to dismiss is irrelevant now. The anti-SLAPP motion is frivolous, and it shouldn't be even considered any further than we already have, but I have carefully considered it, and it's frivolous, and it shouldn't have been brought, but that will be the end of that. It doesn't meet any of the standards necessary for obtaining any attorney fee award of any type with respect to this matter, and that will be the ruling of the Court.

Tr. 72–73.

Following the hearing, Appellee filed a second amended complaint, which, among other changes, omitted the Amended Complaint's Third through Sixth Claims. Second Amended Compl., *Adversary Proceeding*, ECF No. 160.

On February 5, 2021, the Bankruptcy Court issued an amended order reiterating that the Motion was denied in its entirety "for the reasons stated on the record" during the Motion's hearing. *See* Am. Order, *Adversary Proceeding*, ECF No. 146 ("Order"). Appellants now appeal the Bankruptcy Court's finding under the anti-

SLAPP statute that Appellee's First through Sixth and Ninth Claims are not subject to dismissal, and Appellants are not entitled to attorney's fees. (AOB 2–5.) The appeal is fully briefed. (*See* ARB; Appellants' Reply ("Reply"), ECF No. 13.)

The Court has reviewed the papers and underlying proceedings. For the following reasons, the Court finds that the Bankruptcy Court properly denied the Motion in its entirety and **AFFIRMS** the Order.

## II. JURISDICTION

The Court has jurisdiction under 28 U.S.C. § 158(a) and Federal Rule of Bankruptcy Procedure 8001(b).

## III. STANDARD OF REVIEW

A district court reviews a bankruptcy court's legal determinations de novo. *In re Olshan,* 356 F.3d 1078, 1083 (9th Cir. 2004). Specifically, "[a] decision to grant or deny an anti-SLAPP motion is reviewed de novo." *In re Bah*, 321 B.R. 41, 44 (B.A.P. 9th Cir. 2005).

## IV. DISCUSSION

**A. The Bankruptcy Court Properly Denied the Motion Because the Claims Do Not Fall Within the Scope of the Anti-SLAPP Statute.**

The anti-SLAPP statute provides that any cause of action arising from an act in furtherance of one's right of petition or free speech in connection with a public issue shall be subject to a special motion to strike, unless the plaintiff has established a probability that the claim will prevail. Cal. Civ. Proc. Code § 425.16(b)(1). In applying the anti-SLAPP statute, courts utilize a two-prong test. *Area 55, LLC v. Nicholas & Tomasevic, LLP*, 61 Cal. App. 5th 136, 150 (2021). First, the defendant must first establish that the challenged claim arises from protected activity. *Id*. Next, if the defendant makes the required showing, the burden shifts to the plaintiff to demonstrate a probability of success for the claim at issue. *Id*. "Only a cause of action that satisfies both prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning and lacks even minimal merit—is a SLAPP, subject to

being stricken under the statute." *Id*. (quoting *Oasis West Realty, LLC v. Goldman*, 51 Cal. 4th 811, 820 (2011)). Thus, the Court must first determine whether each challenged Claim arises from a protected activity.

Appellants raised an anti-SLAPP challenge as to the Amended Complaint's: (1) First Claim for preliminary injunction, (2) Second Claim for declaratory judgment against Hernandez, and X-Law, (3) Third Claim for declaratory judgment against YBL and X-Law, (4) Fourth Claim for declaratory judgment against Le and X-Law, (5) Fifth Claim for tortious interference with contractual relations against X-Law and Marchino, (6) Sixth Claim for tortious interference with prospective economic advantage against X-Law and Marchino, and (7) Ninth Claim for voidable transfer under the Uniform Voidable Transactions Act. (*See generally* AOB.) However, Appellee has since amended the Amended Complaint, removing the Third through Sixth Claims, rendering them no longer at issue. Tr. 37; Order Granting Leave Am., *Adversary Proceeding*, ECF No. 142; *see generally* Second Amended Compl., *Adversary Proceeding*. Indeed, Appellants' Counsel even acknowledged that withdrawing the Third through Sixth Claims mooted the anti-SLAPP challenges as to those Claims. Tr. 40. Accordingly, this Court finds that Appellants' Motion is **MOOT** with respect the Third through Sixth Claims, and therefore **AFFIRMS** the Bankruptcy Court's denial of the Motion with respect to these Claims.

Thus, only the Amended Complaint's First, Second, and Ninth Claims remain at issue in this appeal. The Court addresses each Claim in turn. For the following reasons, the Court finds that the remaining Claims do not arise from protected activity and are therefore not subject to anti-SLAPP.

### 1. *First Claim: Preliminary Injunction*

The Amended Complaint's First Claim seeks "a preliminary injunction requiring X-Law and Marchino to deposit the entire amount of the contingency fee portion of the recovery with the Clerk of the Court until the Court can hear and determine the Trustee's claim for a declaratory judgment allocating those fees

between the Estate and X-Law." Am. Compl. ¶ 57. Utilizing the two-prong anti-SLAPP test, the Court must first determine whether the challenged Claim arises from a protected activity. *Area 55*, 61 Cal. App. 5th at 150. Section 425.16 defines four categories of protected activity; the category at issue here protects "any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law." Cal. Civ. Proc. Code § 425.16(e)(2). This protection extends to statements made in rendering legal advice, in connection with settlement, and various other litigation-related activities. *See Thayer v. Kabateck Brown Kellner LLP*, 207 Cal. App. 4th 141, 154 (2012); *Kashian v. Harriman*, 98 Cal. App. 4th 892, 908 (2012).

Appellants argue that the First Claim falls "squarely within the scope of the anti-SLAPP statute" because it relies on various protected statements made by X-Law and Marchino in the course of litigating the EA Cases and this action. (AOB 18.) These statements include X-Law and Marchino's statements that Appellee is not entitled to any portion of the recovery from the EA Cases as well as "filings in the probate court, the legal positions taken in those filings, or statements made or not made." (*Id*. at 18–20.) However, even if X-Law and Marchino's statements are protected, the Court finds that the preliminary injunction does not arise from them.

"A claim arises from protected activity when that activity underlies or forms the basis for the claim." *Park v. Bd. of Trs. of Cal. State Univ.*, 2 Cal. 5th 1057, 1062 (2017). "As courts applying the anti-SLAPP statute have recognized," however, "the 'arising from' requirement is not always easily met." *Equilon Enters. v. Consumer Cause, Inc.*, 29 Cal. 4th 53, 66 (2002). "Critically, 'the defendant's act underlying the plaintiff's cause of action must itself have been an act in furtherance of the right of petition or free speech.'" *Park*, 2 Cal. 5th at 1063 (quoting *City of Cotati v. Cashman*, 29 Cal. 4th 69, 78 (2002)). "[I]t is the principal thrust or gravamen of the plaintiff's cause of action that determines whether the anti-SLAPP statute applies, and when the

allegations referring to arguably protected activity are only incidental to a cause of action based essentially on nonprotected activity, collateral allusions to protected activity should not subject the cause of action to the anti-SLAPP statute." *Martinez v. Metabolife Internal., Inc.*, 113 Cal. App. 4th 181, 188 (2003) (internal citation omitted). Accordingly, "in ruling on an anti-SLAPP motion, courts should consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability." *Park*, 2 Cal. 5th at 1063.

In this case, Appellee, by way of his First Claim for preliminary injunction, seeks to require Appellants to deposit court awards into trust. This request arises from Appellants' non-payment of legal fees, *not* from statements made in connection with litigation. That Appellee uses X-Law and Marchino's litigation-related statements to support his request for a preliminary injunction, does not mean that the request for injunction *arises* from those statements. *See Rand Res., LLC v. City of Carson*, 6 Cal. 5th 610, 621 (2019) ("[A] claim does not arise from protected activity . . . when protected activity merely provides evidentiary support or context for the claim.") (internal quotation marks omitted). "Rather, the protected activity must 'supply elements of the challenged claim,'" *id*. (quoting *Park*, 2 Cal. 5th at 1064), which is not the case here. Appellee could have and would have sought the preliminary injunction even if X-Law and Marchino never made the statements at issue. Conversely, Appellee would not have sought the preliminary injunction if X-Law and Marchino paid Appellee the quantum meruit fees allegedly owed. As Appellants themselves concede in their opening brief, "[t]his case is, at its core, an attempt by the bankruptcy estate of a law firm, Eagan Avenatti, LLP ("EA"), to obtain quantum meruit fees." (AOB 18.) This case arises from the act of failing to pay fees, not from any litigation-connected statement Appellants allegedly made.

Appellants argue that Appellee brought the preliminary injunction Claim "because" Appellants made certain statements to the opposing party in the underlying adversary proceeding. (*Id*. at 19, 20.) Even if Appellee sought his preliminary

1 injunction in response to X-Law and Marchino's statements, the preliminary
2 injunction does not necessarily arise from the statements. "[T]he mere fact that an
3 action was filed after protected activity took place does not mean the action arose
4 from that activity for the purposes of the anti-SLAPP statute." *Navellier v. Sletten,*
5 *29* Cal. 4th 82, 89 (2002). "[T]hat a cause of action arguably may have been
6 'triggered' by protected activity does not entail it is one arising from such." *Id*.
7 (quoting *Cotati*, 29 Cal. 4th at 78).

8       For example, in *Cotati*, the defendant filed an action seeking a declaratory
9 judgment that the city plaintiff's ordinance was unconstitutional and, as a result, the
10 city plaintiff filed an action seeking a declaratory judgment that its ordinance was
11 constitutional. 29 Cal. 4th at 72. The defendants filed an anti-SLAPP motion to strike
12 the city plaintiff's complaint, asserting that the complaint arose from the defendants'
13 filing of its lawsuit—a protected activity. *Id.* at 72–73. The Supreme Court of
14 California held that the anti-SLAPP motion should have been denied because the
15 defendants' suit formed no part of the basis for the city plaintiff's suit. *Id.* at 80.
16 Although "it could be said that the claim challenged as a SLAPP was filed *because* of
17 protected activity, in that perhaps the *City of Cotati* plaintiff would not have filed suit
18 had the defendant not done so first . . . [the] plaintiff could demonstrate the existence
19 of a bona fide controversy between the parties supporting a claim for declaratory relief
20 without the prior suit, although certainly the prior suit might supply evidence of the
21 parties' disagreement." *Park*, 2 Cal. 5th at 1064 (emphasis in original). Thus, an
22 action may be brought "in 'response to or in retaliation for' a protected activity
23 without necessarily arising from it." *Id.* at 1063 (quoting *Cotati*, 29 Cal. 4th at 78).

24       Here, the statements at issue may have generated Appellee's concern regarding
25 Appellants' abilities to pay the quantum meruit fees, which, in turn, may have
26 "triggered" Appellee to seek the preliminary injunction. *See Cotati*, 29 Cal. 4th at 78.
27 However, Appellants' act for which Appellee seeks recourse is the failure to pay the
28 fees—not the statements themselves. Accordingly, Appellee's First Claim arises from

a failure to pay legal fees, which is not a protected activity within the meaning of the anti-SLAPP statute. Appellants therefore have not met their burden under the first prong of the anti-SLAPP analysis, and the Bankruptcy Court properly denied Appellants' Motion to strike. Thus, this Court **AFFIRMS** the Bankruptcy Court's denial of Appellants' Motion with regard to the First Claim.

### 2. *Second Claim: Declaratory Relief*

In his Second Claim, Appellee seeks declaratory relief against Hernandez and X-Law for a judicial determination of "the extent of the Trustee/EA's right to a portion of the proceeds from the settlement of the Hernandez case for attorneys' fees." Am. Compl. ¶¶ 60, 61. The Court again finds that even if the challenged Claim refers to protected activity, it does not arise from such activity.

The negotiation and formation of a settlement is generally considered activity protected under the anti-SLAPP statute. *See Navellier*, 29 Cal. 4th at 92. However, "a complaint is not a SLAPP suit unless the gravamen of the complaint is that defendants acted wrongfully by engaging in the protected activity." *Drell v. Cohen*, 232 Cal. App. 4th 24, 30 (2014). In *Drell*, the court found that certain attorneys' assertion of a lien on a client's settlement proceeds was not subject to anti-SLAPP because the claim against the attorneys "did not allege [the attorneys] engaged in wrongdoing by asserting their lien." *Id*. Instead, "the complaint asked the court to declare the parties' respective rights to attorney fees" arising from the settlement. *Id*. In reaching its conclusion, the *Drell* court noted that "[n]one of the purposes of the anti-SLAPP statute would be served by elevating a fee dispute to the constitutional arena." *Id*.

Appellee's declaratory relief Claim is similar to the claims in *Drell*. Here, Appellee does not assert that establishing Hernandez's settlement is the wrongful conduct at issue. Instead, Appellee alleges the non-payment of outstanding legal fees is the wrongful conduct, and Hernandez's settlement is merely subject to repayment of those fees. Notably, the Second Claim does not attack the terms of the settlement

agreement but simply refers to the settlement fund as a source of repayment for the outstanding fees. Am. Compl. ¶¶ 58–65.

Citing to *O&C Creditors Grp., LLC v. Stephens & Stephens XII, LLC*, 42 Cal. App. 5th 546, 571 (2019), Appellants argue that "[b]ecause the claims for declaratory judgment arise out of the settlement of the underlying cases (or a judgment following trial), they also fall within the scope of the anti-SLAPP statute." (AOB 22.) However, the facts in this case are distinguishable from those in *O&C Creditors*, which held that a claim for attorney's fees resulting from a settlement was subject to anti-SLAPP because "the settlement agreement is the crux of cross-defendants' allegedly wrongful conduct." 42 Cal. App. 5th at 571. In *O&C Creditors*, the "allegedly wrongful disbursement of proceeds occurred only because of the settlement agreement." *Id.* (internal quotation marks omitted). Here, the wrongful disbursement of proceeds would still exist even if the settlement agreement did not because Appellants would owe Appellee outstanding fees irrespective of whether and what types of settlements were established.

The "gravamen" of this case are claims to recover the quantum meruit value of services provided. *See Martinez*, 113 Cal. App. 4th at 188. Appellee's Claim for declaratory judgment therefore does not arise from the establishment of a settlement agreement and, accordingly, does not arise from a protected activity. Thus, the Claim is not subject to anti-SLAPP and this Court **AFFIRMS** the Bankruptcy Court's denial of Appellants' Motion with respect to the Second Claim.

3. <u>Ninth Claim: Voidable Transfer</u>

In his Ninth Claim, Appellee asserts a claim for voidable transfer under the Uniform Voidable Transactions Act, resulting from X-Law and Marchino allegedly transferring Hernandez's underlying EA Case from Eagan Avenatti to X-Law in violation of a Bankruptcy Court order. Am. Compl. 117–122. For the reasons stated above, the gravamen of the voidable transfer Claim is X-Law and Marchino's alleged

conduct in improperly transferring cases from Eagan Avenatti to X-Law, not statements made in connection with litigation. *See Drell*, 232 Cal. App. 4th at 29.

Appellants argue that Appellee's Ninth Claim "incorporates by reference and realleges" the preceding paragraphs of the Amended Complaint, which include references to protected communications and litigation-related activity. (AOB 19.) However, these indirect statements summarily incorporated by reference "merely provide[] evidentiary support or context for the claim." *See Rand Res.*, 6 Cal. 5th at 621. Such ancillary references do not constitute the gravamen of the Claim, which is the alleged voidable transfer. Accordingly, the voidable transfer Claim does not arise from protected activity. Thus, this Court **AFFIRMS** the Bankruptcy Court's denial of Appellants' Motion with respect to the Ninth Claim.

The Court finds that the First, Second, and Ninth Claims do not arise from protected activity. The Bankruptcy Court properly found that Appellants did not meet their burden as to the first prong of the anti-SLAPP test. Therefore, the Court need not analyze the second prong of the test—probability of success—to find that the Bankruptcy Court properly denied Appellants' anti-SLAPP Motion.

**B. The Bankruptcy Court Properly Denied Appellants' Request for Attorney's Fees.**

Appellants also appeal the Bankruptcy's Court's determination that they were not entitled to attorney's fees incurred in association with their Motion. (AOB 2–6.) Appellants assert that they are entitled to such fees in relation to their challenging the still-viable First, Second, and Ninth Claims as well as the now-dismissed Third through Sixth Claims. (*Id.*) Regarding the still-viable Claims, this Court determined that none of these Claims are subject to anti-SLAPP and Appellants are therefore not successful with respect to those Claims. Accordingly, Appellants are not entitled to attorney's fees for those Claims, and this Court **AFFIRMS** the Bankruptcy Court's denial of such fees.

As for the now-dismissed Third through Sixth Claims, Appellants argue that their anti-SLAPP Motion should have been granted as to these Claims, and Appellee is therefore entitled to the associated attorney's fees. (*Id.* at 15.) However, making this determination necessarily requires this Court to analyze the merits of claims that no longer exist because Plaintiff omitted them from his Amended Complaint, pursuant to Federal Rule of Civil Procedure ("Rule") 15(a). As explained above, this Court has already determined that Appellants' anti-SLAPP challenges to the now-dismissed Claims are moot. This Court will not decide moot claims. *See e.g., Yellowcake, Inc. v. Triwolf Media, LLC*, No. 1:20-CV-0981 AWI SKO, 2020 WL 6728934, at *2 (E.D. Cal. Nov. 16, 2020) (refusing to assess the merits of anti-SLAPP claims, even for the sole purpose of assessing entitlement to attorney's fees, because the complaint was voluntarily dismissed, and the claims were therefore moot). Notably, "[n]othing in Rule 15 addresses the effect of a Slapp motion filed in between an answer and a timely amended complaint. The Ninth Circuit has warned against permitting Cal. Code Civ. P. § 425.16 to collide with Rule 15(a)'s policy of liberal amendment." *Id.* Accordingly, this Court will not circumvent Appellee's right to amend his complaint pursuant to Rule 15(a) by assessing anti-SLAPP challenges as to claims no longer at issue.

Appellants also argue that their anti-SLAPP Motion should have been granted as to Claims Three through Six because "'when a voluntary dismissal follows the filing of a[n anti-SLAPP] motion to strike, there is a presumption that the moving party is the prevailing party' and therefore entitled to fees." (*Id.* at 15) (quoting *eCash Techs., Inc. v. Guagliardo*, 127 F. Supp. 2d 1069, 1084 (C.D. Cal. 2000)). However, voluntary dismissal of claims while an anti-SLAPP motion is pending does not "*automatically* entitle a defendant to attorney's fees" because, "regardless of whether the action is a SLAPP suit or not, the plaintiff may have good faith reasons for the dismissal that have nothing to do with oppressing the defendant or avoiding liability for attorney's fees." *Coltrain v. Shewalter*, 66 Cal. App. 4th 94, 107 (1998), *as*

*modified* (Sept. 4, 1998) (emphasis in original). Nothing in the record clearly demonstrates that Appellee dismissed the at-issue Claims solely to avoid paying attorney's fees for Appellants' anti-SLAPP Motion. Accordingly, the Court finds that the Bankruptcy Court did not abuse its discretion in refusing to award attorney's fees for the now-dismissed Claims. This Court therefore **AFFIRMS** the Bankruptcy Court's denial of those fees.

Finally, Appellee argues that he is entitled to attorney's fees of his own under Code of Civil Procedure section 425.16(c)(1), which permits attorney's fees to a party opposing an anti-SLAPP motion, if the motion is frivolous or is solely intended to cause unnecessary delay. Appellee's argument is unmeritorious. In their opening brief, Appellants supported their contentions with reasonable and relevant arguments, and there is no evidence demonstrating that this appeal was a delay tactic. Accordingly, Appellee's request for attorney's fees is **DENIED**.

## V. CONCLUSION

For the reasons discussed above, the Bankruptcy Court's Order is **AFFIRMED** and all grounds for appeal are **DISMISSED**.

**IT IS SO ORDERED.**

December 2, 2021

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**